Rebekah S. Guyon (SBN 291037)
*Rebekah.Guyon@gtlaw.com*
Lori Chang (SBN 228142)
*ChangL@gtlaw.com*
David H. Marenberg (SBN 329954)
*MarenbergD@gtlaw.com*
GREENBERG TRAURIG, LLP
1840 Century Park East, 19th Floor
Los Angeles, CA 90067-2121
Tel: 310-586-7700; Fax: 310-586-7800

Attorneys for Defendants Vision Service Plan a/k/a VSP Global, VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| BRIAN TASH and PETER HAHN, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>VISION SERVICE PLAN a/k/a VSP GLOBAL, VSP VENTURES, LLC, VSP VENTURES MANAGEMENT SERVICES, LLC, and VSP VENTURES OPTOMETRIC SOLUTIONS, LLC,<br><br>Defendants. | CASE NO.: 2:25-CV-00762-DJC-JDP<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Declaration of David H. Marenberg and Request for Judicial Notice]*<br><br>Date: December 18, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom 7<br><br>Assigned to: Hon. Daniel J. Calabretta |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 18, 2025, at 1:30 p.m. in Courtroom 7 of the above-captioned Court, located at Robert T. Matsui Federal Courthouse, 501 I Street, Room 4-200, Sacramento, CA 95814, Defendants Vision Service Plan, VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC (collectively, "Defendants" or "VSP") will and hereby do move to dismiss Plaintiffs Brian Tash and Peter Hahn's Consolidated Class Action Complaint ("CAC") with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is made after the conference of counsel pursuant to Section I.C of the Court's Standing Order in Civil Cases. The parties met and conferred via videoconference on October 1, 2025 to discuss the grounds for Defendants' Motion. Counsel for Defendants explained the arguments raised in the Motion, but the parties were unable to reach a resolution. (Declaration of David H. Marenberg ¶¶ 28-29.)

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declaration of David H. Marenberg in support, all exhibits attached thereto, all pleadings and papers on file in this action, and such other written or oral argument as may be properly presented to the Court at or before the hearing.

Dated: October 6, 2025

GREENBERG TRAURIG, LLP

By: */s/ Rebekah S. Guyon*
Rebekah S. Guyon
Lori Chang
David H. Marenberg
Attorneys for Defendants Vision Service Plan a/k/a VSP Global, VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. FACTUAL ALLEGATIONS ..... 4

III. PROCEDURAL HISTORY ..... 6

IV. PLAINTIFFS DO NOT ALLEGE ARTICLE III STANDING ..... 7

A. Standards for Dismissal Under Rule 12(b)(1) and Article III ..... 7

B. Plaintiffs Have Not Alleged An Article III Injury ..... 8

1. Plaintiffs Do Not Allege That Their Private Information Was Disclosed ..... 8

2. Plaintiffs Do Not Allege An Injury Closely Related To A Traditional Privacy Tort ..... 9

3. Plaintiffs Fail To Allege A Tangible Monetary Harm ..... 11

V. PLAINTIFFS FAIL TO STATE ANY CLAIM FOR RELIEF ..... 12

A. Standards For Dismissal Under Rules 8 And 12(b)(6) ..... 13

B. Plaintiffs' Conclusory Assertions Fail To Plausibly Plead Any Claim ..... 13

C. All Claims Against Defendants Other Than VSP Should Be Dismissed ..... 14

D. The Party Exception Bars Plaintiffs' ECPA Claims ..... 14

1. VSP Was The Intended Recipient Of Any Alleged Communications ..... 14

a) The Crime-Tort Exception Does Not Apply ..... 14

A. Plaintiffs' Invasion Of Privacy Claims Fail ..... 17

1. Plaintiffs Fail To Allege VSP's Intrusion On Their Seclusion ..... 17

2. Plaintiffs Fail To Allege A Public Disclosure ..... 17

3. VSP's Alleged Conduct Was Not An Egregious Violation Of Social Norms ..... 18

B. Plaintiffs' Conversion Claims Fail ..... 18

C. The Majority Of Tash's Claims Are Time-Barred ..... 19

D. Tash Does Not Allege the Disclosure of Medical Information Under the CMIA ..... 19

E. Tash's CIPA Section 631(a) Claims Fail ..... 20

1. Tash Cannot State A Claim Under Section 631(a)'s First Three Clauses ..... 20

2. Tash Fails To Allege Secondary Liability Under Section 631(a) ..... 21

3. The Tracking Tools Are Not Pen Registers Under Section 638.51(a) Of CIPA ..... 22

a) The Tracking Tools Allegedly Capture Contents ..... 22

b) Section 638.51 Prohibits Only Telephone-Tracking Technology ..... 23

F. Tash Lacks Statutory Standing To Assert His Duplicative UCL Claim ..... 24

G. Plaintiffs' Claims for Punitive Damages Should Be Dismissed. ..... 25

VI. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**


*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ........ 6

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digit. Analyzer*,
885 F. Supp. 197 (C.D. Cal. 1995) ........ 23

*Andrews v. Prisma Health*,
Case No. 6:23-cv-03153-JDA, 2024 WL 3861384 (D.S.C. Aug. 16, 2024) ........ 10, 2

*Arena Rest. & Lunge LLC v. S. Glazer's Wine & Spirits, LLC*,
Case No. 17-CV-03805-LHK, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ........ 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3

*B.K. v. Desert Care Network*,
Case No. 2:23-cv-05021-SPG-PD, 2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) ........ *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 3

*Beltran v. Doctors Med. Ctr. of Modesto*,
No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467 (E.D. Cal. June 9, 2025) ........ *passim*

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ........ 5

*Bordelais v. Bordelais*,
No. 20 C 01709, 2021 WL 1531600 (N.D. Ill. Apr. 19, 2021) ........ 25

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 19

*Byars v. Sterling Jewelers, Inc.*,
Case No. 5:22-cv-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........ 8

*Carolus v. Nexstar Media Inc.*,
Case No. 24-cv-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) ........ 8, 9

*Coast Surgery Center v. United Healthcare Ins. Co.*,
Case No. 8:22-cv-02200-FWS-DFM, 2024 WL 650174 (C.D. Cal. Jan. 5, 2024) ........ 25

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ........ 2

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ........ 7

*Dinerstein v. Google, LLC*,
73 F.4th 502, 517 (7th Cir. 2023) ........ 12

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 1, 22, 5

*Doe v. Amgen, Inc.*,
Case No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ........ 3

*Doe v. Davita Inc.*,
Case No.: 23-cv-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ........ 2, 13

*Doe v. Kaiser Found. Health Plan, Inc.*,
Case No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 14, 15

*Doe v. Upperline Health, Inc.*,
No. 1:23-cv-01261-RLY-CSW, 2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ........ 16

*Esparza v. UAG Escondido A1 Inc.*,
Case No. 23cv0102 DMS (KSC), 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........ 21

*Gardiner v. Walmart Inc.*,
Case No. 20-cv-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ........ 3, 25

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ........ 9

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 12, 25

*Gray v. Luxottica of Am., Inc.*,
Case No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) ........ 20

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........ 4

*Hannant v. Culbertson Mem. Hosp.*,
Case No. 4:24-cv-04164-SLD-RLH, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ........ 16

*Harrill v. Emanuel Med. Ctr.*,
No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ........ 13, 18

*Hassan v. Facebook, Inc.*,
Case No. 19-cv-01003-JST, 2019 WL 3302721 (N.D. Cal. July 23, 2019) ........ 17

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 17

*Hubbard v. Google LLC*,
Case No. 19-cv-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 19

*Hughey v. Camacho*,
No. 2:13-cv-2665-TLN-AC, 2014 WL 5473184 (E.D. Cal. Oct. 23, 2014) ........ 13

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 9

*In re Illuminate Educ. Data Sec. Incident Litig.*,
Case No. 8:22-cv-01164-JVS (ADSx), 2023 WL 8888839 (C.D. Cal. Nov. 6, 2023) ........ 11

*Javier v. Assur. IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 9

*Ji v. Naver Corp.*,
Case No. 21-cv-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) .......... 9, 14

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. May 13, 2025) .......... 9

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .......... 9, 15, 16, 17

*Lightoller v. Jetblue Airways Corp.*,
No. 23-361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 9

*In re LinkedIn User Priv. Litig.*,
932 F. Supp. 2d 1089 (N.D. Cal. 2013) .......... 5

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 18, 24

*Martin v. Sephora USA, Inc.*,
Case No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636 (C.D. Cal. Mar 7, 2023) .......... 4

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 18, 1

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 1, 8

*Montoya v. Countrywide Bank, F.S.B.*,
No. C09-00641 JW, 2009 WL 1813973 (N.D. Cal. June 25, 2009) .......... 2, 14

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023) .......... 10

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 10, 17

*O'Leary v. TrustedID, Inc.*,
60 F.4th 240 (4th Cir. 2023) .......... 9

*Paplekaj v. FCA US, LLC*,
Case No. 24-cv-1717-MMA-VET, 2025 WL 863472 (S.D. Cal. Mar. 19, 2025) .......... 9

*Pena v. Gamestop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 2, 14, 15

*Perry v. Newsom*,
18 F.4th 622 (9th Cir. 2021) .......... 8

*Phelps v. Fast Pace Med. Clinic, PLLC*,
Case 3:24-cv-00352, Dkt. 1 (M.D. Tenn. Mar. 28, 2024) .......... 6

*Planned Parenthood Fed. of. Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 15

*Popa v. Microsoft Corp.*,
--- F.4th ---, 2025 WL 2448824 (9th Cir. 2025) .......... 1, 7, 9, 112

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 4

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 9, 17

*Santoro v. Tower Health*,
CIVIL ACTION NO. 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) .......... 11

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) .......... 7

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 16

*Smith v. Maryland*,
442 U.S. 735 (1979) .......... 22

*Smith v. YETI Coolers, LLC*,
No. 24-cv-01703-RFL, 2025 WL 877127 (N.D. Cal. Mar. 14, 2025) .......... 3, 21

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 17, 21

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 7

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 7, 8

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
830 F. App'x 821 (9th Cir. 2020) .......... 7

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 20

*Toston v. JetBlue Airways Corp.*,
No. 2:23-cv-01156-SVW-E, 2023 U.S. Dist. LEXIS 148675 (C.D. Cal. Aug. 23, 2023) .......... 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 7, 9

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) .......... 21

*Valenzuela v. Kroger Co.*,
No. CV 22-6382-DMG (AGRx), 2025 WL 851075 (C.D. Cal. Mar. 13, 2025) .......... 21

*Weston v. Lefiti*,
No. 24-541, 2024 WL 4579237 (9th Cir. Oct. 25, 2024) .......... 13, 14, 15

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .......... 10

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 18, 20, 21, 24

*Wilson v. Rater8, LLC*,
No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .......... 20

*Winzig v. Stockpile Investments, Inc.*, No. 2:21-cv-02170-RGK-E, 2021 WL 4812956 (C.D. Cal. July 2, 2021) ..... 3, 12

*Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010) ..... 3, 19

**State Cases**

*Cain v. State Farm Mut. Auto. Ins. Co.*, 62 Cal. App. 3d 310 (1976) ..... 19

*Casillas v. Transitions Optical*, No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sept. 9, 2024) ..... 23, 24

*Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430 (2014) ..... 20

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ..... 17

*Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ..... 4

*Maness v. Santa Fe Park Enters.*, 298 Ill. App. 3d 1014, 1024 (1998) ..... 25

*Porten v. Univ. of San Francisco*, 64 Cal. App. 3d 825 (1976) ..... 10, 17

*Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ..... 4, 23

*Z's IT Consulting Servs., Inc. v. Hunt Law Group, LLC*, 256 N.E.3d 479 (Ill. Ct. App. 2024) ..... 3, 18

**Federal Statutes**

15 U.S.C. § 45 ..... 15

18 U.S.C. § 2510 *et seq.* ..... 2

18 U.S.C. § 2511(2)(d) ..... 14, 15

18 U.S.C. § 2520 ..... 15

18 U.S.C. § 2520(e) ..... 13

43 U.S.C. § 1320d-6 ..... 5

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ..... 3, 24

Cal. Bus. & Prof. Code § 17204 ..... 4

Cal. Civ. Code § 56.05(j) ..... 5

Cal. Civ. Code § 56.10(a) ..... 15

Cal. Civ. Code § 3294(a) ........................................ 25
Cal. Civ. Proc. Code § 335.1 ........................................ 9
Cal. Civ. Proc. Code § 338 ........................................ 9
Cal. Pen. Code § 631(a) ........................................ *passim*
Cal. Pen. Code § 638.50(b) ........................................ 4, 23
Cal. Pen. Code § 638.51(a) ........................................ 23
Cal. Pen. Code § 638.52 ........................................ 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................ *passim*
Fed. R. Civ. P. 12(b)(6) ........................................ 12

**Other Authorities**

*Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (Dec. 1, 2022), available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-onlinetracking/ .... 22

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Vision Service Plan ("VSP" or "Defendant") is a vision insurance provider that operates websites where visitors like Plaintiffs Brian Tash and Peter Hahn can explore covered providers, review their offerings, and search for vision care products. Plaintiffs' claims arise from VSP's alleged use of ubiquitous technologies to collect their routine browsing activities for the purpose of delivering targeted advertisements—a commonplace commercial practice. "[T]here is nothing inherently unlawful about" these allegations. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 841 (N.D. Cal. 2024). Moreover, Plaintiffs themselves do not claim to have received any targeted advertisements based on their browsing of VSP's websites, nor do they claim to have suffered any actual harm whatsoever.

The Consolidated Class Action Complaint (Dkt. 33 ("CAC")) is the third attempt by Plaintiffs' counsel, across three jurisdictions, to assert claims against VSP based on its use of the commercially standard technologies alleged here. Indeed, only fourteen paragraphs out of two-hundred-eighty-seven in the CAC are unique to Plaintiffs; the remaining are recycled, often verbatim, in this and other suits filed by Plaintiffs' counsel against other companies.[1] Given the cut-and-paste nature of this suit, it is therefore not surprising that Plaintiffs fail to allege any specific information that they provided on a VSP website that was allegedly shared with third parties without their permission and caused them harm—a flaw fatal to all of their claims. For this and multiple reasons set forth below, their claims must be dismissed.

*First*, dismissal is required under Rule 12(b)(1) because Plaintiffs fail to allege an injury-in-fact. Plaintiffs do not allege facts showing that anything private or sensitive was collected from them or shared by VSP without their permission. *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) ("To survive a [Rule 12(b)(1)] motion to dismiss, a plaintiff must identify the 'specific information she disclosed that implicates a protectable privacy interest.'"). Plaintiffs' conclusory assertions of disclosure of "Private Information" are insufficient, as are assertions based on the categories of information that Plaintiffs speculate could be collected from other website visitors, but which they do not allege were collected from them. *Popa v. Microsoft Corp.*, --- F.4th ---, 2025 WL 2448824, at *6 (9th Cir. 2025) (affirming dismissal for lack of standing for failure to allege collection of anything "embarrassing, invasive, or otherwise

[1] *See, e.g.*, Request for Judicial Notice ("RJN") 5-7; Declaration of David H. Marenberg ("Marenberg Decl."), Exs. 28-30.

private"). And even if their sensitive or private information was collected by VSP (which they do not allege), they claim no resulting harm—not even the receipt of a targeted advertisement based on their browsing activity. *Cook v. GameStop, Inc.*, 148 F.4th 153, 159 (3d Cir. 2025) (holding that disclosure of browsing activity to Microsoft, "not the broader public," was not analogous to harm associated with tort of public disclosure of private facts). Plaintiffs have not suffered an economic harm because they do not allege any diminished property interest in their information collected by VSP, nor were they deprived of the benefit of any bargain with VSP by using a free tool available to the non-paying public on VSP's website.

*Second*, Plaintiffs' claims are subject to dismissal on multiple grounds under Rule 12(b)(6). Plaintiffs' failure to allege facts specific to their alleged use of VSP's website dooms all of their claims; their conclusory assertions that they provide, or VSP collected, something "private" or "health-related" from them are not presumed true. *Doe v. Davita Inc.*, No. 23-cv-01424-AJB-BLM, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024) (dismissing the same claims as Plaintiffs allege here where plaintiffs "fail[ed] to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta").

Plaintiffs' claims against Defendants VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC are impermissible shotgun pleadings that must be dismissed because Plaintiffs do not allege any conduct by these parties whatsoever. *See Montoya v. Countrywide Bank, F.S.B.*, No. C09-00641 JW, 2009 WL 1813973, at *3 (N.D. Cal. June 25, 2009) (dismissing claims where complaint "[did] not allege any independent facts as to [the defendants'] conduct outside of listing them as 'Defendants'").

Plaintiffs cannot state a claim under the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* ("ECPA" or "Wiretap Act") or CIPA because VSP was the intended recipient of their website interactions and VSP lawfully consented to any disclosure of communications to third parties for marketing purposes. *See Pena v. Gamestop, Inc.*, 670 F. Supp. 3d 1112, 1118-19 (S.D. Cal. 2023) (ECPA liability from disclosure to third party foreclosed where plaintiff intended to communicate with defendant).

Plaintiffs' common law (and Tash's constitutional) invasion of privacy claims fail for the same reasons that Plaintiffs lack standing; they allege no facts that show that VSP's collection or disclosure for marketing purposes of their routine browsing activity on a public website is a public disclosure of private

facts, an intrusion upon seclusion, or an egregious breach of social norms.

Plaintiffs' conversion claims also fail. Hahn's claim fails because Illinois recognizes no property interest in intangible information provided online. *See Z's IT Consulting Servs., Inc. v. Hunt Law Group, LLC*, 256 N.E.3d 479, 485 (Ill. Ct. App. 2024). Tash's California claim fails because his browsing activity is not property that he exclusively owns. *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964-SB-E, 2024 WL 5279224, at *11 (C.D. Cal. Dec. 24, 2024) (no exclusive property interest in data created when plaintiffs visited websites).

All of Tash's claims are also time-barred except for his claim under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"). Tash claims to have used an unidentified VSP website *four years ago*, well outside of the statutes of limitations that apply to his claims. Tash alleges no facts that would support the tolling of his claims, because he does not allege when he allegedly discovered the facts supporting his claims, nor does he explain why he could not have brought his claims against VSP earlier. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010) (dismissing claims where plaintiff did not plead "the time and manner of her discovery of the facts giving rise to her claims").

Tash's UCL claim should be dismissed because it is based entirely on borrowed violations of his other failed (and time-barred) claims. He also fails to allege the loss of money or property required for statutory standing. The disclosure of unidentified personal information, even to VSP's alleged benefit, is not a loss where, as here, Tash does not allege that he was forced to sell his information or interactions at a reduced price. *Gardiner v. Walmart Inc.*, No. 20-cv-04618-JSW, 2021 WL 2520103, at *4 (N.D. Cal. Mar. 5, 2021). Nor can Tash allege a benefit-of-the-bargain loss based on his purchase of insurance, because the websites he claims to have used are free to the non-paying public regardless of insurance status. *See Winzig v. Stockpile Investments, Inc.*, No. 2:21-cv-02170-RGK-E, 2021 WL 4812956, at *12 (C.D. Cal. July 2, 2021) (no benefit-of-the-bargain loss "[w]ithout an exchange of money for services").

Tash's CMIA claim fails because he alleges no facts showing that VSP disclosed his medical history, conditions, treatments, or that he was a patient of VSP. *Beltran v. Doctors Med. Ctr. of Modesto*, No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467, at *9 (E.D. Cal. June 9, 2025).

Tash's claim for secondary liability under CIPA fails because he does not allege that VSP willfully aided any technology provider's violation of CIPA, or that any third party that acquired his website

interactions knew that its conduct violated the law. *See Smith v. YETI Coolers, LLC*, 2025 WL 877127, at *1 (N.D. Cal. Mar. 14, 2025) (allegation that defendant knew third party software was placed on its website to "collect[] consumers' sensitive information" insufficient to infer that "[d]efendant knowingly agreed with or employed [the third party] to engage in conduct that violated the wiretapping statute").

Tash has no claim under CIPA for the unauthorized use of a "pen register" by VSP because he alleges that the technologies VSP used collected the "contents" of "communications," which categorically excludes them from the statutory definition of a "pen register." Pen. Code § 638.50(b). Further, CIPA's text and legislative history make clear that the prohibition against pen registers applies only to devices that collect telephone information—not technologies used online, as numerous courts have recognized. *See, e.g.*, *Sanchez v. Cars.com, Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025).

Finally, Plaintiffs' request for an award of punitive damages should be dismissed because they allege no facts showing that VSP acted with the malice required for this extraordinary award. *Martin v. Sephora USA, Inc.*, Case No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *18 (C.D. Cal. Mar 7, 2023).

The CAC should be dismissed without leave to amend.

## II. FACTUAL ALLEGATIONS

VSP is a vision insurance provider. VSP "owns and controls VSP.com, chooseVSP.com, visioncare.vsp.com, VSPdirect.com," and a mobile app (collectively, the "Website" or "Websites"). CAC at 1.[2] Plaintiffs lump VSP and a nonexistent entity, "VSP Ventures, [sic]" together as "Defendant." *Id.* Plaintiffs do not allege that VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC, engaged in any conduct. whatsoever *Id.* at 1 & ¶¶ 27-29.

Plaintiffs' claims are premised on VSP's alleged use of ubiquitous commercial tools supplied by third parties—the "[Meta] Pixel, [Meta] SDK, [Meta] Conversions API, Google Analytics, Google Tag Manager, DoubleClick (owned by Google), [and] LinkedIn's marketing tools" (the "Tracking Tools"). *Id.* ¶¶ 2, 51, 60. Plaintiffs make the conclusory assertion that VSP used the Tracking Tools to "track, record, and disseminate" their "online activities" and the "substance of [their] communications" to VSP to "Meta, Google, and LinkedIn" for advertising purposes. *Id.* ¶¶ 7, 53. But although they claim that the Tracking

[2] The URL visioncare.vsp.com merely redirects users to vsp.com.

Tools have the ability to collect a host of information, (*see id.* ¶¶ 60, 65, 77-85, 88-90, 139), they only allege that the Tracking Tools collected broad, non-specific categories of data from them:

- Unidentified "search parameters" or other browsing activity allegedly used to locate a provider;
- "Additional persistent identifiers that reveal [their] real-world identit[ies]";
- A Facebook ID ("FID"); and
- An IP address.

CAC ¶¶ 148, 150, 156. Plaintiffs concede that an FID can only identify them if they were also logged into Facebook while visiting a Website, which they do not allege. *Id.* ¶ 56. And although Plaintiffs complain about the sharing of an FID with Google and LinkedIn (*id.* ¶¶ 150, 156), they do not allege that either entity can identify them based on the categories of information that VSP allegedly shared.

Tash's claims arise from his visit to an unidentified Website four years ago. *Id.* ¶ 147. He claims he "us[ed] the 'Find a Doctor' form and webpage," on a Website. *Id.* While he conveniently remembers using "every filtering feature available to obtain the narrowest selection," *id.* ¶ 149, four years ago each Website had a different "Find a Doctor" page, each of which allowed for the selection of multiple variations of different categories of information. RJN 2-4, Marenberg Decl., Exs. 1-14.[3] For example, on the vsp.com Website, if a user elected to search by services, products, or type of doctor, the user could only make selections from preset lists for items such as "Vision Therapy," "Preventative Eye Care," "Special Offers & Sales," "Telemedicine," "Doctor Profiles," and "CareCredit Credit Card." *Id.*, Exs. 8-14. Despite failing to allege any information that he actually provided on a Website, Tash concludes that he communicated "(1) the type of physician or medical provider he was seeking; (2) the specific medical services he was seeking; (3) the vision product sought during his visit; [and] (4) his location" as well as the catchall "additional details about his desired physician and their practice area." *Id.* ¶ 149. He does not claim to have ever made an appointment or purchased any vision products or services.

Hahn's allegations are even more conclusory. He only claims that in July of 2024 he searched "for

[3] In 2021 and 2024 (when Tash and Hahn allegedly visited a VSP Website, respectively), the vspdirect.com "Find a Doctor" page only contained a field for entry of a zip code, and the choosevsp.com "Find a Doctor" page only contained fields for a zip code or city, or, alternatively, a doctor's last name or office name and a state. *See* Defendants' Request for Judicial Notice ("RJN") 2-4; Marenberg Decl., Exs. 1-4, 16-19. Plaintiffs misleadingly offer only partial screenshots of some current drop-down options on a "Find a Doctor" page on vsp.com. CAC ¶¶ 78, 82-83. The Court may consider complete historic screenshots of these options on the vsp.com "Find A Doctor" page from 2021 and 2024, including because Tash's alleged use of "every filtering feature available" on an unidentified "Find a Doctor" webpage is essential to his claims. *See* CAC ¶ 149.

an in-network healthcare provider in his geographic area." CAC ¶ 155. He does not allege any information that he provided on any Website to accomplish this search. *Id.* ¶¶ 155-56.

Plaintiffs allege no harm from VSP's collection or transmission of their unidentified browsing activity. Plaintiffs claim that the Tracking Tools were used by VSP for the "sole purpose" of serving targeted advertising, but neither claims to have received any targeted advertisements. *Id.* ¶ 105. Plaintiffs contend that personal and medical information in general has monetary value, but they do not claim that whatever they shared with VSP—which they do not allege—was valuable, that they intended to sell it, or how any value it had was diminished. *Id.* ¶¶ 105-18. Plaintiffs claim that they "overpaid for insurance services they believed included data security," but neither paid anything to use the Website—rather, use of the Website is free to all, regardless of insurance status.[4]

None of the screenshots in the CAC depict Plaintiffs' own use of the Website. Rather, the CAC incorporates screenshots used by Plaintiffs' counsel to support claims against different website operators in different cases. For example, paragraph 68 shows a redacted screenshot, the unredacted version of which is shown in paragraph 67 of Tash's original complaint with a full FID. *Compare id.* ¶ 68 *with* Dkt. 1 ¶ 67. That same FID is used in a screenshot from a *different* complaint filed by Tash's counsel against a *different* defendant in Tennessee on behalf of a *different* named plaintiff.[5] Other screenshots depict a search for an optometrist located in Vallejo, CA, and a search using a street address in American Canyon, CA, neither of which are anywhere near Plaintiffs' alleged residences. CAC ¶¶ 24-25, 78-82.

## III. <u>PROCEDURAL HISTORY</u>

The CAC is the fourth complaint against VSP by an overlapping group of plaintiffs' counsel. VSP was first sued for the claims that Plaintiffs assert in California state court by Hahn's counsel. *Tendick v. VSP Global LLC*, No. C24-01923, Dkt. 1 at 30 (Cal. Super. Ct. filed July 22, 2024). Hahn's counsel voluntarily dismissed *Tendick*, (*see* Marenberg Decl., Ex. 20), but immediately refiled the same case in Illinois federal court, adding Hahn. *Marianna Tendick and Peter Hahn v. Vision Service Plan*, No. 1:24-cv-12456, Dkt. 1 (N.D. Ill. filed Dec. 4, 2024) (*Hahn I*). When VSP moved to dismiss *Hahn I* (*id.*, Dkt.

---

[4] In 2021 (and as of the date of this filing), all Website visitors could input search queries for free through the "Find a Doctor" page. RJN 2-4; Marenberg Decl., Ex. 15; *see* https://vsp.com/eye-doctor (last visited Oct. 6, 2025).

[5] *See Phelps v. Fast Pace Med. Clinic, PLLC*, Case 3:24-cv-00352, Dkt. 1 ¶ 86 (M.D. Tenn. filed Mar. 28, 2024).

22), in March of 2025, Tash filed his nearly-identical suit here. *See Tash v. Vision Service Plan et al.*, No. 2:25-cv-00762-DJC-JDP, Dkt. 1 (E.D. Cal. filed Mar. 6, 2025). Hahn's counsel then voluntarily dismissed *Hahn I* (*Hahn I*, Dkt. 36) rather than file an opposition to VSP's motion to dismiss, and refiled the same claims here, copying *Tash*'s allegations nearly verbatim. *Compare Hahn v. Vision Services Plan*, No. 2:25-cv-01580-DJC-JDP, Dkt. 1 (E.D. Cal. filed June 5, 2025) ("*Hahn II*") *with Tash*, Dkt. 1.

## IV. PLAINTIFFS DO NOT ALLEGE ARTICLE III STANDING

### A. Standards for Dismissal Under Rule 12(b)(1) and Article III

"[T]he party seeking to involve the jurisdiction" of an Article III federal court bears "the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). On a Rule 12(b)(1) facial attack, a court accepts as true only "well-pleaded factual allegations[,]" *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 822 (9th Cir. 2020), not "conclusory allegations, unwarranted deductions of fact, [or] unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In a putative class action, named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . . . " *Id.* at 338 n.6. A plaintiff "must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

A bare statutory violation "is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Rather, a plaintiff must have "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 330. The alleged injury must be tangible ("such as physical harms and monetary harms") or have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts[.]" *TransUnion*, 594 U.S. at 425. Courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.*

In assessing standing based on an alleged injury to privacy, courts do not analogize to a "free-roaming privacy right at common law." *Popa v. Microsoft Corp.*, __ F.4th __, 2025 WL 2448824, at *6 (9th Cir.

2025). Instead, a plaintiff must "identif[y] a harm that [he] experienced" that is similar to the "specific kinds of privacy-related harms" protected by "four discrete torts": (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) public disclosure of private facts, and (4) public portrayal in a false light. *Id.* The analogous harm cannot be conclusory; the plaintiff must "demonstrate injury." *Perry v. Newsom*, 18 F.4th 622, 632 (9th Cir. 2021). Harms allegedly based on the disclosure of browsing information therefore require courts to assess "whether the information at issue is actually personal and private." *Carolus v. Nexstar Media Inc.*, No. 24-cv-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025).

**B. Plaintiffs Have Not Alleged An Article III Injury**

1. Plaintiffs Do Not Allege That Their Private Information Was Disclosed

Plaintiffs fail to establish an injury in fact because they do not allege what information, let alone what private information pertaining to them (as opposed to hypothetical users), was collected by VSP and disclosed to third parties without their consent. Courts have generally held that a plaintiff's failure to specify the information disclosed in a privacy case warrants dismissal under Rule 12(b)(1) because Article III standing requires injury to a "protectable privacy interest" identified in the complaint. *See, e.g.*, *Mikulsky*, 682 F. Supp. 3d at 864. Plaintiffs' conclusory assertions that their own "Private Information" was disclosed to third parties (CAC ¶ 1) are not presumed true. *See Sprewell*, 266 F.3d at 988. Similarly, Plaintiffs' assertions of the categories of information that could be collected from Website visitors are insufficient to show an injury in fact. *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (granting Rule 12(b)(1) motion to dismiss where plaintiff failed to adequately allege what private or personal information they provided to defendant). These bare allegations "do[] not allow the Court to determine whether Plaintiff has a protectable privacy interest" in any information VSP collected or disclosed, even where, as here, Plaintiffs used a health-related website. *Mikulsky*, 682 F. Supp. 3d at 864; *Toston v. JetBlue Airways Corp.*, No. 2:23-cv-01156-SVW-E, 2023 U.S. Dist. LEXIS 148675, *6 (C.D. Cal. Aug. 23, 2023) ("simply mentioning 'personal information'" is insufficient to confer standing because "some 'personal information' may implicate [a] privacy interest, while others may not").

The only specific information that Plaintiffs claim to have provided on the Websites are their IP addresses, location information, and possibly an FID. *See* Section II, *supra*. Courts routinely hold that the

collection and sharing of this non-sensitive information online does not "cause the kind of harm that can be vindicated in federal court." *Carolus*, 2025 WL 1338193, at *1 (disclosure of IP address, general location of device by zip code, "'browser and device data' and 'other identifying information'" did not confer standing); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (disclosure of contact information, app login information, and Facebook username did not create a privacy injury); *Ji v. Naver Corp.*, No. 21-cv-05143-HSG, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "user and device identifiers" could not give rise to "a privacy injury"). Nor do courts accept as true Plaintiffs' premise that if disclosed, their IP addresses or FIDs, without more, could identify them. *Carolus*, 2025 WL 1338193, at *1; *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (disclosure of FIDs does not alone constitute a privacy injury because it at most links browsing activity to a Facebook account, which may not have contained any personally identifying information). Thus, the case is at most about the disclosure of anonymous browsing activity, which does not confer standing. *Lightoller v. Jetblue Airways Corp.*, No. 23-361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (interception of anonymous browsing activity, regardless of sensitivity, did not establish injury-in-fact).

### 2. Plaintiffs Do Not Allege An Injury Closely Related To A Traditional Privacy Tort

Even if Plaintiffs had alleged the information VSP allegedly collected or shared, Plaintiffs allege no resulting harm with a "close relationship" to one of the "four discrete torts that protected specific kinds of privacy-related harms" at common law. *TransUnion*, 594 U.S. at 425; *Popa*, 2025 WL 2448824, at *5.

Plaintiffs cannot allege a harm closely related to the tort of intrusion upon seclusion because they purposefully provided VSP whatever information they input on the Website; VSP did not intrude. *See* CAC ¶ 49 (alleging that VSP was the "intended recipient" of Plaintiffs' communications); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. May 13, 2025) ("[A] person generally 'has no legitimate expectation of privacy in information he voluntarily turns over to third parties'" even if revealed "'on the assumption that it will be used only for a limited purpose'"); *O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 246 (4th Cir. 2023) (holding that plaintiff failed to allege an "injury with a close relationship to 'intrusion upon seclusion'" because he "pleaded that he chose to hand over his partial SSN" to the defendant).[6] Plaintiffs'

[6] *See also Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025) ("[O]ne cannot logically intrude onto communications to which they are a party"); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 944 (N.D. Ill. 2023) (finding that the defendant's alleged "deployment of third-party source code

use of preset filters on a tool in an unauthenticated area of a public website is also not a place of objective seclusion into which VSP can intrude. *See Cook*, 148 F.4th at 160 (collection of plaintiff's alleged browsing activity was "not analogous to the harm associated with intrusion upon seclusion" because "most of us understand that what we do on the Internet is not completely private"); *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *8 (D. Ariz. Sept. 30, 2024) (holding that plaintiffs did not allege the defendant's intrusion into "solitude or seclusion" where information was communicated on public healthcare website).

Further, even where specific allegedly sensitive health information is conveyed to third parties—which Plaintiffs do not allege here—courts have found no concrete harm where there has been no disclosure to the general public. The harm addressed by the public disclosure tort is the "humiliation that accompanies the disclosure of sensitive or scandalizing private information to <u>public</u> scrutiny," which Plaintiffs do not allege based on disclosures to Meta, Google, or LinkedIn, let alone "computers and/or algorithms" at those companies. *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023) (emphasis added) (ruling that the private disclosure of even sensitive information is "not analogous to the harm at the core of the public-disclosure tort"); *Cook*, 148 F.4th at 159 (disclosure of even sensitive information "to Microsoft . . . not the broader public" insufficient to create standing); *Andrews v. Prisma Health*, No. 6:23-cv-03153-JDA, 2024 WL 3861384, at *1, 6-7 (D.S.C. Aug. 16, 2024) (health provider's disclosure of plaintiff's use of website to "research medical symptoms [and] make appointments" to "undisclosed third parties such as Meta" was insufficiently related to harm accompanying public disclosure); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024) (alleged disclosure of plaintiff's personal health information to "some of the world's largest advertising companies" not a public disclosure); *Porten v. Univ. of San Francisco*, 64 Cal. App. 3d 825, 828 (1976) ("The [public disclosure of private facts] tort must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons . . . ."); CAC ¶ 101.

Similarly, Plaintiffs' conclusion that their information was shared for the purpose of serving targeted advertisements does not transform their allegations into a concrete harm, especially where, as here,

---

that causes the transmission of patient data" voluntarily provided by the plaintiff was not analogous to the harm at issue in an intrusion upon seclusion claim).

Plaintiffs do not allege that they themselves were subjected to any targeted ads. *Andrews*, 2024 WL 3861384, at *7 & n.9 ("conclusory allegation[s] about what Facebook generally does with confidential information it receives from businesses who use its tools" were insufficient to infer a public disclosure without allegations that "Facebook sold *Plaintiff's* Private Information or that Plaintiff received targeted marketing after using the Website").

Finally, disclosing to a third party that an individual merely searched for a local provider comes nowhere close to the egregious breach of social norms required to show the injury associated with a common law privacy tort. The Ninth Circuit recently made clear that even where an entire website visit is recorded and shared—more than allegedly occurred here—absent the disclosure of anything "embarrassing, invasive, or otherwise private," plaintiffs allege no harm that creates Article III standing. *Popa*, 2025 WL 2448824, at *5. Here, although Plaintiffs' repeat the legal conclusions "private," "sensitive," "confidential," "patient[,]" and "health-related" throughout the CAC, they allege no facts that show that anything private, sensitive, confidential, or patient/health related to them was disclosed, and they do not, therefore establish an egregious breach of social norms. CAC ¶¶ 1, 64, 92, 95, 101, 151; *see Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (disclosure of plaintiffs' searches for doctors did not "reveal details of an individual's health status or medical history" and thus did not disclose sensitive information).[7] Their use of a "Find a Doctor" page is akin to what might be casually observed in the aisles of a drug store or near a kiosk of brochures in a public waiting area for an eye appointment. It is not remotely "similar to the 'highly offensive' interferences or disclosures that were actionable at common law," such as taking "intimate" pictures of an individual through her upstairs bedroom or publishing a picture of a woman nursing her child without her consent. *Popa*, 2025 WL 2448824, at *5.

3. <u>Plaintiffs Fail To Allege A Tangible Monetary Harm</u>

Any alleged monetary injury by Plaintiffs is purely hypothetical. Apart from generic allegations that digital and health-related data has value (*see* CAC ¶¶ 105-118), Plaintiffs do not allege that they have attempted to sell whatever unspecified data they provided to VSP, or were forced to sell it at a lower price.

[7] *See also Santoro v. Tower Health*, No. 22-4580, 2024 WL 1773371, at *4 (E.D. Pa. Apr. 24, 2024) (allegation that plaintiff used website to request "information about specific [in-network] Health Providers and locations, and information about specific health conditions, treatments, and medications" insufficient to allege communication of any private health information "absent allegations of "the specific pages [Plaintiff] clicked on, his medical condition, or his history of medical care with [the defendant]").

*In re Illuminate Educ. Data Sec. Incident Litig.*, No. 8:22-cv-01164-JVS (ADSx), 2023 WL 8888839, at *6 (C.D. Cal. Nov. 6, 2023) (no Article III standing where plaintiffs failed to allege both the existence of a market for their personal information and "that they lost the ability to use or sell their data"); *I.C.*, 600 F. Supp. 3d at 1054 ("Even assuming the existence of a market for the information taken in this case, the SAC is devoid of any allegations describing how the breach devalued plaintiffs' specific information").

Nor do Plaintiffs allege a benefit-of-the-bargain loss. Plaintiffs do not allege they paid anything to search the Website or use the "Find a Doctor" tool, which are available for free.[8] *See Winzig v. Stockpile Investments, Inc.*, No. 2:21-cv-02170-RGK-E, 2021 WL 4812956, at *12 (C.D. Cal. July 2, 2021) ("Without an exchange of money for services, there is no injury-in-fact based on a benefit-of-the-bargain loss."); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 809-11, 834 (N.D. Cal. 2020) (holding that plaintiff failed to allege benefit of the bargain damages based on overpayment for free assistant software). For example, in *Beltran*, 2025 WL 1635467, the court rejected allegations that plaintiffs entered into an implied bargain with defendant healthcare providers under which they provided personal health information on a webpage to "search for doctors" in exchange for a purported "promise to safeguard Plaintiffs' information." *Id.* at *2-3, *5. The court reasoned that the plaintiff did not allege the defendants received any consideration for providing the websites to the plaintiffs. *Id.* at *12. As in *Beltran*, here, Plaintiffs do not allege that they paid for a right to use the Website—which is available for free to all visitors regardless of insurance status. Nor do Plaintiffs allege that they paid to be free from the use of their Website interactions for marketing purposes. They have therefore suffered no benefit-of-the-bargain loss. *Dinerstein v. Google, LLC*, 73 F.4th 502, 517 (7th Cir. 2023) (rejecting benefit-of-the-bargain theory of harm based on disclosure of alleged confidential medical information where plaintiff did not allege defendant charged a "discrete 'patient-confidentiality fee'"); *Andrews*, 2024 WL 3861384, at *8-9 (plaintiff failed to allege a benefit-of-the-bargain injury sufficient to create standing where she "[did] not allege that the value of any medical services [she] purchased from [defendant] was diminished because of the disclosure of [her] Private Information").

## V. PLAINTIFFS FAIL TO STATE ANY CLAIM FOR RELIEF

[8] *See also* RJN 2-4; Marenberg Decl., Exs. 1, 15; https://vsp.com/eye-doctor (last visited Oct. 6, 2025).

### A. Standards For Dismissal Under Rules 8 And 12(b)(6)

Rule 12(b)(6) requires that a plaintiff allege facts showing that his or her right to relief rises above a "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and conclusory allegations are not presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678-79 (2009). "When an affirmative defense is obvious on the face of a complaint . . . a defendant can raise that defense in a motion to dismiss." *Weston v. Lefiti*, No. 24-541, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024).

Rule 8 requires that a complaint "clearly and fully set forth 'who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *Martin*, 2023 WL 2717636, at *5. A plaintiff may not engage in "[s]hotgun pleading[,]" which "occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically . . . ." *Hughey v. Camacho*, No. 2:13-cv-2665-TLN-AC, 2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014).

### B. Plaintiffs' Conclusory Assertions Fail To Plausibly Plead Any Claim

Plaintiffs fail to state a claim under any cause of action because they allege no facts showing the information they entered on any Website that was allegedly collected or shared without their permission. *See* CAC ¶¶ 148-50, 155-56. Courts regularly dismiss privacy claims where, as here, plaintiffs fail to "identify with specificity what information *they* provided to Defendants via their browsing activity . . . and thus what information was subsequently transmitted" to a third party. *Beltran*, 2025 WL 1635467, at *5 (emphasis added) (noting complaint "span[ned] over fifty pages" but "only two pages are dedicated to detailing Plaintiffs' interactions with Defendants' Website"); *Davita*, 2024 WL 1772854, at *2 (dismissing the same claims as Plaintiffs allege here for "fail[ing] to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta"); *Doe v. Amgen, Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024) (same); *Harrill v. Emanuel Med. Ctr.*, No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428, at *5 (E.D. Cal. June 9, 2025) (same). Like the plaintiff—also represented by Tash's counsel—in *Davita*, Plaintiffs here merely offer speculations about what their generic browsing could have revealed, without providing any specific facts showing information from them that VSP collected or shared without permission. 2024 WL 1772854, at *2. The

CAC should be dismissed in its entirety based on Plaintiffs' conclusory allegations alone.

**C. All Claims Against Defendants Other Than VSP Should Be Dismissed**

The claims against VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC, must be dismissed because Plaintiffs do not allege that these defendants engaged in any unlawful conduct. These defendants appear to be named solely because they are owned by VSP and located in California. *See* CAC at 1, ¶¶ 27-28. Plaintiffs allege no facts pertaining to these defendants, which requires their dismissal. *Montoya*, 2009 WL 1813973, at *3 (dismissing claims where complaint "[did] not allege any independent facts as to [the defendants'] conduct outside of listing them as 'Defendants'"). To the extent Plaintiffs intended to lump all four defendants in the definition of "Defendant" (*see* CAC at 2), such "group pleading" also warrants dismissal. *Ji*, 2022 WL 4624898, at *6 (granting motion to dismiss allegations against "undifferentiated groups of defendants, without specifying what entity or entities supposedly took what particular actions").

**D. The Party Exception Bars Plaintiffs' ECPA Claims**

1. VSP Was The Intended Recipient Of Any Alleged Communications

Plaintiffs' ECPA claims against VSP are barred by the party exception, 18 U.S.C. § 2511(2)(d), which provides that "par[ties] to the communication" are exempt from liability "where one of the parties to the communication has given prior consent to such interception" "unless such communication is intercepted for the purpose of committing any criminal or tortious act . . . ." *Pena*, 670 F. Supp. 3d at 1118-19 (party exception foreclosed liability under ECPA where plaintiff pleaded that he communicated with defendant). This exception bars Plaintiffs' claims based on interception as well as disclosure or use. *Weston*, 2024 WL 4579237, at *2 (claims based on defendant's disclosure or use of intercepted communications failed where defendant was intended recipient). Plaintiffs expressly allege that VSP was the "intended recipient" of their communications. CAC ¶ 49. The party exception bars their ECPA claims.

2. The Crime-Tort Exception Does Not Apply

Plaintiffs' conclusory allegation that their "communication[s] [were] intercepted for the purpose of committing a tortious or criminal act" (*see* CAC ¶ 251 (citing 18 U.S.C. § 2511(2)(d))) fails to negate the party exception. The crime-tort exception does not apply where, as here, Plaintiffs allege that VSP's primary purpose for intercepting their browsing activities was economic because criminal or tortious intent

is lacking. *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (crime-tort exception "cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'"); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (where apparent purpose was to "use the information collected for market research and consumer analysis[,]" crime-tort exception did not apply). Here, Plaintiffs allege that VSP used the Tracking Tools to "commoditiz[e]" their private information for "commercial advantage" and optimize its own "marketing campaign[s]." *E.g.*, CAC ¶¶ 62, 89, 106, 274. Plaintiffs therefore fail to allege that VSP acted with tortious or criminal intent.

Moreover, Plaintiffs allege no separate "criminal or tortious act" that would prevent application of the party exception under ECPA. *See* 18 U.S.C. § 2511(2)(d). It is not enough that the same alleged conduct incidentally violates another criminal statute or provides a basis for a tort claim for the exception to apply. *See Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("The focus is not upon whether the interception itself violated another law . . . ."); *B.K.*, 721 F. Supp. 3d at 1065 (interception must be "for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself"). Plaintiffs' other claims (CAC ¶ 254) are based on the same underlying conduct as their ECPA claims, not separate "criminal or tortious act[s]." *Weston*, 2024 WL 4579237, at *2 & n.2 (allegations that defendant intercepted for the purpose of invading privacy, violating CIPA, or violating a constitutional right to privacy failed to allege intent to commit separate crime or tort); *Kaiser*, 2024 WL 1589982, at *10 (holding that a HIPAA violation based on the knowing disclosure of health information to third parties "cannot be the crime or the tort"); *Pena*, 670 F. Supp. 3d at 1120 (holding that CIPA Section 631(a) violation could not be used for crime-tort exception).

Finally, Plaintiffs' boilerplate claim that VSP disclosed their individually identifiable health information ("IIHI") (*see* CAC ¶¶ 125, 255-57) fails to allege a violation of the HIPAA Privacy Rule (43 U.S.C. § 1320d-6), even if that violation could serve as a separate crime or tort under the exception.[9] IIHI must "relate[] specifically to Plaintiffs' health" as opposed to "general health information that is accessible to the public at large." *Kurowski*, 683 F. Supp. 3d at 843 (holding that plaintiff failed to allege a violation

[9] Plaintiffs' reference to a violation of the FTC Act, 15 U.S.C. § 45, is duplicative of their Privacy Rule allegations, since it is based on an FTC statement that HIPAA-regulated entities should comply with the HIPAA Privacy Rule when using tracking technologies to avoid a potential FTC Act violation. *See* CAC ¶¶ 121-22 & n.44, 248.

of the HIPAA Privacy Rule where she "fail[ed] to allege any particular health or treatment information disclosure specific as to [her] that [Defendant] allegedly made to any third-party"). For example, the combination of plaintiffs' device information, Meta cookies, an IP address, and URLs revealing that plaintiffs searched for "intestine transplant" or "information about a specific doctor," or navigated to "pages containing information about treatment options for melanoma" does not constitute IIHI because the URLs conveyed "publicly available medical information" that did not "relate specifically to Plaintiffs' health." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017) ("[T]he connection between a person's browsing history and his or her own state of health is too tenuous to support [the] contention that the disclosure requirements of HIPAA . . . apply.") (emphasis added), *aff'd*, 745 F. App'x at 9 (9th Cir. 2018);[10] *Beltran*, 2025 WL 1635467, at *6 (holding that "generally browsing for information on . . . doctors on Defendants' Website" outside of a patient portal failed to allege the disclosure of IIHI).

For example, in *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 789, 801, 803 & n.7 (N.D. Tex. 2024), a court recently held that the combination of an individual's IP address with query activity on a healthcare provider's webpage "addressing specific health conditions or healthcare providers" is not IIHI since it "'does not, in itself, identify the individual searcher and their condition" without an "unknowable subjective-intent element[,]" citing *Smith*. *Id.* (emphasis added); *see also Hannant v. Culbertson Mem. Hosp.*, No. 4:24-cv-04164-SLD-RLH, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025) (allegations that plaintiff used website to "find a specific physician, . . . research treatments, . . . [and] search for treatment information" lacked "detail necessary to plausibly invoke the crime-tort exception via a HIPAA violation"); *Doe v. Upperline Health, Inc.*, No. 1:23-cv-01261-RLY-CSW, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024) (nothing about plaintiff's alleged use of website to "search for a podiatrist" related "specifically to *her* health or relationship with [defendant]").[11] As in all these cases, Plaintiffs fail to allege any specific information they communicated about their own unalleged medical conditions or treatment, alone or in combination, that plausibly constitutes IIHI.

---

[10] Indeed, the URL at issue in *Smith* originated from a doctor search tool on a medical provider's website. *Smith*, 262 F. Supp. 3d at 954 n.5 (http://www.shawneemission.org/find-adoctor?doctor=Scott-E-Ashcraft-MD-1407822869#.U77dgKhRa-k).

[11] The 2022 Health and Human Services Bulletin guidance on the definition of IIHI referenced by Plaintiffs (CAC ¶¶ 119-22, 132-34) has been declared unlawful under the Administrative Procedure Act. *Becerra*, 738 F. Supp. 3d at 807. It is also afforded no deference. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024); *see also Kurowski*, 683 F. Supp. 3d at 844 (rejecting this HHS interpretation of HIPAA's definition of IIHI since it went "well beyond the meaning of what the statute can bear").

**A. Plaintiffs' Invasion Of Privacy Claims Fail**

1. Plaintiffs Fail To Allege An Intrusion On Their Seclusion

To state a claim for intrusion upon seclusion, a plaintiff must plead that (1) the defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]" and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Similarly, to state a claim for invasion of privacy under the California Constitution, a plaintiff must (1) possess a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) an "intrusion . . . so serious in 'nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.'" *Id.* at 287. The elements of these two claims are "largely parallel." *Heeger*, 509 F. Supp. 3d at 1193. Egregiousness under the third element is a "high bar." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933,945 (N.D. Cal. 2024).

Plaintiffs' intrusion upon seclusion claims under CA and IL law[12] and Tash's constitutional invasion of privacy claim fail because VSP cannot "intrude" on communications that Plaintiffs intended it to receive. *Saedi*, 2025 WL 1141168, at *6-8 (dismissing intrusion upon seclusion claim because "one cannot logically intrude into communications to which they are a party"); *Kurowski*, 659 F. Supp. 3d at 943-44 (same); *Williams*, 2024 WL 4364150, at *7 (same).

2. Plaintiffs Fail To Allege A Public Disclosure

Plaintiffs' claims that VSP shared their "Private Information" with "unauthorized third parties" fail to allege the required publicity element of a public disclosure of private facts claim. *See* Section IV.B.2, *supra*; CAC ¶ 272; *Porten*, 64 Cal. App. 3d at 828. VSP's alleged disclosures to "computer[s] and/or algorithms" at Meta (CAC ¶ 101), with no allegation that Plaintiffs later received any targeted advertising, are not disclosures "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Hassan v. Facebook, Inc.*, No. 19-cv-01003-JST, 2019 WL 3302721, at *3 (N.D. Cal. July 23, 2019) (allegations that defendant "allowed 'known and unknown companies' to access [the plaintiffs'] private messages" failed to allege publicity); *Nienaber*, 733

[12] Plaintiffs cannot assert common law claims under the laws of states in which they do not reside. *See, e.g.*, *Lum v. Merlin Entm'ts Grp. U.S. Holdings Inc.*, No. 20cv01049 JAH-MSB, 2023 WL 2583307, at *14 (S.D. Cal. Mar. 20, 2023) (dismissing common law claims to the extent brought under the laws of states in which the named plaintiffs neither resided nor allegedly purchased the product at issue, where plaintiffs did not specify under which states' laws their common law claims were asserted).

F. Supp. 3d at 1089 (disclosure to "world's largest advertising companies" a private disclosure).

3. Plaintiffs Fail To Allege An Egregious Violation Of Social Norms

Since Plaintiffs fail to allege facts showing that VSP collected or disclosed their private or medical information—as opposed to categories of information that someone else may have provided on a Website—Plaintiffs fail to allege an "egregious breach of social norms" or a "highly offensive" intrusion or disclosure. *See* Section IV.B.2, *supra*; *Beltran*, 2025 WL 1635467, at *8 (plaintiffs failed to allege an "egregious breach of the social norms" where they "d[id] not 'plead that their medical information was disclosed'" because "'[d]isclosing a user's browsing history' unrelated to the provision of healthcare or patient status 'does not plausibly reach the level of highly offensive conduct' required 'under either common law or the California Constitution'"). Indeed, even the disclosure of personally identifiable and highly sensitive information, such as Social Security Numbers, which did not occur here, is not an egregious breach of social norms. *Low*, 900 F. Supp. 2d at 1025 (disclosure of SSNs not enough to meet the "high bar" of "highly offensive" element under constitutional invasion of privacy claim).[13]

**B. Plaintiffs' Conversion Claims Fail**

Hahn cannot assert a common-law claim for conversion because Illinois does not recognize a convertible property interest in intangible information, like Hahn's Website interactions. *Z's IT*, 256 N.E.3d at 485 (no conversion claim for intangible property or property not "connected with something tangible").

Tash's conversion claim fails because he does not allege that VSP acquired property "capable of exclusive possession or control" over which he had "a legitimate claim to exclusivity." *Kremen v. Cohen*, 337 F.3d 1024, 1029-30 (9th Cir. 2003). He admits his search activity was created through his interactions with the Website and therefore incapable of exclusive possession or control. *Griffith*, 2024 WL 5279224, at *11 (*Kremen* "would appear to preclude a finding that Plaintiffs had a property interest in the data created when they visited and interacted with websites, because they necessarily shared the underlying information for those interactions with the websites and internet service providers"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) ("what LinkedIn profile pages are viewed by a user is not 'capable

[13] *Mastel v. Miniclip S.A.*, 549 F. Supp. 3d 1129, 1140 (E.D. Cal. 2021) (constitutional privacy claim not egregious where plaintiff did not specify contents of intercepted messages); *B.K.*, 721 F. Supp. 3d at 1067 (use of defendant's website for "routine medical searches and inquiries" could not give rise to a disclosure or intrusion that was egregious or highly offensive); *see What If Holdings*, 2022 WL 17869275, at *5 (constitutional privacy claim not egregious where plaintiff failed to allege a CIPA claim).

of exclusive possession or control'"). Tash likewise has no legitimate claim to exclusive possession of an IP address, device information immediately shared with his ISP, or an FID assigned *by Meta* to his browsing activity. *Low*, 900 F. Supp. 2d at 1030 (holding that a "user identification number generated by *LinkedIn* is not property over which Plaintiffs have 'established a legitimate claim to exclusivity'").

**C. The Majority Of Tash's Claims Are Time-Barred**

Tash's alleged visit giving rise to his claims occurred "in or around 2021[,]" at minimum <u>3 years and 61 days</u> before filing this action. CAC ¶ 147. All of his claims except his UCL claim are therefore time-barred. *Paplekaj v. FCA US, LLC*, No. 24-cv-1717-MMA-VET, 2025 WL 863472, at *3 (S.D. Cal. Mar. 19, 2025) (claims accruing "on or about" date outside limitations period were facially time-barred).[14]

Tash's conclusory allegations of tolling under the delayed discovery rule do not save his claims. CAC ¶ 156. The burden is on Tash to plead facts showing "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010). Tash alleges neither. *See id.* at 1131 (dismissing claims where plaintiff did not plead "the time and manner of her discovery of the facts giving rise to her claims"); *Javier v. Assur. IQ LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (delayed discovery doctrine "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action"). Further, his conclusory allegation that he could not discover the bases for his claims with reasonable diligence fails because it is not presumed true and is, further, belied by the screenshots in the CAC showing visible network traffic. CAC ¶¶ 80-82, 87, 90-91; *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *7 n.9 (N.D. Cal. July 1, 2024) ("[T]he Court cannot infer that Defendants' collection occurred in secret without particularized allegations to that effect.").

**D. Tash Does Not Allege The Disclosure Of Medical Information Under The CMIA**

Tash's CMIA claim fails because he does not allege the disclosure of any "medical information" or that VSP disclosed information "regarding a patient of [VSP]" in violation of the statute. Civ. Code §

---

[14] *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) ("CIPA's statute of limitations is one year"); 18 U.S.C. § 2520(e) (two-year limitations period for ECPA claims); Civ. Proc. Code § 335.1 (two-year limitations period for invasion of privacy and state constitutional claims); *Cain v. State Farm Mut. Auto. Ins. Co.*, 62 Cal. App. 3d 310, 313 (1976) (providing that Section 335.1 contains the statute of limitations for invasion of privacy claims); *AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631, 639 (2006) (three years for conversion of personal property claims, citing Civ. Proc. Code § 338(c)). The CMIA does not contain an express limitations period and is therefore governed by Civ. Proc. Code § 338(a).

56.10(a). "Medical information" is (1) "individually identifiable information" (2) "regarding a patient's" (3) "medical history, . . . mental or physical condition, or treatment." Civ. Code § 56.05(j).

*First*, Tash's conclusory assertion that his "patient," "treatment[,]" and "health" information were disclosed are not facts plausibly showing the disclosure of his medical history, conditions, or treatment. *See Gray v. Luxottica of Am., Inc.*, No. 8:24-cv-00160-MRA-DFJ, 2024 WL 5689566, at *9 (C.D. Cal. Dec. 16, 2024) ("The mere fact that the purportedly disclosed data reveals 'the type of treatment sought' . . . does not mean it amounts to information about Plaintiff's treatment protected from disclosure under the CMIA.") (emphasis added); *Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (conclusory use of "treatment" did not transform information about plaintiff's "medical examination . . . pursuant to a demand by the insurance carrier" into information about plaintiff's treatment under CMIA); *Beltran*, 2025 WL 1635467, at *9 (dismissing CMIA claim where plaintiffs failed to plead facts showing that their searches for doctors "revealed their personal 'medical history, diagnosis, or care'"); *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 435 (2014) (definition of "medical information" does not encompass "just any patient-related information held by a health care provider").

*Second*, Tash does not allege that VSP disclosed anything that revealed he is a "patient of the provider of health care" (i.e., VSP patient status). Nor does he allege he was logged into a patient-only portal when he visited, or that only patients can use a Website's "Find a Doctor" page—because that page is publicly available. *Beltran*, 2025 WL 1635467, at *9 (dismissing CMIA claim for failure to allege disclosure of patient status, noting that "the Website is not exclusively available to Defendants' patients."); RJN 2-4, Marenberg Decl., Ex. 1, 15, 17.

### E. Tash's CIPA Section 631(a) Claim Fails

#### 1. Tash Cannot State A Claim Under Section 631(a)'s First Three Clauses

Direct liability under the first three clauses of Section 631(a) is barred by the same party exception as Plaintiffs' ECPA claims. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023) ("[I]t is established that a party to the communication cannot be liable for recording its own conversations under § 631(a)."); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (holding that only the fourth clause of section 631(a) could create indirect liability for a party that was the "intended recipient of plaintiff's communication"); *B.K. v. Desert Care Network*, 2024 WL 5338587, at *3

n.4 (C.D. Cal. Aug. 22, 2024) (same).

Further, Section 631(a)'s first clause (intentional wiretapping) also does not apply to internet transmissions, as allegedly occurred here, only telephonic ones. *See Mastel*, 549 F. Supp. 3d at 1135-36.

Therefore, all Tash's claims based on VSP's violation of the first three clauses fail as a matter of law. *What If Holdings*, 2022 WL 17869275, at *2.

2. Tash Fails To Allege Secondary Liability Under Section 631(a)

Tash also fails to allege secondary liability for a third-party's alleged eavesdropping under the fourth clause of Section 631(a). Tash does not allege that VSP "aided, agreed with, employed, or conspired with [Meta, Google, and LinkedIn] to unlawfully" eavesdrop because he fails to allege VSP's requisite scienter of a third party's violation, or that any third party violated one of the first clauses of Section 631(a). *YETI*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024).

**No Scienter.** The words "to unlawfully do, permit, or cause" in the fourth clause of Section 631(a) require a plaintiff to allege culpable knowledge or intent by the aiding, agreeing, employing, or conspiring party to show derivative liability. *Id.* at 942; *see also Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS (KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (CIPA's fourth clause requires that one aid, agree with, employ, or conspire to "unlawfully" wiretap, eavesdrop, or use, and "[t]he only way one could 'unlawfully' commit one of those acts is by acting 'intentionally' or 'willfully'"); *Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG (AGRx), 2025 WL 851075, at *3 & n.6 (C.D. Cal. Mar. 13, 2025) (CIPA's fourth clause requires scienter from aiding party).[15]

Tash fails to allege VSP's requisite scienter here. Simply alleging that a website operator intentionally installed a third party's technology or pixel software or benefits from their services generally, as Tash claims here (CAC ¶¶ 108, 178-79, 184), is insufficient. *YETI*, 2025 WL 877127, at *1 (allegation that defendant knew third party software was placed on its website to "collect[] consumers' sensitive information" insufficient to infer that "[d]efendant knowingly agreed with or employed [the third party] to engage in conduct that violated the wiretapping statute"); *Esparza*, 2024 WL 559241, at *1 (holding that

[15] CIPA is a criminal statute, and a scienter requirement is consistent with the rule of lenity, which states that "'[w]hen a choice has to be made between two readings of what conduct [the Legislature] has made a crime, it is appropriate, before we choose the harsher alternative, to require that [the Legislature] should have spoken in language that is clear and definite.'" *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012).

the plaintiff failed to allege scienter because "there has been no finding that [the third party] was engaged in wiretapping or eavesdropping").

**No Predicate Violation by a Third Party.** Nor does Tash adequately allege a violation of CIPA by Meta, Google, or LinkedIn for which VSP may be held secondarily liable. Tash does not allege facts that show that any third party "knew or should have known that the data it received from" VSP was collected "without [Tash's] consent," as he must establish to show the willful violation of CIPA by a third party. *B.K.*, 2024 WL 5338587, at *3 (rejecting derivative claim against website operator under the fourth clause where plaintiff failed to adequately allege that "Meta knew or should have known that the data it received from [d]efendants was collected without users' consent"). Intent under CIPA cannot be inferred based on Tash's allegations that a third party provided tracking technology but failed to prevent any inadvertent transmission of communications without consent, which is the most that Tash alleges here. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840-41, 844 (N.D. Cal. 2024) (declining to infer Google's "intent to obtain" private health information from health care websites without consent based on allegations that Google merely provided tracking technology without affirmatively preventing the inadvertent transmission of private information). "There is nothing inherently unlawful about [Google, Meta, or LinkedIn] offering [their] source code to health care providers[.]" *Doe I*, 741 F. Supp. 3d at 841. Tash concedes as much by relying on HHS guidance that permits tracking technologies on HIPAA-compliant health provider websites. CAC ¶ 119 & n.42.[16]

### F. The Tracking Tools Are Not Pen Registers Under Section 638.51(a) Of CIPA

#### 1. The Tracking Tools Allegedly Capture Contents

Tash fails to state a claim under Section 638.51(a) of CIPA, which prohibits the use or installation of "pen registers"[17] without obtaining a court order. CAC ¶¶ 188-94. Tash pleads himself out of a "pen register" theory by expressly alleging that each of the Tracking Tools captured the "contents" of his

[16] *See* Marenberg Decl., Ex. 27; *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (Dec. 1, 2022), available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-onlinetracking/index.html (last visited Oct. 6, 2025) (permitting HIPAA-covered entities to use tracking technologies in manners that do not violate HIPAA "to collect and analyze information about how users interact with regulated entities' websites or mobile applications" and discussing certain data combinations that would not ordinarily violate HIPAA).

[17] Pen registers are physical devices law enforcement installs to track outbound numbers that a telephone dials. *Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979); *People v. Blair*, 25 Cal.3d 640, 654 (1979).

communications. "Pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Pen. Code § 638.50(b) (emphasis added). Tash claims that the Tracking Tools allegedly captured the "contents" of his alleged communications (including their "substance" and "exact text and phrases"). CAC ¶¶ 3, 7-9, 178, 184. These tools are not, by definition, "pen registers." *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008) ("'[P]en registers . . . obtain *only* the addressing information associated with phone calls.").

2. Section 638.51 Prohibits Only Telephone-Tracking Technology

CIPA's pen register provisions show that Section 638.51 applies only to tracking technology on telephone lines, not codes that collect information sent to a website, as Tash alleges occurred here.

*First*, courts have recognized that under the plain language of Section 638.51, the statute only applies to tracking technology on telephone lines. California's pen register statute prohibits the use of a pen register "without first obtaining a court order pursuant to Section 638.52 or 638.53." Pen. Code § 638.51(a). These authorization provisions—CIPA §§ 638.52 and 638.53—expressly adopt the "same authorization provision . . . that courts have relied on under [the pre-2001 amendments to] the federal Pen Register Act to find that the Act applied *only* to mechanical, telephone number-tracing technology, not technology used to collect IP addresses from a desktop computer." *Sanchez*, 2025 WL 487194, at *3 (noting that "penal statutes include only those offenses coming clearly within import of the language"). The California Legislature's narrow word choice in Section 638.52 "cannot be assumed to be inadvertent." *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995).

*Second*, the legislative history of Section 638.51 makes clear that it is only intended to apply to the use of technology to track telephone information, not software used by websites. "The legislative purpose of [California's] Pen Register statute was to authorize law enforcement to seek orders for telephone surveillance"; Section 638.51 "does not address the privacy rights of Internet users." *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *2 (Cal. Super. Ct. Sept. 9, 2024); *Sanchez*, 2025 WL 487194, at *3 (holding that CIPA's legislative history indicated that "pen register" refers to devices or processes used to record or decode information from telephone numbers, not IP addresses from a desktop computer). Indeed, the legislative history makes no reference to the collection of anything with a pen

register *besides* telephone numbers. *See* RJN 4-5, Marenberg Decl., Exs. 21-26. Any interpretation of Section 638.51 must "yield to" and "be consistent with the evident legislative intent, and . . . the purposes intended to be served by the [statute]." *Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 458 (1974).

Construing Section 638.51 otherwise would criminalize routine behavior by website operators, an outcome that the rule of lenity forecloses. *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *2, *4 (Cal. Super. Ct. Mar. 13, 2024) ("Plaintiff's interpretation . . . render[s] every single [website] entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator"); *Casillas*, 2024 WL 4873370, at *4 (Section 638.51 does not "criminalize the process by which all websites communicate with all users").[18]

### G. Tash Lacks Statutory Standing To Assert His Duplicative UCL Claim

Tash's UCL claim fails because it is duplicative. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Bus. & Prof. Code § 17200. Tash asserts claims under the "unlawful" and "unfair" prongs, based only on his other statutory claims. *See* CAC ¶¶ 212-13. But since he fails to adequately plead those claims, his UCL claims also fail. *Arena Rest. & Lunge LLC v. S. Glazer's Wine & Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at *13 (N.D. Cal. Apr. 16, 2018) (dismissing UCL claims "derivative of the other claims in the SAC"); *What If Holdings*, 2022 WL 17869275, at *4 (same); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017) (dismissing "unfair prong" theory "based on the same contentions" as unlawful prong theory).

Tash also fails to plead statutory standing under the UCL. *See* Bus. & Prof. Code § 17204. Tash's alleged injuries based on an overpayment for insurance and an alleged diminution in value of his "Private Information" are insufficient to allege a loss of money or property. CAC ¶¶ 215, 219.

*First*, Tash lacks a property interest in the data allegedly disclosed here. *See Doe I*, 741 F. Supp. 3d at 845. His interactions on a website owned by another party (such as an FID, URLs, clicks, page views, and text entries) are inherently outside his exclusive possession. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) (holding that plaintiff lacked an exclusive property interest in an identifier

[18] *United States v. Cabaccang*, 332 F.3d 622, 635 n.22 (9th Cir. 2003) (when applying a criminal statute in a civil context, "[i]f there is any doubt about whether [the Legislature] intended to prohibit the conduct in which [defendant] engaged, then 'we must choose the interpretation least likely to impose penalties unintended by [the Legislature].'") (citation omitted).

assigned by LinkedIn necessary to allege loss of money or property).

*Second*, Tash fails to explain how any property interest he may have in his website interactions was diminished by its interception or disclosure. *Gardiner*, 2021 WL 2520103, at *4 (holding that "bare assertions that [Plaintiff's] PII had value or that an economic market exists for Plaintiff's PII are insufficient" to allege UCL standing based on the diminution in value of private information); *Doe I*, 741 F. Supp. 3d at 845 (same).

*Third*, Tash does not plausibly allege a harm based on overpayment for insurance, because searching on the "Find a Doctor" page is free. *See* Section IV.B.3, *supra*; *In re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (holding that plaintiffs failed to allege any portion of their alleged bargain for interpersonal networking app was for data security where the complaint revealed that LinkedIn provided the same alleged "level of security" to non-paying members); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (holding that a plaintiff lacked UCL standing where alleged injury was "premised on the loss of a . . . benefit that was not part of the bargain to begin with"); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 809-11, 834; *Beltran*, 2025 WL 1635467, at *12.

**H. Plaintiffs' Claims For Punitive Damages Should Be Dismissed.**

Plaintiffs fail to plead facts that would support an award of punitive damages. Civ. Code § 3294(a) (punitive damages require proof of "oppression, fraud, or malice"). Plaintiffs' conclusory allegations that VSP engaged in "malicious, willful, and intentional . . . actions, directed at injuring [Plaintiffs] . . . in conscious disregard of [their] rights" are not presumed true. *E.g.*, CAC ¶¶ 187, 207, 231, 274, 282; *Martin*, 2023 WL 2717636, at *18; *Bordelais v. Bordelais*, No. 20 C 01709, 2021 WL 1531600, at *2 (N.D. Ill. Apr. 19, 2021); *Maness v. Santa Fe Park Enters.*, 298 Ill. App. 3d 1014, 1024 (1998). Further, under California law, a plaintiff seeking punitive damages against a corporation must allege facts showing that an "officer, director, or managing agent" of the defendant "authorized or ratified the wrongful conduct" or "was personally guilty of oppression, fraud, or malice." Civ. Code § 3294(a). Plaintiffs fail to allege any such facts here. *Coast Surgery Center v. United Healthcare Ins. Co.*, No.: 8:22-cv-02200-FWS-DFM, 2024 WL 650174, at *13 (C.D. Cal. Jan. 5, 2024).

## VI. CONCLUSION

For the foregoing reasons, VSP requests that Plaintiffs' claims be dismissed without leave to amend.

Dated: October 6, 2025

GREENBERG TRAURIG, LLP

By: */s/ Rebekah S. Guyon*
Rebekah S. Guyon
Lori Chang
David H. Marenberg

Attorneys for Defendants Vision Service Plan a/k/a VSP Global, VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC