Rebekah S. Guyon (SBN 291037)
*Rebekah.Guyon@gtlaw.com*
Lori Chang (SBN 228142)
*ChangL@gtlaw.com*
David H. Marenberg (SBN 329954)
*MarenbergD@gtlaw.com*
GREENBERG TRAURIG, LLP
1840 Century Park East, 19th Floor
Los Angeles, CA 90067-2121
Tel: 310-586-7700; Fax: 310-586-7800

Attorneys for Defendants Vision Service Plan a/k/a VSP Global, VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

BRIAN TASH on behalf of himself and all others similarly situated,

Plaintiff,

v.

VISION SERVICE PLAN a/k/a VSP GLOBAL, VSP VENTURES, LLC, VSP VENTURES MANAGEMENT SERVICES, LLC, and VSP VENTURES OPTOMETRIC SOLUTIONS, LLC,

Defendants.

Case No.: 2:25-CV-00762-DJC-JDP

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

*[Filed concurrently with Notice of Motion and Motion; Memorandum of Points and Authorities; and Declaration of David H. Marenberg]*

Date: December 18, 2025
Time: 1:30 p.m.
Place: Courtroom 7

Assigned to: Judge Daniel J. Calabretta

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 18, 2025 at 1:30 p.m. in Courtroom 7 of the above-captioned Court, located at Robert T. Matsui Federal Courthouse, 501 I Street, Room 4-200, Sacramento, CA 95814, Defendants Vision Service Plan, VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC (collectively, "VSP") hereby request that the Court take judicial notice of the following exhibits to the Declaration of David H. Marenberg ("Marenberg Decl.") when ruling on Defendants' Motion to Dismiss ("Motion") Plaintiffs Brian Tash and Peter Hahn's Consolidated Class Action Complaint ("CAC") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure:

- The contents of https://www.vspdirect.com/find-a-doctor, as the contents appeared on February 26, 2021, and July 6, 2024, as archived by the Internet Archive's Wayback Machine ("Wayback Machine"). True and correct printouts of this webpage are attached to the Marenberg Decl. as **Exhibits 1 and 16.**
- The contents of https://www.choosevsp.com/find-a-doctor-html/, as the contents appeared on April 14, 2021, and April 22, 2024, as archived by the Wayback Machine. True and correct printouts of this webpage, including the contents of dynamic elements on the webpage, are attached to the Marenberg Decl. as **Exhibits 2-4 and 17-19.**
- The contents of https://www.vsp.com/eye-doctor, as the contents appeared on March 7, 2021, as archived by the Wayback Machine. True and correct printouts of this webpage, including the expandable contents of dynamic elements on the webpage, are attached to the Marenberg Decl. as **Exhibits 5-15.**
- Assembly Bill 929, 2015-2016 Reg. Sess. (Cal. 2015) ("A.B. 929") and related legislative history materials. True and correct copies of these documents are attached to the Marenberg Decl. as **Exhibits 21-26**.
- Pleadings filed in other federal courts cases by other plaintiffs represented by Plaintiffs' counsel. True and correct copies of these documents are attached to the Marenberg Decl. as **Exhibits 28-30**.

## I. The Historical Contents Of A Party's Publicly Available Websites Are Properly Subject to Judicial Notice

Under Federal Rule of Evidence 201, a fact is subject to judicial notice if it is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

Applying this rule, courts may take judicial notice of the contents of publicly available websites. *See Stewart v. Kodiak Cakes, LLC,* 537 F. Supp. 3d 1103, 1121-22 (S.D. Cal. 2021) (taking judicial notice of contents of screenshots of defendant's website to determine what labeling plaintiffs saw during relevant time period); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 964 (C.D. Cal. 2005) (taking judicial notice of contents of amazon.com webpages); *2Die4Kourt v. Hillair Cap. Mgmt., LLC*, No. SACV 16-01304 JVS (DFMx), 2016 WL 4487895, at *1 n.1 (C.D. Cal. Aug. 23, 2016) (taking judicial notice of contents of 34 online news articles and social media posts); *Love v. Handlery Hotels, Inc.*, No. 21-cv-00850-TSH, 2021 WL 2531090, at *2-3 (N.D. Cal. June 21, 2021) (taking judicial notice of contents of website landing page and other webpages from a party's website).

In particular, "[t]he Court may also take judicial notice of the contents of webpages available through the Wayback Machine" to determine what was publicly displayed on the page during a particular timeframe. *Erickson v. Neb. Mach. Co.*, No. 15-cv-01147-JD, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) (taking judicial notice of contents of archived website to determine locations it displayed to the public during the time alleged infringement took place) (citing cases); *UL LLC v. Space Chariot, Inc.*, 250 F. Supp. 3d 596, 604 (C.D. Cal. 2017) (taking judicial notice of contents of archived website as a "resource the accuracy of which cannot reasonably be questioned" to determine that the website displayed a certification mark during relevant timeframe); *Yuksel v. Twitter, Inc.*, No. 22-cv-05415-TSH, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (same); *Yoon v. Meta Platforms, Inc.*, No. 24-cv-02612-NC, 2024 WL 526041, at *3 (N.D. Cal. Dec. 30, 2024) (taking judicial notice of the historic contents of Meta's policy pages during a relevant timeframe, noting that Courts "routinely" take judicial notice of content from the Wayback Machine).

The Court may therefore take judicial notice of **Exhibits 1-19** to the Marenberg Declaration, printouts of the historical contents of various webpages that Plaintiffs define as the "Web Properties" in the CAC. CAC at 2. Specifically, the Court may take judicial notice of the historical contents of the "Find a Doctor" search pages from https://www.vsp.com, https://www.vspdirect.com, and https://www.choosevsp.com archived by the Wayback Machine in 2021 and 2024, the years in which Plaintiffs allege that they visited an unidentified Web Property and used a "Find a Doctor" tool or searched for a provider (CAC ¶¶ 148, 155), to determine the contents visible to and freely accessible by the general public on those webpages during that time.

## II. Exhibits 1-19 Are Also Properly Considered Under The Incorporation-By-Reference Doctrine When Ruling On Defendants' Motion

The Court may also consider documents incorporated by reference into the Complaint "as though they are part of the complaint itself[]" without converting a motion to dismiss into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). A document may be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* at 1002 (internal quotation marks omitted); *see Dalton v. Freeman*, No. 22-cv-00847, 2025 WL 901127, at *2 n.3 (E.D. Cal. Mar. 25, 2025) (considering employee partnership plan document and its contents referenced in the complaint under incorporation-by-reference doctrine); *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1063-64 (S.D. Cal. Nov. 6, 2019) (considering printouts from defendant's website and amazon.com listing because both the complaint and defendant's motion "relie[d] extensively upon [these] same materials").

**Exhibits 1-19** are properly considered under the incorporation-by-reference doctrine. These exhibits contain printouts of "Find a Doctor" webpages on the websites Plaintiffs define as the "Web Properties" in the Complaint (*see* CAC at 2) as they existed in 2021, the year in which Plaintiff Tash purportedly "recalls using every filtering feature available" on a "Find a Doctor" tool on the "Web Properties" to conduct a search query that allegedly "communicated" information he claims is "Private Information[,]" and in 2024, when Hahn purportedly conducted a search for a provider. *Id.* ¶¶ 1, 149, 155. Plaintiffs cite the "Find a Doctor" webpages on these websites multiple times in the CAC. *Id.* ¶¶ 54, 148. Plaintiffs include partial screenshots of some of these "filtering feature[s]" which purportedly depict certain

selectable options in drop-down menus while omitting others, and purportedly depict the back-end web traffic communicated by interacting with the "Find a Doctor" webpages when applying these filters or selecting certain options. *See, e.g.,* CAC ¶¶ 53(b), 77, 79, 81-82, 89, 147-49. Defendants' alleged disclosure of Plaintiff's information provided online is "critical for establishing Defendant's potential [] liability" under nearly all of Plaintiff's claims, and the appearance of the "Find a Doctor" webpages and the fields and options users could select in 2021 are therefore integral to the Complaint. *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 24-cv-06525, 2025 WL 1141168, at *3 (C.D. Cal. Feb. 27, 2025) (considering copies of both the current and former privacy policy cited in complaint as it appeared during the relevant time period, which "form[ed] the basis of [plaintiff's] claims in that whether the policy discloses Defendant's use of any tracking tools is critical for establishing [] liability."); *Ford v. Hotwire, Inc.,* No. 07-CV-1312 H(NLS), 2008 WL 5874305, at *8 (S.D. Cal. Feb. 25, 2008) (considering "reproductions of pages from [defendant's] website that serve[d] as exemplars of what a consumer view[ed] when using [the defendant's website] to reserve hotel accommodations" where the plaintiff claimed that the defendant made "deceptive or misleading statements" on the website).

## III. Exhibits 21 - 26 Are Legislative History Materials Properly Subject to Judicial Notice

The Court may also take judicial notice of legislative history materials as public records not subject to reasonable dispute. *Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1143 (C.D. Cal. 2015), *aff'd in relevant part, dismissed in part*, 680 F. App'x 554 (9th Cir. 2017) (taking judicial notice of legislative history); *Young v. Hilton Worldwide, Inc.*, 565 F. App'x 595, 597-98 (9th Cir. 2014) (same); *Zephyr v. Saxon Mortg. Servs., Inc.*, 873 F. Supp. 2d 1223, 1231 (E.D. Cal. 2012) (taking judicial notice of legislative history of California Penal Code Section 632 because it "relate[d] to the matter at issue: specifically, the meaning of Section 632"); *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice"); *see also Quelimane Co. v. Stewart Title Guar. Co.,* 19 Cal. 4th 26, 46 n.9 (1998) ("[C]ommittee reports and analyses or digests of the Legislative Counsel" are relevant and subject to judicial notice "because it is reasonable to infer that all members of the Legislature considered them when voting on the proposed statute."); *Jones v. Lodge at Torrey Pines P'ship,* 42 Cal. 4th 1158, 1169-70 (2008) (taking judicial notice of legislative history including prior versions of a bill).

The Court may therefore take judicial notice of **Exhibits 21-26** to the Marenberg Declaration.

**Exhibit 21** is a printout of Assembly Bill 929, enacted as Cal. Pen. Code §§ 638.51. **Exhibits 22-25** are bill analyses considered by the California Legislature when enacting A.B. 929. **Exhibit 26** is a bill analysis of Assembly Bill 1924, enacted one year after A.B. 929. The contents of these documents are public record, capable of accurate and ready determination by visiting https://leginfo.legislature.ca.gov/. This legislative history is offered by VSP to show that the legislative purpose of California's Pen Register statute was to authorize law enforcement to seek orders for telephone surveillance, not to address the privacy rights of Internet users. The legislative history makes no reference to the collection of anything with a pen register besides telephone numbers. *See* **Ex. 21** ("This bill would clarify that any location information obtained by a pen register or track and trace device is limited to the information that can be determined from the telephone number."); **Ex. 22** at 1 ("This bill authorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices *in telephone surveillance* . . . .") (emphasis added); **Ex. 23** at 12 ("As opposed to a wiretap, a pen register/trap and trace device only records the numbers dialed to or from a particular phone number."); **Ex. 24** at 3 ("One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers from a particular telephone line."); **Ex. 25** at 4 ("This bill is intended to authorize state and local law enforcement to seek emergency orders for pen registers/trap and trace devices used in telephone surveillance . . . ."); *see also* **Ex. 26** at 2-3 (a "pen/trap order is only for the capture of incoming and outgoing phone numbers").

## IV. The Court May Take Judicial Notice of Exhibits 28-30, Other Pleadings Filed by Plaintiffs' Counsel

Finally, the Court may take judicial notice of the contents of **Exhibits 28-30**, pleadings filed in other federal courts by Plaintiffs' counsel, as documents that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See Pac. Mar. Ctr., Inc. v. Philadelphia Indem. Ins. Co.*, No. 1:13-CV-00992-DAD-SKO, 2016 WL 8730668, at *4 (E.D. Cal. Mar. 18, 2016) (taking "judicial notice of documents filed in other court cases" for "the words of the document and the fact that these documents were filed in the other case"). The Court may therefore take judicial notice of the fact that the CAC shares various allegations verbatim with these pleadings. *Compare* CAC at 1 & ¶¶ 1-16, 30-43 ("The California Legislature enacted the California Invasion of Privacy Act ("CIPA") to protect the privacy rights of California citizens . . . to establish liability under CIPA, Plaintiff need only establish that VSP

does, or did, any of the following . . . ."), 44 ("Meta operates the world's largest social media company and generated $117 billion in revenue in 2021, roughly 97% of which was derived from selling advertising space"), 50-66, 112 ("There is also a market for data in which consumers can participate. Personal information has been recognized by courts as extremely valuable."), 145-51 ("More specifically, [Tash] recalls using every filtering feature available to obtain the narrowest selection, which communicated the following: . . . ."), 161 ("Plaintiffs were unaware . . . because . . . the Tracking Tools were and are completely invisible"), 173-87, 192 ("At all relevant times, VSP installed the Tracking Tools—which are pen registers . . . ."), 195-207 *with*, *e.g.*, **Ex. 28** at 1 & ¶¶ 1-9, 12-21, 29-42 ("The California Legislature enacted the California Invasion of Privacy Act (CIPA) to protect the privacy rights of California citizens . . . to establish liability under CIPA, Plaintiff need only establish that BSCA does, or did, any of the following . . . ."), 58-72, 128-33 ("More specifically, [Plaintiff] recalls using the filtering feature available to obtain the narrowest selection, which communicated the following: . . . ."), 138 ("Plaintiff was unaware . . . because . . . the Tracking Tools were and are completely invisible"); **Ex 29** ¶¶ 13-19 ("To establish liability under section 631(a), a plaintiff need only establish that defendant . . . does any of the following . . . ."), 24 ("In 2021, Facebook generated $117 billion in revenue. Roughly 97% of that cane from selling advertising space."), 49-56, 55-77 ("Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class"); **Ex. 30** ¶¶ 1-9, 24-32 ("The California Legislature then enacted the California Invasion of Privacy Act ("CIPA") to further protect the privacy rights of California citizens. In doing so, . . . ."), 68-76, 122 ("There is also a market for data in which consumers can participate. Personal information has been recognized by courts as extremely valuable."), 129-35 ("Plaintiff McGee was unaware . . . because the tracking tools were and are completely invisible . . . ."), 169 ("At all relevant times, Epsilon installed the Tracking Tools—which are pen registers").

Similar allegations can be found in numerous other complaints filed by Plaintiffs' counsel. *See, e.g.*, *C.M. v. Betterhelp, Inc.*, Case NO. 5:23-cv-01033, ECF No. 1 (N.D. Cal. filed Mar. 7, 2023); *De Felice Jr. v. Policygenius, LLC*, Case No. 2:24-cv-00560, ECF No. 1 (C.D. Cal. filed Jan. 22, 2024); *Getz v. CVS Health Corp.*, Case No. 2:25-cv-04689-MWC-E, ECF No. 33 (C.D. Cal. filed July 9, 2025); *Moore v. Memorialcare Med. Grp.*, Case No. 2:22-cv-09468, ECF No. 1-1 (C.D. Cal. removed Dec. 30, 2022);

*Totston v. Jetblue Airways Corp.*, Case No. 2:23-cv-01156, ECF No. 1 (C.D. Cal. filed Feb. 15, 2023); *Andrews v. Prisma Health*, Case No. 6:23-cv-03153-JDA, ECF No. 1 (D.S.C. filed July 3, 2023); *Doe v. Davita, Inc.*, Case No. 3:23-cv-01424-AJB-BLM, ECF No. 1-3 (S.D. Cal. removed Aug. 3, 2023). VSP can provide these pleadings should the Court request them.

## V. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court take judicial notice of **Exhibits 1-19, 21-26, and 28-30** to the Marenberg Declaration and also consider **Exhibits 1-19** under the incorporation-by-reference doctrine when ruling on Defendants' Motion to Dismiss Plaintiffs' CAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: October 6, 2025 GREENBERG TRAURIG, LLP

By: /s/ *Rebekah S. Guyon*
Rebekah S. Guyon
Lori Chang
David H. Marenberg
Attorneys for Defendants Vision Service Plan a/k/a VSP Global, VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC