Dennis Stewart, CA Bar No. 99152
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 595-3299
*dstewart@gustafsongluek.com*

Heather M. Lopez (SBN 354022)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
148 Dolphin Court
American Canyon, CA 94589
Telephone: (707) 334-3727
*hlopez@milberg.com*

*Attorneys for Plaintiffs and Proposed Class*
*(Additional Counsel on Signature Page)*

**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

BRIAN TASH and PETER HAHN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

VISION SERVICE PLAN a/k/a VSP GLOBAL, VSP VENTURES, LLC, VSP VENTURES MANAGEMENT SERVICES, LLC, and VSP VENTURES OPTOMETRIC SOLUTIONS, LLC,

Defendants.

Case No. 2:25-CV-00762-DJC-JDP

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**

Assigned to: Hon. Daniel J. Calabretta

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

III. ARGUMENT ..... 2

A. Plaintiffs' allegations are sufficient to plead Article III standing. ..... 2

1. Plaintiffs adequately allege that Defendants disclosed their Private Information, and Defendants are not permitted to ignore Plaintiffs' allegations to argue otherwise ..... 3

2. Defendants' dissemination of Plaintiffs' Private Information, including personal health information, is a concrete injury-in-fact that establishes Article III standing. ..... 5

3. Plaintiffs are not required to plead a "tangible monetary harm" to establish Article III standing. ..... 6

B. Plaintiffs' allegations are sufficient to state claims under ECPA and state law against Defendant VSP and three of its subsidiaries ..... 8

1. Plaintiffs' allegations regarding Defendants' improper disclosures of their personal information to third parties are more than adequate to state a claim. ..... 8

2. VSP's three subsidiaries are properly joined as Defendants under Federal Rule of Civil Procedure 20(a) and the claims against them should not be dismissed ..... 9

3. Plaintiffs have sufficiently pleaded that the crime-tort exception applies to their ECPA claim, and the factual disputes raised by Defendants can be resolved only through discovery, not at the pleading stage. ..... 11

4. Plaintiffs' state claims for invasion of privacy and intrusion upon seclusion. ..... 12

5. Plaintiffs have stated a claim for conversion under *California* law, which applies in this diversity action. ..... 12

C. Plaintiff Tash's claims are timely. ..... 13

D. Plaintiff Tash's allegations state a claim under the CMIA. ..... 14

1. The identifying health information that Plaintiff Tash alleges was unlawfully disclosed—including medical conditions, treatment intent, provider selections, and insurance status—qualifies as "medical information" protected by the CMIA. ..... 14

2. Disclosure of "medical information" under the CMIA does not require a patient-only portal or logged-in patient status. .... 15

E. Plaintiffs' allegations state a claim under CIPA § 631(a). .... 16

1. Section 631(a)(4) of CIPA creates liability where a defendant enlists third parties to intercept users' communications. .... 16

2. The fourth clause of CIPA § 631(a) establishes liability for enabling third-party interception and does not impose a criminal aiding-and-abetting intent standard. .... 17

3. Plaintiff Tash has pleaded intent under clause four of CIPA § 631(a) by alleging that Defendants knowingly embedded tracking technology in the VSP website and app to capture and transmit patients' Private Information in real time. .... 18

4. Third-party intent need not be established at the pleading stage. .... 18

F. Plaintiffs' allegations are adequate to state a claim under CIPA § 638 .... 19

1. Plaintiffs have adequately alleged that several of the Tracking Technologies implemented by Defendants on the VSP website and app are pen registers. .... 20

2. Defendants' "contents" argument is without merit. .... 20

3. Section 638.51 of CIPA applies to internet communications. .... 21

G. Plaintiff Tash has statutory standing to raise his UCL claim. .... 23

H. Plaintiffs' claims for punitive damages should not be dismissed. .... 24

IV. CONCLUSION .... 25

## TABLE OF AUTHORITIES

**Cases**

*Anaya v. Machines de Triage et Broyage*,
No. 18-CV-01731-DMR, 2019 WL 359421 (N.D. Cal. Jan. 29, 2019) ..... 25

*Andrews v. Prisma Health*,
2024 WL 3861384 (D.S.C. Aug. 16, 2024) ..... 4

*Austin v. Univ. of Oregon*,
925 F.3d 1133 (9th Cir. 2019) ..... 8

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ..... 13

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ..... 18

*Barber v. Thomas*,
560 U.S. 474 (2010) ..... 17

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (N.D. Cal. Jan. 5, 2023) ..... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 8

*Beltran v. Doctors Med. Ctr. of Modesto*,
No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467 (E.D. Cal. June 9, 2025) ..... 8, 15

*Branca v. Ocwen Loan Servicing, LLC*,
No. CV 13-7502 BRO (EX), 2013 WL 12120261 (C.D. Cal. Dec. 27, 2013) ..... 23

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 4

*Brown v. Google LLC*,
No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ..... 7

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 5

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 24

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .......... 5

*Carolus v. Nexstar Media Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 5

*Casillas v. Transitions Optical*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sept. 9, 2024) .......... 23

*Cf. Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 4

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 16, 17

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 12, 15, 16

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 19

*Doe v. Call-On Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 16, 17

*Doe v. Davita Inc.*,
No. 23-CV-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) .......... 8, 9

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 6, 13

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 11, 18

*Doe v. Microsoft Corp.*,
No. C23-0718-JCC, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... 24

*Doe v. N. California Fertility Med. Ctr.*,
No. 22-CV-01861-DAD-JDP, 2024 WL 246178 (E.D. Cal. Jan. 23, 2024) ........................................... 5

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........................................................................ 3, 6, 13, 18

*Eisenhower Med. Ctr. v. Super. Ct.*,
226 Cal. App. 4th 430 (2014) .............................................................................................. 15

*Endy v. Cnty. of Los Angeles*,
975 F.3d 757 (9th Cir. 2020) .............................................................................................. 3

*Esparza v. UAG Escondido AI Inc.*,
No. 23cv0102 DMS(KSC), 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........................................ 17

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ...................................................................................................... 17

*Fregosa v. Mashable Inc.*,
No. 25-CV-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ............................................ 22

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ....................................................................... 17

*Gaige v. Exer Holding Co., LLC*,
No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719 (C.D. Cal. Mar. 2, 2025) ........................... 4, 6, 12

*Gen. Elec. Co. v. Wilkins*,
No. 1:10-CV-00674-OWW, 2011 WL 3163348 (E.D. Cal. July 26, 2011) ......................................... 12

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ....................................................................... 18

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) .................................................................................. 5

*Gray v. Luxottica of Am., Inc.*,
No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) ........................... 4, 6, 15

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ................................................................................ 21

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023)........................................................................................ 13

*Hilario v. Allstate Ins. Co.*,
202 WL 7643233 (N.D. Cal. Dec. 23, 2020) .................................................................................. 7

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ...................................................................................... 5, 7

*In re Ethereummax Inv.*,
No. CV2200163MWFSKX, 2023 WL 6787827 (C.D. Cal. June 6, 2023) .......................................... 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ...................................................................................................... 5, 7

*In re Google Inc.*,
No. 5:13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sep. 26, 2013)........................................ 21

*In re Illuminate Educ. Data Sec. Incident Litig.*
2023 WL 8888839 (C.D. Cal. Nov. 6, 2023)................................................................................... 7

*In re Meta Healthcare Pixel Litigation*,
2024 WL 333883 (N.D. Cal. Jan. 29, 2024) ................................................................................. 16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ......................................................................................... 11

*Jager v. Davol Inc.*,
2016 WL 6157942 (C.D. Cal. Oct. 20, 2016)............................................................................ 24, 25

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)......................................................................................... 19

*Ji v. Naver Corp.*,
No. 21-CV-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ........................................ 10

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .......................................................................................................... 2

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)........................................................................................... 6

*Kirola v. City & Cnty. of San Francisco*,
860 F.3d 1164 (9th Cir. 2017) ........ 3
*Kwikset Corp. v. Sup. Ct.*,
51 Cal.4th. 310 (2011) ........ 24
*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ........ 19
*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) ........ 20
*Lightoller v. Jetblue Airways Corp.*,
No. 23-361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 5
*Martin v. Dos Amigos, Inc.*,
No. 17CV1943-LAB (LL), 2019 WL 669791 (S.D. Cal. Feb. 19, 2019) ........ 12
*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ........ 17
*McColgan v. Mut. of Omaha Ins. Co.*,
4 F. Supp. 3d 1228 (E.D. Cal. 2014) ........ 3, 8
*Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d at 987 (N.D. Cal. 2024) ........ 24
*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-cv-07790-VC, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 20, 21
*Montoya v. Countrywide Bank, F.S.B.*,
No. C09-00641JW, 2009 WL 1813973 (N.D. Cal. June 25, 2009) ........ 10
*Moody v. C2 Educ. Sys. Inc.*,
742 F.Supp.3d 1072 (C.D. Cal. 2024) ........ 21
*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
2025 WL 1177519 (9th Cir. Apr. 23, 2025) ........ 12
*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 4

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ........................................ 6
*People v. Superior Ct. of Riverside Cnty.*,
81 Cal. App. 5th 851 (2022)........................................ 17
*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........................................ 5
*Pruchinicki v. Envision Healthcare Corp.*,
439 F. Supp. 3d 1226 (D. Nev. 2020)........................................ 7
*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)........................................ 15
*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)........................................ 11, 18
*Reid v. Johnson & Johnson*,
780 F.3d 952 (9th Cir. 2015) ........................................ 7
*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)........................................ 16
*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025)........................................ 6
*Rubio v. Cap. One Bank,*
613 F. 3d 1195 (9th Cir. 2010) ........................................ 23
*Sanchez v. Cars.com, Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ........................................ 23
*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024)........................................ 20, 21
*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025)........................................ 19
*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................ 2, 6

*St. Aubin v. Carbon Health Technologies, Inc.*,
No. 24-cv-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .................................. 14, 15, 16, 17

*Toston v. JetBlue Airways Corp.*,
No. 2:23-cv-01156 (C.D. Cal 2023)......................................................................................... 5

*Toy v. Life Line Screening of Am. Ltd.*,
No. 23-cv-04651-RFL, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ................................................ 23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ......................................................................................................... 5, 6

*Turner v. Google LLC*,
2024 WL 4933345 (N.D. Cal. Dec. 2, 2024) ............................................................................ 24

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008)................................................................................................ 22

*Valenzuela v. Kroger Co.*,
No. CV 22-6382-DMG, 2025 WL 851075 (C.D. Cal. Mar. 13, 2025)................................................ 17

*Wi-LAN Inc. v. LG Elecs., Inc.*,
382 F. Supp. 3d 1012 (S.D. Cal. 2019) .................................................................................. 10

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ............................................................................. 4

*Wilson v. Google LLC*,
2025 WL 901941 (N.D. Cal. Mar. 25, 2025) ............................................................................ 19

*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ........................................................................... 15

*York v. Riddell, Inc.*,
2016 WL 738419 (C.D. Cal. Feb. 23, 2016)............................................................................. 24

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1134 (C.D. Cal. 2010)................................................................................... 13

**Statutes**

18 U.S.C. § 2510(12)........................................................................................................ 21

18 U.S.C. § 2511(2)(d) ........ 11
18 U.S.C. § 3121 ........ 22
Cal. Bus. & Prof. Code § 17200 ........ 23
Cal. Civ. Code § 3294 ........ 24
Cal. Civ. Code § 3294(b) ........ 25
Cal. Penal Code § 631(a) ........ 16, 17
Cal. Penal Code § 631(a)(4) ........ 16
Cal. Penal Code § 638 ........ 19, 20
Cal. Penal Code § 638.50(b) ........ 20, 21
Cal. Penal Code § 638.51 ........ 19, 21, 22, 23
Cal. Penal Code § 638.51(a) ........ 22
Cal. Penal Code §§ 638.50, 638.51 ........ 22

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 8
Fed. R. Civ. P. 20(a)(2) ........ 9, 10
Fed. R. Evid. 201(b) ........ 19

**Other Authorities**

BLACK'S LAW DICTIONARY (12th ed. 2024) ........ 9

## I. INTRODUCTION

Vision Service Plan and three of its subsidiaries (collectively, Defendants) violated the privacy rights of persons who were covered by VSP vision insurance by collecting and selling their customers' personally identifiable information and protected health information (collectively, "Private Information") to third parties—all without the insured's knowledge or consent. Defendants did so through hidden tracking technologies on the VSP website and mobile app, which Plaintiffs and other insured persons used to search for healthcare providers and schedule medical appointments. The tracking technologies Defendants employed to collect the Private Information include Facebook Pixel, Facebook SDK, Facebook Conversions API, Google Analytics, Google Tag Manager, DoubleClick (owned by Google), LinkedIn's marketing tools, among others (collectively, "Tracking Technologies" or "Tracking Tools").

Defendants' collection and sale of Plaintiffs' Private Information is a brazen violation of the California Invasion of Privacy Act (CIPA), the California Confidentiality of Medical Information Act, (CMIA), California's Unfair Competition Law (UCL), the federal Electronic Communications Privacy Act (ECPA), and California common law. Defendants' attempt to shield themselves from liability for the reasons contained in their motion should be rejected by the Court.

## II. FACTUAL BACKGROUND

Plaintiffs used the VSP website or app to search for healthcare providers and facilities, and schedule medical appointments. Dkt. No. 33, Consolidated Class Action Compl. ¶¶ 50–51 [hereinafter Compl.]. In doing so, they provided Defendants highly sensitive personal information regarding their healthcare, medical conditions, and medical expenses. *Id.* Indeed, any user of the VSP website or app *must* submit such information to use those search functions. *Id.* ¶ 51.

While using VSP's services, patients had every reason to believe that they were only communicating with their well-known and trusted insurance provider. *See* Compl. ¶¶ 6, 12, 26. Without Plaintiffs' knowledge or consent, however, Defendants purposefully installed Tracking Technologies on the VSP website and app to intercept, record, and disseminate patients' Private Information to Meta, Google, Microsoft, and other third parties. *Id.* ¶¶ 52–53.

The Private Information that Defendants shared with these third parties includes, but is not limited to: (1) medical information that users requested or viewed, (2) the user's address, (3) the physician sought, (4) the services sought, (5) names and practice areas of healthcare providers with whom users made an appointment, (6) the vision products users searched for or viewed, (6) the buttons users they clicked (such as the "Schedule a Consultation" button), (7) search parameters (such as "I want Lasik services" or "I have glaucoma"), (8) drop-down menu selections that indicate the user's employer information and insured status, and (9) users' outbound clicks and corresponding URLs, as well as other related information. Compl. ¶ 54. The Private Information that Defendants disclosed to third parties was not anonymized and was sent alongside personally identifying information ("PII") such as Plaintiffs' and Class Members' IP addresses, Facebook and Google IDs, and other persistent device identifiers. *Id.* ¶¶ 56–58, 66–67, 84, 137, 143.

Defendants injured Plaintiffs and Class Members by disclosing their Private Information—without their knowledge or consent—to various third parties. *See id.* ¶¶ 12–13, 64, 93, 161. Accordingly, Plaintiffs bring this action against Defendants for using Tracking Technologies to intercept and disseminate the Private Information that patients provide to Defendants in order to obtain healthcare services with the reasonable belief that their trusted insurance provider will protect their information.

## III. ARGUMENT

### A. Plaintiffs' allegations are sufficient to plead Article III standing.

"To establish the constitutional minimum for Article III jurisdiction, a plaintiff must plead an injury-in-fact; this creates a pleading floor." *Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023). As Defendants note, to satisfy this requirement Plaintiffs need only allege an injury-in-fact that is traceable to Defendants' conduct and is redressable. Dkt. No. 34, Defs.' Mot. to Dismiss and Mem. in Supp. at 7 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)) [hereinafter "Defs.' Br."]. Defendants contend that Plaintiffs lack standing because, Defendants' assert, Plaintiffs lack a privacy interest in their sensitive Private Information and do not allege that their Private Information was collected by VSP and disclosed to third parties without their consent. Defs.' Br. at 8–11. A review of the Complaint reveals otherwise.

Each Plaintiff alleges that they used the VSP website or app to search for physicians, in the process providing Defendants with highly sensitive and valuable personal medical information. *See* Compl. ¶¶ 146–49 (allegations regarding Plaintiff Tash); *id.* ¶¶ 153–55 (allegations regarding Plaintiff Hahn); *id.* ¶¶ 105–18 (describing financial value of Plaintiffs' Private Information). Plaintiffs also describe how Defendants disseminated their protected health information alongside their PII to third parties through tracking technologies embedded in the VSP website and app. *See id.* ¶¶ 53–93, 105–18, 150–51, 156–57. Thus, Plaintiffs allege with specificity how Defendants have caused them concrete harm. *See Endy v. Cnty. of Los Angeles*, 975 F.3d 757, 768 (9th Cir. 2020) (explaining that "informational privacy" exists under the U.S. Constitution and California Constitution, including interests in sensitive and private information). And because each "named plaintiff demonstrates [their] individual standing to bring a claim, the standing inquiry is concluded." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 835 (E.D. Cal. 2025) (citing *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1176 (9th Cir. 2017)).

**1. Plaintiffs adequately allege that Defendants disclosed their Private Information, and Defendants are not permitted to ignore Plaintiffs' allegations to argue otherwise.**

Defendants assert that Plaintiffs "do not allege . . . what private information pertaining to them (as opposed to hypothetical users), was collected by VSP and disclosed to third parties without their consent." Defs.' Br. at 8. Defendants assert that "the case is at most about the disclosure of anonymous browsing activity, which does not confer standing." *Id.* at 8–9. But Plaintiffs *do* allege that VSP intercepted and disseminated various categories of PII *alongside sensitive health information*. Defendants simply ignore Plaintiffs' allegations—allegations which *must* be accepted as true at the pleading stage. *McColgan v. Mut. of Omaha Ins. Co.*, 4 F. Supp. 3d 1228, 1230 (E.D. Cal. 2014); *cf.* Defs.' Br. at 8–9 (failing to acknowledge Plaintiffs' allegations that VSP intercepted health information).

Plaintiffs allege that they used the VSP website or app to search for in-network physicians while logged into their respective Facebook, LinkedIn, or email accounts. Compl. ¶¶ 146–49 (allegations regarding Plaintiff Tash); *id.* ¶¶ 153–55 (allegations regarding Plaintiff Hahn). Plaintiffs further allege that Defendants used tracking technologies embedded in the VSP website and app to intercept, collect, and disseminate to various third parties (without Plaintiffs' consent) sensitive health data associated with

those searches—including, but not limited to, the parameters of Plaintiffs' searches for physicians, the identities of Plaintiffs' chosen physicians and their specialties, and whether an appointment was made and, if so, the service sought—alongside Plaintiffs' PII, including IP addresses, and various user and device identifiers particular to Plaintiffs. *See id.* ¶¶ 53–75 (describing Meta trackers); *id.* ¶¶ 81–84 (describing Google trackers); *id.* ¶¶ 89–91 (describing LinkedIn trackers); *see also id.* ¶¶ 150–51, 156–57. Plaintiffs further allege that Defendants violated Plaintiffs' well-established privacy rights by intercepting and disseminating that Private Information in order to further the financial interests of Defendants and their third-party partners at the expense of VSP customers. *Id.* ¶¶ 105–18. The Defendants rely on decisions that are inapposite to these detailed, Plaintiff-specific allegations.[1]

Defendants characterize the Private Information they collected from Plaintiffs as "non-sensitive" (Defs.' Br. at 9), but this is incorrect, particularly when that information is considered in the aggregate. *See, e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 925 (N.D. Cal. 2023) ("[E]ven if the individual data points gathered are anonymous by themselves, when aggregated, Google can use them to 'uniquely identify a user with a high probability of success.'" (citation omitted)). In sum, Plaintiffs have pleaded standing by alleging that Defendants have disseminated their sensitive health information in contravention of both the common law and various state and federal statutes. *See Gaige v. Exer Holding Co., LLC*, No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719, at *2 (C.D. Cal. Mar. 2, 2025) (concluding that standing was established where defendant used tracking tools to obtain and disclose medical information and Facebook ID to Meta and Google for advertising purposes); *Gray v. Luxottica of Am., Inc.*, No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566, at *4 (C.D. Cal. Dec. 16, 2024) (concluding that alleged sharing

[1] *Cf. Mikulsky v. Noom, Inc.,* 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (failing to allege what personal information was at issue); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024) ("There are only two sentences in Plaintiff's Complaint that describe her actual engagement with Defendant's websites."); *Williams v. TMC Health*, 2024 WL 4364150, at *8 (D. Ariz. Sept. 30, 2024) (Plaintiff only alleged that third parties, but not Defendant, accessed Plaintiffs' information); *Andrews v. Prisma Health*, 2024 WL 3861384, at *7 (D.S.C. Aug. 16, 2024) (failing to allege that the collected information was sold or used for targeted advertising).

of eyecare information with Facebook conferred standing). Defendants' cited cases are distinguishable because, unlike here, the plaintiffs in those cases did not disclose any sensitive data.[2]

**2. Defendants' dissemination of Plaintiffs' Private Information, including personal health information, is a concrete injury-in-fact that establishes Article III standing.**

Defendants contend that Plaintiffs lack Article III standing because the harms they allege do not bear a "close relationship" to torts that "protected specific kinds of privacy-related harms at common law." Defs.' Br. at 9 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025)) (internal quotation marks omitted). Defendants are wrong. Plaintiffs have stated claims of both invasion of privacy and intrusion upon seclusion under California common law. *See infra* § III.B.4. These and other "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (citation omitted). Plaintiffs also have stated claims under CIPA, ECPA, and the CMIA. *See infra* §§ III.B.4, III.D–F. All three of these statutes have been recognized by courts as having been enacted to protect people from harms that bear a close relationship to the privacy-related harms recognized under the common law. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598 (concluding that plaintiffs had standing to pursue CIPA claim because "legislative history and statutory text demonstrate" that "California legislature intended to protect . . . historical privacy rights when [it] passed" the statute (citation omitted)); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (ruling that plaintiffs had standing to pursue ECPA and CIPA claims because "[t]here is a straightforward analogue between . . . traditional [privacy] torts and the statutory protections codified in ECPA and CIPA against viewing or using private communications"); *Doe v. N. California Fertility Med. Ctr.*, No. 22-CV-01861-DAD-JDP, 2024 WL 246178, at *4 (E.D. Cal. Jan. 23, 2024) (concluding that

[2] Unlike the cases cited by Defendants, Plaintiffs provided protected health information. *See* Defs.' Br. at 8–9, citing *Lightoller v. Jetblue Airways Corp.*, No. 23-361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ("Plaintiff does not allege that she disclosed any personal information when she visited the website."); *Toston v. JetBlue Airways Corp.*, No. 2:23-cv-01156 (C.D. Cal 2023) (flight pricing is not sensitive information); *Carolus v. Nexstar Media Inc.,* 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) (IP addresses is not sensitive information); *I.C. v. Zynga, Inc.,* 600 F. Supp. 3d 1034 (N.D. Cal. 2022) ("basic contact information, including one's email address, phone number, or Facebook or Zynga username, is private information.")); *Ghanaat v. Numerade Labs, Inc.,* 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (disclosure of FID alone is not sensitive information); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ("Plaintiff does not identify any personal or sensitive information she disclosed on the website");

plaintiff had Article III standing to pursue claim under CMIA because the alleged harm—"the release of highly personal information"—"is the same harm that forms the basis for the tort of intrusion upon seclusion" (citation and internal quotation marks omitted)). And it is undisputed that "[t]here is a reasonable expectation of privacy in one's private health information" like that at issue here, particularly when coupled with PII. *Doe*, 789 F. Supp. 3d at 843; *see also Gray*, 2024 WL 5689566, at *4 (finding standing where "the Meta Pixel generates and transmits to Facebook" information "indicating that the patient may be booking or rescheduling an eye exam"); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024) (finding standing where plaintiff alleged information about her "efforts to secure healthcare products" were disclosed to TikTok); *Gaige*, 2025 WL 559719, at *2 (plaintiff had standing to pursue claims relating to disclosure of searches for medical services). Thus, Plaintiffs have Article III standing to pursue all of their common-law and statutory privacy claim.

**3. Plaintiffs are not required to plead a "tangible monetary harm" to establish Article III standing.**

Defendants' argument that Plaintiffs have failed to allege a "tangible monetary harm" and thus lack standing (*see* Defs.' Br. at 11) is without merit because "[v]arious intangible harms can also be concrete." *TransUnion*, 594 U.S. at 425; *see Spokeo*, 578 U.S. at 341. Consistently with Supreme Court precedent, the Ninth Circuit has ruled that a plaintiff has Article III standing based on "the unlawful disclosure of [a plaintiff's] personally identifiable information and video-viewing history," because such disclosure "offend[s] the individual's substantive privacy interest in his or her video-viewing history," and "[u]nder the common law, an intrusion into privacy rights by itself makes a defendant subject to liability." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1274 (9th Cir. 2019) (citations and internal quotation marks omitted); *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) ("As the Ninth Circuit has recognized, invasion of privacy can be a harm in and of itself.").

Plaintiffs have alleged monetary harm separate from the concrete harm suffered as a result of Defendants' dissemination of Plaintiffs' sensitive health information. Plaintiffs allege that the Private Information collected from them and unlawfully disclosed to third parties without consent is valuable. *See* Compl. ¶¶ 105–18. "Plaintiffs have a stake in the value of their data." *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025). That stake includes a share of the profits obtained from their

personal data. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing."). Plaintiffs are not required to allege that they attempted to sell their data in order to establish its value. *Id.* ("[T]his stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable.").[3]

Defendants' "benefit-of-the-bargain" argument (*see* Defs.' Br. at 12) is similarly unavailing because alleging a benefit-of-the-bargain loss is not required to plead standing under Article III. To the extent such allegations are necessary to state a claim under the UCL, Plaintiffs' allegations of monetary harms are sufficient because "the Ninth Circuit has stated that the UCL's "economic injury-in-fact requirement . . . demands no more than the corresponding requirement under Article III of the U.S. Constitution.'" *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)); *see also infra*. § III.G. Moreover, contrary to Defendants' assertions,[4] Plaintiffs need not allege that they paid Defendants for services as Plaintiffs "provided valuable data to [defendant] and have received *no* money in return." *Id.* (determining that plaintiffs' allegations were adequate to plead UCL standing). And even were such allegations required, they are present here insofar as Plaintiffs allege that they overpaid for insurance services, an economic injury. *See* Compl ¶ 215; *Hilario v. Allstate Ins. Co.*, 202 WL 7643233, *9 (N.D. Cal. Dec. 23, 2020) (concluding that alleged overpayment of insurance premiums is economic injury satisfying UCL requirement).

---

[3] Defendants rely solely on cases in which plaintiffs failed to allege that their data was misappropriated or misused as a result of data breaches. *In re Illuminate Educ. Data Sec. Incident Litig.* 2023 WL 8888839, at *6 (C.D. Cal. Nov. 6, 2023); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022). Indeed, in *Pruchinicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226 (D. Nev. 2020), upon which *Illuminate Education* relies, the court distinguished allegations of diminution allegations arising out of a data breach, like the case before it, with allegations that defendant intentionally provided the personal information to third parties for profit. *Id.* at 1234.

[4] Defendants rely on Exhibits 1 and 15, (Defs.' Br. at 11 n.8), which are VSP's "Find a Doctor" website tool as archived on the WayBack Machine. For the reasons contained in Plaintiffs' Response in Opposition to Defendants' Request for Judicial Notice (filed concurrently herewith) [hereinafter Pls.' Resp. to Defs.' RJN] the Court should disregard these Exhibits.

**B. Plaintiffs' allegations are sufficient to state claims under ECPA and state law against Defendant VSP and three of its subsidiaries.**

"It is well established that, under Rule 8(a), a plaintiff need only provide 'enough facts to state a claim to relief that is plausible on its face.'" *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Rule 12(b)(6), "a district court must accept all the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *McColgan v. Mut. of Omaha Ins. Co.*, 4 F. Supp. 3d 1228, 1230 (E.D. Cal. 2014) (citations omitted).

**1. Plaintiffs' allegations regarding Defendants' improper disclosures of their personal information to third parties are more than adequate to state a claim.**

Defendants contend that all of Plaintiffs' claims should be dismissed because Plaintiffs "allege no facts showing the information they entered on any Website that was allegedly collected or shared without their permission." Defs.' Br. at 13. This argument fails because it relies on faulty case law and ignores Plaintiffs' *actual* allegations.

Defendants rest their argument primarily on *Beltran* and *Davita*, but those district-court cases are easily distinguishable. The *Beltran* court, in part, dismissed based on the plaintiffs' failure to "identify with specificity what information they provided to Defendants via their browsing activity on the Website and thus what information was subsequently transmitted to Meta," and to "allege that they visited the 'Find a Doctor' webpage" from which information was allegedly transmitted to Meta. *Beltran v. Doctors Med. Ctr. of Modesto*, No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467, at *5 (E.D. Cal. June 9, 2025). Unlike the plaintiffs in *Beltran*, Plaintiffs here *do* identify the information that Defendants collected and transmitted to third parties and also allege that they visited the webpage from which the information was transmitted. *See, e.g.*, Compl. ¶ 148 ("[Plaintiff Tash] specifically recalls using the 'Find a Doctor' form and webpage to identify an in-network healthcare provider in or around 2021 following a recent move."); *id.* ¶ 149 (alleging that Plaintiff Tash submitted to the VSP website "(1) the type of physician or medical provider he was seeking; (2) the specific medical services he was seeking; (3) the vision products sought during his visit; (4) his location; and (5) additional details about his desired physician and their practice area"); *id.* ¶¶ 140–50 (alleging that VSP collected and shared Plaintiff Tash's personal health information

with third parties—including Meta, Google, LinkedIn, and others—and that VSP also coupled the information "with his Facebook ID, IP address, and additional persistent identifiers that reveal his real-world identity"); *id.* ¶¶ 152–62 (containing similar allegations regarding Plaintiff Hahn).

Defendants' reliance on *Davita* is similarly misplaced because—unlike Plaintiffs' allegations here—the plaintiffs' allegations in *Davita* were "devoid of any facts supporting their contention that these activities [namely, Defendants' disclosing to Meta of their personal, confidential, and sensitive information] took place." *Doe v. Davita Inc.*, No. 23-CV-01424-AJB-BLM, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024).

**2. VSP's three subsidiaries are properly joined as Defendants under Federal Rule of Civil Procedure 20(a) and the claims against them should not be dismissed.**

Defendants maintain that the claims against three of Defendant Vision Service Plan's (VSP's) subsidiaries—Defendants VSP Ventures, LLC; VSP Ventures Management Services, LLC; and VSP Ventures Optometric Solutions, LLC—"must be dismissed because Plaintiffs do not allege that these defendants engaged in any unlawful conduct." Defs.' Br. at 14. This argument is meritless.

Defendant is wrong that Plaintiffs named these three Defendants "solely because they are owned by VSP and located in California." Defs.' Br. at 14. Rather, these Defendants are named because VSP represents on its website that its services are provided by VSP and its *affiliate* companies:[5]

> The websites and related services of **Vision Service Plan and its affiliates (collectively, "VSP")** are provided subject to your compliance with the terms and conditions of use set forth below ("TOUs").

*Website Terms and Conditions of Use*, VSP Vision (last visited Oct. 27, 2025) (emphasis added) (all-caps omitted), https://www.vspvision.com/utility/terms-of-service.html. In other words, VSP's own website states that VSP and its affiliate companies—including the three subsidiaries—provide the website and related services and utilized jointly the Tracking Tools at issue.

[5] *Affiliate*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a *subsidiary*, parent, or sibling corporation" (emphasis added)).

Defendants' cases are distinguishable. Defendants cite *Montoya v. Countrywide Bank, F.S.B.*, No. C09-00641JW, 2009 WL 1813973 at *3 (N.D. Cal. June 25, 2009), for the proposition that Plaintiffs' claims against the three VSP affiliates must be dismissed because "Plaintiffs allege no facts pertaining to these defendants." Defs.' Br. at 14. Defendants misread Plaintiffs' Complaint. Plaintiffs *do* allege facts pertaining to each Defendant. Because Defendants' corporate structure makes it impossible to determine which Defendant committed which of the alleged unlawful acts, Plaintiffs' Complaint is properly construed as pleading in the alternative that the acts alleged were committed either by all Defendants, any combination of Defendants, or any one Defendant. *See, e.g.*, *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1023 (S.D. Cal. 2019) ("Rule 8 allows parties to plead inconsistent factual allegations in the alternative."); *In re Ethereummax Inv.*, No. CV2200163MWFSKX, 2023 WL 6787827, at *16 (C.D. Cal. June 6, 2023). Accordingly, Defendants are properly joined because (1) "any right to relief is asserted against them jointly, severally, or in the alternative *with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences*;" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2) (emphasis added).

Defendants also cite *Ji v. Naver Corp.*, No. 21-CV-05143-HSG, 2022 WL 4624898 at *6 (N.D. Cal. Sept. 30, 2022), for the proposition that "group pleading"—lumping all Defendants in the definition of "Defendant"—warrants dismissal. Defs.' Br. at 14. But *Ji* is also distinguishable because the complaint in that case (1) alleged unlawful data collection by *two separate apps*, and (2) named as defendants nine companies whose relationships to each other were so complicated that the plaintiffs devoted seven pages of the complaint, including a half-page diagram, to the task. Class Action Compl. pp. 6–13, *Ji v. Naver Corp.*, Case No. 21-cv-05143-HSG (July 2, 2021), Dkt. No. 1. In contrast, this action involves *only* VSP's websites and app, and each of the three Defendants seeking dismissal is a subsidiary of Defendants Vision Services Plan and is responsible for the VSP websites and related services according to VSP's own Terms of Use. Thus, Defendants here are properly joined because the claims against them "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).

**3. Plaintiffs have sufficiently pleaded that the crime-tort exception applies to their ECPA claim, and the factual disputes raised by Defendants can be resolved only through discovery, not at the pleading stage.**

Defendants argue that Plaintiffs' ECPA claims are "barred by the party exception" because "VSP was the 'intended recipient' of [Plaintiffs'] communications." Defs.' Br. at 14. This argument must be rejected because the party exception does not apply where, as here, the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Defendants contend that the interception and sharing of Plaintiffs' communications is neither tortious nor criminal because Plaintiffs allege that Defendants acted with a financial motive. Defs.' Br. at 14–15. "But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (citations omitted).

The Complaint identifies the specific federal and state laws that Defendants purposely and *intentionally* violated by sharing Plaintiffs' personal medical information with third parties. *See, e.g.*, Compl. ¶¶ 251–61. For example, Plaintiffs allege that Defendants use of the Tracking Tools is in direct contravention of HIPAA Rules (*see id*. ¶¶ 10, 14, 119–36) which at the pleading stage has sufficed to apply the crime-tort exception. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (crime-tort exception applicable at pleading stage because "Pixel captures information that connects a particular user to a particular healthcare provider—*i.e.*, patient status—which falls within the ambit of information protected under HIPAA"). And while Defendants dispute that they possessed the requisite intent for the tort-crime exception to apply, that is a disputed question of fact that cannot serve as the basis for dismissal at this stage. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) ("What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record." (citation omitted)). Accordingly, the Court should reject Defendants' attempt to dismiss Plaintiffs' ECPA claim.

**4. Plaintiffs' state claims for invasion of privacy and intrusion upon seclusion.**

Defendants argue that Plaintiffs fail to state privacy claims under the California Constitution and state common law because, as the intended recipients of the Plaintiffs' personal health information communicated on the VSP website, Defendants cannot be liable for improper disclosure to third parties. Defs.' Br. at 17-18. This argument should be rejected because courts in this Circuit have denied motions to dismiss such privacy claims in cases where the conduct alleged mirrored almost *exactly* the conduct alleged by Plaintiffs. *See, e.g.*, *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973–74 (S.D. Cal. 2023) (allowing plaintiffs' invasion of privacy, intrusion upon seclusion, and Constitutional invasion of privacy claims where defendant, the intended recipient of PHI, used Meta Pixel to disclose information with third party Meta); *Gaige*, 2025 WL 559719, at *7–8 (allowing plaintiff's invasion of privacy and Constitutional invasion of privacy claims where defendant—the intended recipient of plaintiff's PHI, Facebook ID, and IP address—disclosed that information to Meta and other third-party advertising companies).

**5. Plaintiffs have stated a claim for conversion under *California* law, which applies in this diversity action.**

Defendants erroneously argue that Plaintiffs have failed to state a claim of conversion under *Illinois* law.[6] *See* Defs.' Br. at 18-19. This argument fails because California law applies here (*see Martin v. Dos Amigos, Inc.*, No. 17CV1943-LAB (LL), 2019 WL 669791, at *2 (S.D. Cal. Feb. 19, 2019) ("[A] federal court sitting under diversity jurisdiction in California will apply California law as to the right of privacy."), Plaintiffs have adequately alleged their California conversion claim. The Complaint alleges (1) that Plaintiffs had "ownership or right to possession of the property [personal health information and PII] at the time of the conversion," (2) that Defendants' sharing this information with unauthorized third parties constitutes "conversion by a wrongful act or disposition of property rights," and (3) that Plaintiffs were harmed and seek damages. *See* Compl. ¶¶ 284–87; *Gen. Elec. Co. v. Wilkins*, No. 1:10-CV-00674-OWW, 2011 WL 3163348, at *8 (E.D. Cal. July 26, 2011) (setting out elements for conversion claim under

[6] Defendants do *not* argue that Plaintiffs have failed to state a claim of conversion under *California* law, thereby forfeiting any such argument. *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 2025 WL 1177519, at *1 (9th Cir. Apr. 23, 2025).

California law). Similar allegations have been ruled to state a claim for conversion. *See, e.g.*, *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 975–76 (C.D. Cal. 2023).

**C. Plaintiff Tash's claims are timely.**

Defendants contend that "all of [Plaintiff Tash's] claims except his UCL claim are . . . time-barred" because his use of the VSP website and app occurred "at minimum 3 years and 61 days before filing this action." Defs.' Br. at 19. The gravamen of this case is that Defendants were surreptitiously using Tracking Tools that reasonable persons, and everyday patients, would not know nor even think to check were being used. *See* Compl. ¶¶ 2, 7, 13, 63, 84, 92, 118, 150, 169–71, 186, 198, 217, 220, 238, 244, 251, 253, 261, 263, 271, 275, 283. As a result, Plaintiff Tash could not have discovered Defendants' unlawful conduct until shortly before the filing of this action. Thus, Plaintiff Tash has pleaded "(1) the time and manner of discovery and (2) the inability to have made earlier discover despite reasonable diligence." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1141 (C.D. Cal. 2010) (concluding that "short and plain statement" was sufficient to support delayed discovery where plaintiff, a layperson, alleged "inability to have discovered the facts earlier despite reasonable diligence"). The delayed-discovery rule applies and renders all of his claims timely. *See Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 853 (E.D. Cal. 2025) (concluding that delayed discovery rule applied to plaintiffs' claims under CIPA, ECPA, and the CMIA, as well as plaintiffs' invasion-of-privacy claim). Any remaining questions about the timing and scope of the class period (or about whether Plaintiff was shown disclosures on the VSP website or app regarding the tracking in question) are factual issues that can be resolved only after discovery. *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1083 (S.D. Cal. 2023) ("Whether Plaintiff exercised reasonable diligence or was alerted to the fact . . . is another question that should be addressed after discovery"); *Doe v. Fullstory, Inc.,* 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) (ruling that plaintiff sufficiently alleged delayed discovery given the technical nature of the case and plaintiff's allegation that she only became aware of her injury shortly before filing (internal record citation omitted)).

**D. Plaintiff Tash's allegations state a claim under the CMIA.**

**1. The identifying health information that Plaintiff Tash alleges was unlawfully disclosed—including medical conditions, treatment intent, provider selections, and insurance status—qualifies as "medical information" protected by the CMIA.**

Defendants argue that Plaintiff Tash's CMIA claim fails because he does not allege the disclosure of any prohibited "medical information." *See* Defs.' Br. at 19–20. But Tash alleges that third parties intercepted and received (1) users' entries on the "Find a Doctor" form and webpage (including user's street address, which type of physician the user is seeking treatment from 'optometrist or ophthalmologist ); (2) user interactions reflecting treatment intent (for example, clicking "Schedule a Consultation"); (3) search queries revealing medical conditions or treatment preferences (for example, "I have glaucoma," "I want Lasik services"); (4) selections disclosing insurance or employer status (for example, "Medicaid member," "Find an in-network doctor"); outbound clicks identifying physicians' webpages or contact details; and other protected health information. *See, e.g.*, Compl. ¶ 54. Plaintiff Tash also alleges that he used "every filtering feature available" on the VSP website and thus communicated the type of physician and medical services sought, the vision products of interest, his location, and details regarding the desired provider and practice area. *Id.* ¶ 149. Moreover, the Complaint alleges that this "medical information" was transmitted alongside PII (such as Facebook ID, IP address, street address, and other information) thereby making the communications personally identifiable. *Id.* ¶¶ 57–59, 66, 137–44, 150. This type of information is paradigmatic "medical information" under the CMIA.

The court in *St. Aubin v. Carbon Health Technologies, Inc.* ruled that allegations materially identical to those presented here were sufficient to state a CMIA claim. No. 24-cv-00667-JST, 2024 WL 4369675, at *9–10 (N.D. Cal. Oct. 1, 2024) (concluding that information transmitted to Facebook and Google—which revealed the reason for medical appointments, the locations of those appointments, and patients' PII, including device IDs, IP addresses, and Facebook IDs—constitutes information relating to person's mental or physical condition or course of treatment, thereby falling squarely within the CMIA's definition of "medical information"). Other courts have reached similar conclusions. *See, e.g.*, *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at * 7 (N.D. Cal. Jan. 5, 2023) (concluding that plaintiffs plausibly alleged disclosure of "medical information" where the Facebook Pixel transmitted

identifying data and doctor-search details revealing patients' conditions and treatments, noting that "it takes little deduction to ascertain that a person who searched for a cardiologist may have a heart condition and may seek treatment"); *R.C. v. Sussex Publishers, LLC*, No. 24-cv-02609-JSC, 025 WL 948060, at *5 (N.D. Cal. Mar. 28, 2025) (ruling that plaintiff's use of filter that reflected symptoms and treatment sought to search for therapists constituted "medical history, diagnosis, or care" information under CMIA).

Defendants' reliance on a series of distinguishable cases is misplaced. *See* Defs.' Br. at 20. As explained by the court in *St. Aubin*, the decisions in *Eisenhower*[7] and *Wilson*[8] "are inapposite because they do not involve information that revealed the nature of a patient's treatment." *St. Aubin,* 2024 WL 4369675 at *10. In *Beltran*, each of the plaintiffs' allegations consisted of only a single sentence describing website use, included bare assertions regarding the information purportedly transmitted and lacked allegations that plaintiffs used the "Find a Doctor" webpage or that they searched for particular health conditions or physician types on the website. *Beltran*, 2025 WL 1635467 at *3–5. The complaint in *Beltran* also lacked allegations that plaintiffs used the "Find a Doctor" webpage or that they searched for particular health conditions or physician types on the website. *Id.* at *5. And in *Gray* the complaint "[a]t best[ ] communicate[d] that plaintiff may have been a patient of LensCrafters at some time." *Gray v. Luxottica of Am., Inc.*, No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566, at *9 (C.D. Cal. Dec. 16, 2024). Conversely, Tash makes specific allegations that third parties received his identifying and health-related information—including location, physician type, services and treatments sought, insurance status, and other search activity—that reveal his medical conditions and treatment intentions sufficient to satisfy CMIA. *See Cousin*, 702 F. Supp. 3d at 973 (sustaining CMIA claim where allegations were that plaintiff used defendant's public facing website to search for doctor and filtered by specialty).

**2. Disclosure of "medical information" under the CMIA does not require a patient-only portal or logged-in patient status.**

Defendants argue that Plaintiff Tash does not allege that "he was logged into a patient-only portal when he visited, or that only patients can use a Website's 'Find a Doctor' page." Defs.' Br. at 20.

[7] *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430 (2014)

[8] *Wilson v. Rater8, LLC*, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)

Defendants' observation is not an argument. Regardless, these types of allegations are not required where it is alleged (as here) that medical information covered by the CMIA was disclosed through the use of a website not requiring authentication as a patient. *See St. Aubin*, 2024 WL 4369675, at *10 (concluding that "transmission of a URL containing the nature of the appointment constitutes medical information"); *Nienaber,* 2024 WL 2133709, at *3 (explaining that collection of information from unauthenticated web pages may be actionable if it relates to healthcare provision or links user to healthcare provider.); *see also Cousin*, 702 F. Supp. 3d at 972–74.[9]

**E. Plaintiffs' allegations state a claim under CIPA § 631(a).**

**1. Section 631(a)(4) of CIPA creates liability where a defendant enlists third parties to intercept users' communications.**

Defendants argue that Plaintiff Tash has failed to state a claim under CIPA § 631(a)'s first three clauses because his claims are barred by the same-party exception. *See* Defs.' Br. at 20–21. But Plaintiff Tash proceeds against Defendants under § 631(a)(4), which imposes liability on any person "who aids, agrees with, employs, or conspires with" another to commit the interceptions prohibited by clauses one, two, or three. Cal. Penal Code § 631(a)(4). The same-party exception does not immunize parties like Defendants that enlist a third party to intercept users' communications—indeed, clause four exists to capture exactly that conduct. *See Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[Defendant] cannot be liable for eavesdropping on its own communications … [but] violated section 631 by enabling [third party's] wrongdoing."); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129–30 (S.D. Cal. 2023) (allegations of selecting and installing Meta Pixel suffice to plead that defendant "aided, agreed, employed, or conspired"); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 WL 4369675, at *7–8 (N.D. Cal. Oct. 1, 2024) (same); *see also Doe v. Call-On Doc, Inc.*, 2025 WL 1677632, at *15 (S.D. Cal. June 13, 2025) (clause-four liability for aiding third-party eavesdroppers).

[9] Defendants cite Exhibits 1, 15, and 17 (*see* Defs.' Br. at 20), which are WayBack Machine screenshots of Defendants' website at various times. For the reasons articulated in Plaintiffs' Response to Defendants' Request for Judicial Notice, the Court should not consider these exhibits. As articulated above, even if Defendants' website is publicly available, this does nothing to insulate Defendants from liability where medical information (under the CMIA) was disclosed.

**2. The fourth clause of CIPA § 631(a) establishes liability for enabling third-party interception and does not impose a criminal aiding-and-abetting intent standard.**

Defendants next contend that secondary liability under clause four of § 631(a) cannot attach to Defendants because Plaintiff Tash has failed to allege the requisite intent. *See* Defs.' Br. at 21.[10] This contention is simply a ham-fisted attempt to graft a criminal aiding-and-abetting standard onto clause four—an attempt that courts have consistently rejected. *See Cousin*, 681 F. Supp. 3d at 1130 ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."); *St. Aubin*, 2024 WL 4369675, at *7 (explaining that "statute as worded does not include an intent standard"); *Call-On Doc, Inc.*, 2025 WL 1677632, at *15 (S.D. Cal. June 13, 2025) ("[T]he Court concludes that Plaintiff has alleged Google and TikTok are third party eavesdroppers, and Defendant can be subject to liability for aiding them in eavesdropping under clause four of section 631(a).").

Defendants' argument also conflicts with the California Supreme Court's directive to construe CIPA to maximize privacy protections. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) ("[T]he California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests." (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002))). Nor do the words "to unlawfully" in the statute change the analysis or require Plaintiff Tash to allege that VSP did anything more than "intentionally operat[ing] its website and assist[ing] third parties in gathering [Tash's] information." *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 WL 2494368, at *10 (N.D. Cal. Aug. 29, 2025) (citation omitted).[11]

---

[10] Defendants' footnote argument (Defs.' Br. at 21 n. 15) regarding the rule of lenity should be disregarded because Defendants fail to point out any "grievous ambiguity" in CIPA's express language. *See Barber v. Thomas*, 560 U.S. 474, 488 (2010) (the "rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute.") (internal quotations omitted); *see also People v. Superior Ct. of Riverside Cnty.*, 81 Cal. App. 5th 851, 886 (2022) (explaining that rule of lenity applies "only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule").

[11] Defendants' citations of *Esparza v. UAG Escondido AI Inc.*, No. 23cv0102 DMS(KSC), 2024 WL 559241 (S.D. Cal. Feb. 12, 2024), and *Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG, 2025 WL 851075 (C.D. Cal. Mar. 13, 2025), are inapposite because those decisions imposed a non-existent scienter requirement that conflicts with the plain language of the statute. *See Cousin*, 681 F. Supp. 3d at 1130.

**3. Plaintiff Tash has pleaded intent under clause four of CIPA § 631(a) by alleging that Defendants knowingly embedded tracking technology in the VSP website and app to capture and transmit patients' Private Information in real time.**

Defendants also argue that allegations they "intentionally" installed Tracking Tools on their website are insufficient. *See* Defs.' Br. at 21–22. This argument is contrary to established caselaw. Plaintiff Tash alleges that Defendants intentionally embedded tracking technologies across the VSP web properties, which functioned like a hidden "listening device" on users' browsers and devices. Compl. ¶¶ 2–3, 5, 8, 11. As configured by Defendants, these tools intercepted and transmitted patients' Private Information in real time to Meta, Google, and other third parties without consent. *Id.* ¶¶ 11, 48, 50–60, 89. Plaintiff Tash alleges that these disclosures would not have occurred but for Defendants' decision to install and program the Tracking Tools. *Id*. ¶¶ 106–07, 178, 184. As numerous courts have found, these allegations more than suffice to state a claim under clause four of CIPA. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (concluding that requisite intent was pleaded where plaintiffs alleged that "Defendant *intentionally* utilized tracking technologies to collect, use, and distribute Plaintiffs' sensitive information to third parties like Facebook" and "*intentionally* configured the Pixels to capture" plaintiffs' information) (emphasis added)); *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 839 (E.D. Cal. 2025) (concluding intent was sufficiently pleaded where plaintiffs alleged "that Defendants chose to install Meta Pixel on their Web Properties and by installing Meta Pixel, Defendants assisted Meta with intercepting the PHI and PII of Defendants' patients without their authorization"); *Balestrieri v. SportsEdTV, Inc.*, No. 25-cv-04046-SK. 2025 WL 2776356, at *11 (N.D. Cal. Sept. 16, 2025).

**4. Third-party intent need not be established at the pleading stage.**

Finally, Defendants' argument that Plaintiff Tash has not alleged the requisite intent of the third parties at issue fails. Defs.' Br. at 22. First, inferring the intent of a third party is premature at the pleading stage. *See Doe v. Meta*, 690 F. Supp. 3d at 1076; *see also Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *11 (N.D. Cal. Aug. 22, 2023). Moreover, Plaintiff Tash alleges that Defendants agreed with the third parties to embed the code on the VSP website for the purpose of allowing third parties to surreptitiously track website users, collect users' Private Information without consent, all while benefiting from that collection. *See* Compl. ¶¶ 7, 92, 105, 108, 177, 179–80. The Court may reasonably infer from

these allegations that Defendants, and the third parties they employed, acted with the purpose of violating CIPA. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4–5 (N.D. Cal. Apr. 4, 2025).[12]

In support of their argument, Defendants cite *Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024), but that case does not work in their favor. In that case, the court found that plaintiff's allegations of intent failed because Google, who was the defendant and not a third party, "repeatedly told developers not to send personally identifiable information through use of its source code." *Id*. at 840. In other words, there were specific instructions from Google, and the allegations were that the source-code provider used the code contrary to the provider's instructions. *Id*. at 841. Here, not only are such allegations absent from the Complaint, but Plaintiffs allege that third parties "encourage" website owners, like VSP, to use its "business tools." *See Wilson v. Google LLC*, 2025 WL 901941, at *6 (N.D. Cal. Mar. 25, 2025) (distinguishing *Doe I* and explaining that "in *Doe [I]*, the complaint acknowledge[d] that Google repeatedly told developers not to send personally identifiable information through use of its source code," whereas in *Wilson*, "Plaintiff alleges that Google 'intentionally encourages' the DMV to harvest and share personal information" (citations omitted)).

**F. Plaintiffs' allegations are adequate to state a claim under CIPA § 638.**

Defendants advance two arguments for dismissing Plaintiffs' claims under CIPA § 638.51: (1) that the tracking tools captured "contents" and therefore cannot be pen registers, and (2) that § 638.51 applies only to telephone-tracking technology. Defs.' Br. at 22–24. Notably, Defendants do not argue that Plaintiffs have failed to allege any specific elements of CIPA § 638, and Defendants' other arguments fail for the reasons explained below.

---

[12] Defendants cite Exhibit 27, which is an excerpt of HHS guidance, to assert that Plaintiff Tash concedes this argument on intent. While Plaintiffs directly quote from the HHS website in their Complaint (Compl. ¶ 119), Defendants ask the Court to take from this exhibit that they acted in a manner consistent with HIPAA. *See* Defs.' Br. at 22 n.16. Defendants do not include this extraneous exhibit in their request for judicial notice. But even if Defendants had done so, the Court cannot credit Defendants' assertions about their own conduct because that conduct presents a question of fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b); *see Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) (reversing in part because "the court took judicial notice of *disputed* facts stated in public records"); *see also* Compl. ¶ 136 ("Defendant's actions violated HIPAA Rules."). Therefore, the Court should disregard Defendants' Exhibit 27.

**1. Plaintiffs have adequately alleged that several of the Tracking Technologies implemented by Defendants on the VSP website and app are pen registers.**

Plaintiffs allege that Defendants used an array of Tracking Technologies on the VSP website and app. Compl. ¶¶ 51–53, 60–92. At least a portion of these trackers "qualify as a 'device or process' because they constitute 'software that identifies consumers, gathers data, and correlates that data.'" *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 40 (S.D.N.Y. 2025) (citation omitted). Moreover, the trackers capture addressing, routing, and signaling information from electronic communications. Compl. ¶¶ 56-7, 59, 66, 137-42, 148, 150, 156 (IP addresses); *id.* ¶¶ 57, 59, 66-8, 150, 156 (Facebook IDs and c-user cookies); *id.* ¶¶ 59, 66, 143-4, 150, 156 (device identifiers); *id.* ¶¶ 59, 143-4, 148, 150, 156 (MAIDs and other persistent identifiers). This information constitutes "addressing or signaling information" within the plain meaning of § 638.50(b). *Lesh*, 767 F. Supp. 3d at 40 (ruling that IP addresses constitute "addressing information" under § 638.50(b)); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-07790-VC, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930-31 (N.D. Cal. 2024) (same). Facebook IDs serve the same addressing function because they allow recipients to identify specific users and link their activities across different websites. Compl. ¶¶ 56, 150, 156 (these identifiers "reveal [Plaintiffs'] real-world identit[ies]" and allow third parties to "know exactly whose information they have acquired.").

**2. Defendants' "contents" argument is without merit.**

Defendants argue that Plaintiffs' claim under CIPA § 638 must be dismissed because Plaintiffs allege that a portion of the Tracking Tools transmit *contents* to Meta and Google, but Defendants cite no cases in support of this argument. Defs.' Br. at 22–23. Importantly, different tracking tools may capture and transmit different types of information, and the Complaint alleges that the Tracking Technologies "intercepted, recorded, and disseminated patients' information," including both addressing information *and* interaction data. *Compare* ¶¶ 66–74, 142–44 (focusing on the transmission of persistent identifiers) *with id.* ¶¶150, 156, 184, 244–45, 251 (focusing on the transmission of "contents") *and id.* ¶¶ 59, 156, 84, 91 (explaining that, via the confluence of multiple trackers, contents are often sent alongside some persistent identifiers). For example, some tools may capture primarily addressing information (IP addresses, device identifiers, geolocation, etc.), while others capture contents, and this largely depends on

how VSP installed and implemented various Tracking Tools. Defendants' argument also fails because it would require the Court to resolve disputed factual questions about what information the tracking tools actually captured and how they function.[13]

**3. Section 638.51 of CIPA applies to internet communications.**

Defendants' argument that § 638.51 applies only to telephone surveillance is contrary to the statute's plain text, which defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a *wire or electronic communication is transmitted*." Cal. Penal Code § 638.50(b) (emphasis added). "Electronic communication" is then defined to include data transmissions and covers virtually all forms of digital communication, including internet communications. *See id.* § 638.50(a) (incorporating definition from 18 U.S.C. § 2510(12)). Moreover, "[t]he California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930–31 (N.D. Cal. 2024) (citation omitted). Indeed, the "California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, No. 5:13-MD-02430-LHK, 2013 WL 5423918, at *21 (N.D. Cal. Sep. 26, 2013). Several federal courts have applied this principle to hold that CIPA's pen register provisions applies to modern internet tracking technologies. *See, e.g.*, *Shah*, 754 F. Supp. 3d at 930; *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-07790-VC, 2024 WL 5102709, at *3–4 (N.D. Cal. Dec. 12, 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F.Supp.3d 1072, 1076 (C.D. Cal. 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023). These decisions recognize that while pen registers once took the form of physical devices attached to telephone lines, they

---

[13] Any uncertainty about precisely what information was captured and transmitted should be resolved through discovery, not on a motion to dismiss because key information is not within Plaintiffs possession at this time, including: (1) the exact parameters and configuration of each tracking tool that Defendants employed during the relevant time period; (2) which specific data fields were transmitted to each third party; (3) technical documentation concerning how Defendants configured these tools, including whether it enabled "Advanced Matching." Only after such discovery can the parties properly assess whether each specific tracking tool functioned primarily as a pen registers (solely capturing addressing information) as compared to wiretaps (capturing contents).

now take the form of software code that monitors IP addresses and device identifiers rather than telephone numbers. The underlying function remains the same: capturing addressing and signaling information about who is communicating with whom.

Defendants next argue that § 638.51 applies to only "the use of technology to track telephone information, not software used by websites," and that construing the statute otherwise "would criminalize routine behavior by website operators, an outcome that the rule of lenity forecloses." Defs.' Br. at 23–24. This argument fails. In the recent decision in *Fregosa v. Mashable Inc.*, the district court denied a similar motion to dismiss where the defendant argued: (1) the statute is limited to "person-to-person communications," such as telephone calls or emails, and was never intended to regulate online advertising technologies or websites; and (2) because the statute carries criminal penalties, the rule of lenity requires the Court to construe it narrowly, explaining:

> Nothing in the definition ties the statute to legacy technologies, refers to "persons," or excludes software processes embedded in websites. *See* Cal. Penal Code §§ 638.50, 638.51. On the contrary, the Legislature's choice of the phrase "device or process" reflects an intentional technology-neutral approach, ensuring the statute reaches novel surveillance methods as they emerged.

No. 25-CV-01094-CRB, 2025 WL 2886399, at *4–5 (N.D. Cal. Oct. 9, 2025). The court determined that dismissal was unwarranted because the defendant had failed to show a "grievous ambiguity" in the pen register statute and therefore, the rule of lenity did not apply. *Id.* at 9.

The legislative history cited by Defendant (Defs.' Br. at 23–24) serves only to undermine their argument.[14] Likewise, the cases Defendants cite—*Sanchez v. Cars.com, Inc.*, No. 24STCV13201, 2025

[14] The legislative materials repeatedly emphasize that § 638.51 was enacted to provide California law enforcement with the same pen register authorities that federal law enforcement possessed under federal law. RJN Exs. 22–23. Federal courts have consistently held that the federal pen register statute, 18 U.S.C. § 3121 *et seq.*, applies to internet communications and IP addresses, not just telephone surveillance. *See, e.g.*, *United States v. Forrester*, 512 F.3d 500, 509–10 (9th Cir. 2008) (federal pen register statute covers devices that capture IP addresses and URLs). If the California Legislature intended to mirror federal law enforcement authorities—as the legislative history shows—it makes no sense to interpret Section 638.51 more narrowly than the federal statute it was meant to parallel. Moreover, while the 2015 Legislature was focused on authorizing law enforcement use of pen registers through court orders, the statute itself prohibits "any person" from using pen registers without a court order. Cal. Penal Code § 638.51(a). This dual structure—prohibition on private use in subsection (a), authorization for law enforcement in subsequent sections—is identical to CIPA's wiretapping provisions. Courts

WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025), and *Casillas v. Transitions Optical*, No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sept. 9, 2024)—do not provide a basis for dismissal. Defs.' Br. at 23–24. The courts in *Sanchez* and *Casillas* reasoned that because *every* website must necessarily receive users' IP addresses to function, applying § 638.51 to basic website functionality would "criminalize the process by which all websites communicate with all users." *Casillas*, 2024 WL 4873370, at *4. But that is not what Plaintiffs allege here, nor do they challenge the collection of IP addresses necessary for Defendants' websites to function. Rather, Plaintiffs challenge Defendants' installation of third-party tracking tools that capture Plaintiffs' IP addresses, device identifiers, and browsing information, and *transmit that information to third parties* such as Facebook, Google, and LinkedIn for advertising purposes. Compl. ¶¶ 61–92, 105–08. These third-party transmissions are not necessary for the VSP website or app to function (*id.* ¶ 63), which places this case squarely outside concerns about criminalizing basic website functionality.

**G. Plaintiff Tash has statutory standing to raise his UCL claim.**

Defendants argue that Tash lacks standing to assert his UCL claim because he has failed to adequately plead his other statutory claims. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "A business act or practice may violate the UCL if it is either unlawful, unfair, or fraudulent. Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Cap. One Bank,* 613 F. 3d 1195, 1203 (9th Cir. 2010) (citations and quotation marks omitted). To state a claim under the "unlawful" prong, Plaintiff must plead a violation of another law. *Branca v. Ocwen Loan Servicing, LLC*, No. CV 13-7502 BRO (EX), 2013 WL 12120261, at *14 (C.D. Cal. Dec. 27, 2013). Here, because Plaintiff Tash has adequately pleaded violations of CIPA, the CMIA, ECPA, and invasion-of-privacy torts, Plaintiff states a claim under the UCL. *Branca,* 2013 WL 12120261, at *42. Thus, Plaintiff has separately stated a claim under the "unfair" prong of the UCL. *See, e.g., Toy v. Life Line Screening of Am. Ltd.,* No. 23-cv-04651-RFL, 2024 WL 1701263, at *2 (N.D. Cal. Mar. 19, 2024) (finding allegations sufficient that defendant's intentional use of hidden tracking

---

have consistently held that those provisions apply to modern technologies even though legislative history focused on law enforcement needs.

pixels violated public policy and constituted unethical activities, causing substantial injury) (citations omitted).

As to injury, there are "innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Sup. Ct.,* 51 Cal.4th. 310, 322–23 (2011). For example, UCL statutory standing can be based on: (1) invasion of privacy; (2) being deprived of the benefit of the bargain; or (3) loss of payment for data taken. *Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 987, 1023–25 (N.D. Cal. 2024). Here, it is alleged that Plaintiff Tash does have a property interest in his Private Information, and he alleges that Defendants harmed him by taking his property. Compl. ¶ 211 (alleging lost money or property, including access to private and personal data). The Complaint further alleges that Plaintiffs' Private Information has financial value. *Id.* ¶¶ 104–17. While a split in authority exists (*see Turner v. Google LLC*, 2024 WL 4933345, at *6 (N.D. Cal. Dec. 2, 2024)), Plaintiff submits the better-reasoned cases have ruled that these types of harms establish standing. *See, e.g.*, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("[P]laintiffs who suffer[ ] a loss of their personal information suffer[ ] economic injury and ha[ve] [UCL] standing."); *Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1023–25 (concluding that UCL standing pleaded by allegations of "diminished value" and being deprived of "right to exclude" others from one's personal data); *Doe v. Microsoft Corp.*, No. C23-0718-JCC, 2023 WL 8780879, at *13 (W.D. Wash. Dec. 19, 2023) (recognizing diminution of value of personal information as harm under UCL).

**H. Plaintiffs' claims for punitive damages should not be dismissed.**

Plaintiffs adequately allege that they are entitled to punitive damages. "Under California Civil Code Section 3294, a plaintiff may recover punitive damages where a defendant acted with 'oppression, fraud, or malice.'" *Jager v. Davol Inc.*, 2016 WL 6157942, at *6 (C.D. Cal. Oct. 20, 2016). The "Ninth Circuit has held plaintiffs need not plead 'any particularity in connection with an averment of intent, knowledge or condition of the mind.'" *York v. Riddell, Inc.*, 2016 WL 738419, at *7–8 (C.D. Cal. Feb. 23, 2016). "Hence, in federal court, a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Id.* (denying motion to dismiss claim for punitive damages).

Plaintiffs sufficiently allege oppression, fraud, or malice by an officer, director, or managing agent as required by California Civil Code § 3294(b). "The pleading requirement expressed in section 3294(b) is a minimal bar, as it is also governed by liberal federal pleading standards." *Anaya v. Machines de Triage et Broyage*, No. 18-CV-01731-DMR, 2019 WL 359421, at *5–6 (N.D. Cal. Jan. 29, 2019). "Plaintiffs may meet the standard for pleading punitive damages against corporate employers by showing that the harm alleged could not have occurred in the absence of authorization or ratification by corporate employer." *Id.* It is implausible that Defendant's officers and managing agents were unaware of its use of Tracking Technologies on every portion of their websites as that is a fundamental way of communicating with patients. *See Jager,* 2016 WL 6157942, at *7 ("[I]t is unreasonable to assume that the alleged conduct of which Plaintiffs complain . . . is attributable to anyone without directorial responsibility").

## IV. CONCLUSION

For these reasons, Defendants' motion to dismiss should be denied. To the extent that the Court rules otherwise, Plaintiffs request leave to amend their Complaint to remedy any deficiencies identified by the Court.

Date: November 6, 2025

Respectfully submitted,

*<u>/s/ Daniel C. Hedlund</u>*
Daniel C. Hedlund*
Daniel J. Nordin*
Mary M. Nikolai*
Bailey Twyman-Metzger*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
mnikolai@gustafsongluek.com
btwymanmetzger@gustafsongluek.com

Dennis Stewart, CA Bar No. 99152
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 595-3299
dstewart@gustafsongluek.com

Heather M. Lopez (SBN 354022)
Michael Acciavatti*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
148 Dolphin Court
American Canyon, CA 94589
Telephone: (707) 334-3727
Fax: (865) 522-0049
*hmlopez@milberg.com*

Daniel O. Herrera (*pro hac vice forthcoming*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
*dherrera@caffertyclobes.com*

Kenneth A. Wexler*
Justin N. Boley*
Zoran Tasić*
Gwyneth F. Lietz*
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
zt@wbe-llp.com
gfl@wbe-llp.com

Brett Cebulash (*pro hac vice forthcoming*)
Kevin Landau (*pro hac vice forthcoming*)
**TAUS, CEBULASH & LANDAU, LLP**
123 William St., Suite 1900A
New York, NY 10038
Telephone: (212) 931-0704
Facsimile: (212) 931-0703
bcebulash@tcllaw.com
klandau@tcllaw.com
jhall@tcllaw.com

*Counsel for Plaintiffs and the Putative Class*

* *(admitted pro hac vice)*