Rebekah S. Guyon (SBN 291037)
*Rebekah.Guyon@gtlaw.com*
Lori Chang (SBN 228142)
*ChangL@gtlaw.com*
David H. Marenberg (SBN 329954)
*MarenbergD@gtlaw.com*
GREENBERG TRAURIG, LLP
1840 Century Park East, 19th Floor
Los Angeles, CA 90067-2121
Tel: 310-586-7700; Fax: 310-586-7800

Attorneys for Defendants Vision Service Plan a/k/a VSP Global, VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

BRIAN TASH and PETER HAHN, on behalf of themselves and all others similarly situated,

Plaintiff,

v.

VISION SERVICE PLAN a/k/a VSP GLOBAL, VSP VENTURES, LLC, VSP VENTURES MANAGEMENT SERVICES, LLC, and VSP VENTURES OPTOMETRIC SOLUTIONS, LLC,

Defendants.

CASE NO.: 2:25-CV-00762-DJC-JDP

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

*[Filed concurrently with Defendants' Reply in Support of Defendants' Request for Judicial Notice]*

Date: December 18, 2025
Time: 1:30 p.m.
Place: Courtroom 7

Assigned to: Hon. Daniel J. Calabretta

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. THE OPPOSITION CONFIRMS THAT PLAINTIFFS LACK A CONCRETE HARM. ..... 1

A. Plaintiffs Have Not Personally Suffered An Injury-In-Fact. ..... 1

B. The Opposition Confirms That Plaintiffs Lack An Injury To Privacy Under *Popa*. ..... 2

C. The Opposition Confirms That Plaintiffs Have Not Suffered An Economic Harm. ..... 4

III. PLAINTIFFS FAIL TO STATE ANY CLAIM FOR RELIEF ..... 5

A. Plaintiffs Do Not Refute The Conclusory Nature Of Their Allegations. ..... 5

B. Plaintiffs Do Not Dispute Their Impermissible Shotgun Pleading. ..... 6

C. The Opposition Confirms That Tash's Claims Are Time-Barred. ..... 7

D. The Opposition Confirms That ECPA's Crime-Tort Exception Is Inapplicable Here. ..... 7

E. The Opposition Confirms That Plaintiffs Have Not Alleged An Invasion Of Privacy. ..... 8

F. The Opposition Confirms That Plaintiffs Have No Conversion Claim. ..... 9

G. The Opposition Confirms That Tash Has No Claim Under The CMIA. ..... 10

H. Tash Does Not Refute VSP's Lack Of Actionable Scienter Under CIPA § 631(a). ..... 11

I. The Opposition Confirms That Tash Has No Claim Under § 638.51. ..... 13

1. Tash Does Not Refute That The Tracking Tools Alegedly Collect Contents. ..... 13

2. Section 638.51 Prohibits Only Telephone-Tracking Technology ..... 13

J. The Opposition Confirms That Tash Has No UCL Claim. ..... 15

K. The Opposition Confirms That Plaintiffs' Punitive Damages Claims Are Conclusory. ..... 15

IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Application of U.S. of Am. for an Order Authorizing Use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) .......... 14

*B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) .......... 12

*Balestrieri v. SportsEdTV, Inc.*, No. 25-cv-04046-SK, 2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) .......... 11, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5

*Beltran v. Doctors Med. Ctr. Of Modesto*, No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467 (E.D. Cal. June 9, 2025) .......... 6, 9, 10

*Black v. IEC Grp., Inc.*, No. 1:23-cv-00384-AKB, 2025 WL 2418799 (D. Idaho Aug. 21, 2025) .......... 4

*Bradshaw v.Lowe's Co.*, No.: 25cv0742 DMS, 2025 U.S. Dist. LEXIS 223830 (S.D. Cal. Nov. 12, 2025) .......... 3

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 2

*Bufkin v. Collins*, 145 S. Ct. 728 (2025) .......... 14

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 15

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .......... 3

*Cancelmo v. S.N.H. Med. Ctr.*, No. 24-cv-245-SE, 2025 U.S. Dist. LEXIS 193067 (D.N.H. Sept. 30, 2025) .......... 8

*Carolus v. Nexstar Media Inc.*, No. 24-cv-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 2

*Chavez v. Ford Motor Credit Co., LLC*, No. 1:23-cv-01205-SKO, 2025 WL 1001587 (E.D. Cal. Apr. 3, 2025) .......... 6, 7

*Coast Surgery Ctr. v. United Healthcare Ins. Co.*, No.: 8:22-cv-02200-FWS-DFM, 2024 WL 650174 (C.D. Cal. Jan. 5, 2024) .......... 15

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 14

*Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025) .......... 4

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 1, 6, 11

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 9, 10

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 13, 15

*Doe v. Amgen, Inc*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ........ 6

*Doe v. Call-On DOC, Inc.*,
No. 24cv2095-GPC(KSC), 2025 WL 1677632 (S.D. Cal. June 13, 2025) ........ 11

*Doe v. Davita Inc.*,
No. 23-cv-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ........ 1, 5, 6

*Doe v. Fullstory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ 2, 7

*Doe v. Genesis Health Sys.*,
No. 4:23-cv-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ........ 8

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 6

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 4, 12

*Doe v. Microsoft Corp.*,
No. C23-0718-JCC, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........ 15

*Doe v. N. Cal. Fertility Med. Ctr.*,
No. 22-CV-01861-DAD-JDP, 2024 WL 246178 (E.D. Cal. Jan. 23, 2024) ........ 2, 4

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 2, 7

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 8

*Endy v. Cnty. of L.A.*,
975 F.3d 757 (9th Cir. 2020) ........ 3

*Esparza v. UAG Escondido A1 Inc.*,
No. 23cv0102 DMS (KSC), 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) ........ 11, 12

*In re Ethereummax Inv.*,
No. CV2200163MWFSKX, 2023 WL 6787827 (C.D. Cal. June 6, 2023) ........ 7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 3, 4, 5

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........ 12

*Gaige v. Exer Holding Co., LLC*,
No. 2:24-cv-06099-AH-(AJRx), 2025 WL 559719 (C.D. Cal. Mar. 2, 2025) ........ 2, 9

*Gerber v. Twitter, Inc.*,
Case No. 4:23-cv-00186-KAW, 2024 WL 1354449 (N.D. Cal. Mar. 29, 2024) .......... 4

*Gerzhon v. Meta Platforms, Inc.*,
No. 23-cv-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .......... 12

*Gibson v. Walmart, Inc.*,
No. 5:22-cv-00238-JWH-KK, 2022 WL 22869634 (C.D. Cal. Sept. 19, 2022) .......... 6

*Gray v. Luxottica of Am., Inc.*,
No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .......... 2, 10

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 14

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) .......... 9

*Griffith v. TikTok, Inc.*,
No. 5:23-cv-00964-SB-E, 2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) .......... 9

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) .......... 13, 14

*Harrill v. Emanuel Med. Ctr.*,
No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428 (E.D. Cal. June 9, 2025) .......... 6

*Hilario v. Allstate Ins. Co.*,
No. 20-cv-05459-WHO, 2020 WL 7643233 (N.D. Cal. Dec. 23, 2020) .......... 5

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 7

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 6, 11, 13

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 15

*Katz-Lacabe v. Oracle Am.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 8

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 10

*McClung v. AddShopper, Inc.*,
No. 23-cv-01996-VC, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 5

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 1, 5, 10

*Oganyan v. Biolife Plasma Servs. L.P.*,
No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .......... 3

*Okash v. Essentia Health*,
No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) .......... 1, 5

*Phillips v. U.S. Customs and Border Protection*,
74 F.4th 986 (9th Cir. 2023) ........ 4

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 2, 3

*Price v. Converse, Inc.*,
No. 2:24-cv-08091-FLA (Ex), 2025 U.S. Dist. LEXIS 198738 (C.D. Cal. Sept. 30, 2025) ........ 2, 3

*Pruchnicki v. Envision Healthcare Corp.*,
439 F. Supp. 3d 1226 (D. Nev. 2020) ........ 5

*R.C. v. Sussex Publishers, LLC*,
No. 24-CV-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 10

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 7, 8, 12

*Rodriguez v. Culligan Int'l Co.*,
Case No.: 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........ 3

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ........ 4

*Russo v. APL Mar. Servs., Ltd.*,
135 F. Supp. 3d 1089 (C.D. Cal. 2015) ........ 9

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ........ 8, 9

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Super. Ct. Jan. 27, 2025) ........ 14, 15

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 14

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8 (9th Cir. 2018) ........ 4, 6, 8

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 11

*Smith v. YETI Coolers, LLC*,
No. 24-cv-01703-RFL, 2025 WL 877127 (N.D. Cal. Mar. 14, 2025) ........ 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 1, 2

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 10, 11

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 13

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) .......... 11

*Weston v. Lefiti*,
No. 24-541, 2024 WL 4579237 (9th Cir. Oct. 25, 2024) .......... 8

*WiLAN Inc. v. LG Elecs., Inc.*,
382 F. Supp. 3d 1012 (S.D. Cal. 2019) .......... 7

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .......... 3, 8

*Wilson v. Google LLC*,
No. 24-cv-03176-EKL, 2025 WL 901941 (N.D. Cal. Mar. 25, 2025) .......... 13

*Wilson v. Rater8, LLC*,
No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .......... 11

*Xu v. Reuters News & Media Inc.*,
24 Civ. 2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 5

**State Cases**

*Barbour v. John Muir Health*,
No. C22 01693, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) .......... 10

*Dep't of Fin. v. Comm'n on State Mandates*,
85 Cal. App. 5th 535 (2022) .......... 14

*People v. Super. Ct. of L.A. Cnty.*,
70 Cal. 2d 123 (1969) .......... 12

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) .......... 5

**Federal Statutes**

42 U.S.C. § 1320d(4) .......... 10

**State Statutes**

Cal. Civ. Code § 56.05(j), (k), (m) .......... 10

Cal. Civ. Code § 3336 .......... 5

Cal. Civ. Code § 3531 .......... 14

Cal. Civ. Proc. Code § 1859 .......... 14

Cal. Pen. Code § 631(a) .......... *passim*

Cal. Pen. Code § 638.50 .......... 13, 14

Cal. Pen. Code § 638.51 .......... 13, 14, 15

Cal. Pen. Code § 638.52 .......... 14, 15

**Rules**

Fed. R. Civ. P. 8 .......... 8
Fed. R. Civ. P. 20(a)(2) .......... 7

**Other Authorities**

https://www.vspvision.com/utility/terms-of-service.html .......... 6

## I. INTRODUCTION

Plaintiffs fail to allege anything more that conclusory, generic, shotgun allegations—largely recycled from their counsel's other cases—in support of their theory that VSP's use of ubiquitous technologies on a publicly-available website violated their rights to privacy or caused them any harm. Courts in other cases filed by Plaintiffs' counsel have dismissed the conclusory website privacy claims that Plaintiffs assert here.[1] The Court should reach the same result here and grant VSP's Motion.

## II. THE OPPOSITION CONFIRMS THAT PLAINTIFFS LACK A CONCRETE HARM.

### A. Plaintiffs Have Not Personally Suffered An Injury-In-Fact.

The only information that Plaintiffs allege they provided on the Websites was an IP address, Facebook ID ("FID"), and unidentified "search parameters" that could generate a list of providers. CAC ¶¶ 148-49, 155-56. Neither Plaintiff alleges that they ever solicited a provider whose information may have been included in the multi-page list that was returned from these basic searches. *Id.*; *see, e.g.*, ECF No. 35-1, Ex. 1 at 2-15; Ex. 15 at 1-3 (example search results from "Find a Doctor" tool searches); Exs. 2-14, 16-19 (showing available filters and drop-down menus on "Find a Doctor" areas). As VSP showed in its Motion, the unauthorized disclosure of this data is insufficient to show an Article III injury. *See* Mot. 8-9.

Plaintiffs mischaracterize the CAC to attempt to show that they have suffered concrete harms. Plaintiffs argue that VSP disclosed "the identities of Plaintiffs' chosen physicians and their specialties, and whether an appointment was made and if so, the service sought." Opp. 4. Those facts are nowhere in the CAC. Rather, the CAC lists this data as the kind of information that the Tracking Tools could *hypothetically* collect, with screenshots that Plaintiffs concede were created by their counsel and recycled from other cases. Mot. 6. These attorney-made allegations do not show Plaintiffs' standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (Plaintiffs must "show that they personally have been injured, not that injury has been suffered by other, unidentified members of the [putative] class.").

Plaintiffs next argue that "any user of the VSP website or app must submit" highly sensitive personal information to use the search feature. Opp. 1. Not true, as the exhibits provided by VSP demonstrate. *E.g.*, ECF No. 35-1, Exs. 1, 2, 5 (requires entry of a zip code, city, or state), 7 (requires entry

---

[1] *Doe v. Davita Inc.*, No. 23-cv-01424-AJB-BLM, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023); *Okash v. Essentia Health*, No. 23-482 (JRT/LIB), 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1085 (W.D. Wash. 2024).

of a doctor last name and state); RJN 2-4. As shown, using the legal conclusion "Private Information" or "sensitive health information," as Plaintiffs do throughout the Opposition, is irrelevant. *See* Mot. 8. Plaintiffs' allegations do not allow the Court to determine "whether the information [they entered was] actually personal and private," which requires dismissal. *Carolus*, 2025 WL 1338193, at *1 (disclosure of IP address, "browser and device data," and "other identifying information" too conclusory to show injury).

Plaintiffs' bare allegations (CAC ¶¶ 148-50, 155-56) stand in stark contrast to *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244, 1258 (N.D. Cal. 2024) and *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 825, 828-29 (E.D. Cal. 2025) (Opp. 3, 6), where plaintiffs alleged the exact data they provided on a website that allegedly revealed specified sensitive information. *Fullstory*, 712 F. Supp. 3d at 1258 (plaintiff provided name, address, email, insured status, current birth control and medications, allergies, family health and medical history, and whether she was breastfeeding); *Tenet*, 789 F. Supp. 3d at 825, 828-29 (plaintiff entered name, treating physician name, that she sought treatment for pregnancy and childbirth, and used portal to review medical records).[2] Here, by contrast, neither Plaintiff alleges that they entered their names, medical conditions, diagnoses, test results, or patient status. CAC ¶¶ 148-50, 155-56. Nor do they specify the website they visited, which is crucial because the search features on each website were materially different. ECF No. 35-1, Ex. 1 at 1, Exs. 2-8, 16-19; RJN 2-4. Further, all of the hypothetical "Find a Doctor" activity alleged in the CAC pertains only to disclosures to Google, but Plaintiffs do not allege that they owned or were logged into Google Gmail accounts when visiting any Website. CAC ¶¶ 147, 154. Thus, their search activities at most transmitted anonymized data, which is insufficient. Mot. 5.[3]

### B. The Opposition Confirms That Plaintiffs Lack An Injury To Privacy Under *Popa*.

Plaintiffs also do not refute that the CAC does not allege a harm with a "close relationship" to one

---

[2] *See* Opp. 4-5 (citing *Doe v. N. Cal. Fertility Med. Ctr.*, No. 22-CV-01861-DAD-JDP, 2024 WL 246178, at *2, 4 (E.D. Cal. Jan. 23, 2024) (data breach revealed name, patient status at fertility clinic, whether plaintiff received an ultrasound, and whether she stored her frozen eggs); *Gray v. Luxottica of Am., Inc.*, No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566, at *2 (C.D. Cal. Dec. 16, 2024) (plaintiff alleged transmittal of his "'eye exam'")). *Gaige v. Exer Holding Co., LLC*, No. 2:24-cv-06099-AH-(AJRx), 2025 WL 559719, at *2 (C.D. Cal. Mar. 2, 2025), cited by Plaintiffs, did not address injury in fact.

[3] Plaintiffs' argument that Google might aggregate non-sensitive, non-identifying information with other information to potentially de-anonymize them has no bearing on whether Plaintiffs provided *VSP* any private or personally identifying information. *See* Opp. 4 (citing *Brown v. Google LLC*, 685 F. Supp. 3d 909, 925 (N.D. Cal. 2023)); *Price v. Converse, Inc.*, No. 2:24-cv-08091-FLA (Ex), 2025 U.S. Dist. LEXIS 198738, at *5 (C.D. Cal. Sept. 30, 2025) (declining to consider whether TikTok could "deanonymize" and aggregate data with other data in its possession as grounds for standing); *Spokeo*, 578 U.S. at 339 (injury cannot be "conjectural or hypothetical."). *Brown* held that plaintiffs showed an injury (at summary judgment) because Google violated its terms by collecting their browsing history in "Incognito Mode" and then de-anonymizing them with non-private browsing history and Google's assigned identifiers. 685 F. Supp. 3d at 923-25 & n.8. No such facts are alleged here.

of the "four discrete torts that protected specific kinds of privacy-related harms" at common law. *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025). Plaintiffs can no longer simply point to their "invasion of privacy" or statutory claims to show an Article III injury, as they assert in the Opposition. Opp. 5-6. Plaintiffs must instead explain how the "individual circumstances" of this case give rise to a concrete harm. *Popa*, 153 F.4th at 792, 794. For this reason, the legislative intent for CIPA and ECPA is clearly no substitute for Plaintiffs' burden to show their personal injury here. *See* Opp. 5-6 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020)); *Popa*, 153 F.4th at 794 (holding *In re Facebook, Inc. Internet Tracking Litig.'s* standing analysis had "no support in *TransUnion*," nor does any "pre-*TransUnion* . . . approach that favors a legislative body's views in the aggregate over a plaintiff's individual circumstances").[4]

Plaintiffs do not address the ample cases provided by VSP showing that there is no concrete harm where, as here, plaintiffs fail to allege an "intrusion" or an expectation of "seclusion," in information allegedly disclosed. Mot. 9 & n.6 (collecting authorities). Plaintiffs attempt to distinguish VSP's citations to *Williams* and *Andrews* by asserting that their protected health information was also disclosed (Opp. 6. n.2), but, as shown by VSP, that allegation is purely conclusory. Mot. 8-9, 15-16. Plaintiffs also concede that VSP's alleged disclosure of their information to "computer[s] and/or algorithms" at Meta, Google, or LinkedIn (CAC ¶ 101), with no allegation that Plaintiffs received any targeted advertising, is not analogous to the harm from embarrassing publicity associated with public disclosure of private facts. Opp. 6; Mot. 10 (citing cases); *Cook v. GameStop, Inc.*, 148 F.4th 153, 159 (3d Cir. 2025) ("harm from disclosures that remain functionally internal are not closely related to those stemming from public ones").[5]

Plaintiffs' other cases are inapposite. The plaintiffs in *Campbell*, 951 F.3d at 1112, alleged that Facebook "scan[ned]" users' private electronic messages after Facebook specifically stated that the messages' contents were "viewable only by the sender and his or her chosen recipients." In *In re Facebook,*

---

[4] *See also Bradshaw v. Lowe's Co.*, No.: 25cv0742 DMS, 2025 U.S. Dist. LEXIS 223830, at *14 (S.D. Cal. Nov. 12, 2025) (*Popa* forecloses argument that "a violation of [plaintiffs'] right to privacy is inherent in" alleged CIPA violation); *Oganyan v. Biolife Plasma Servs. L.P.*, No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619, at *3 (E.D. Cal. Oct. 22, 2025) (same); *Price*, 2025 U.S. Dist. LEXIS 198738, at *6-7 (same); *Rodriguez v. Culligan Int'l Co.*, No.: 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) (same).

[5] Any "informational privacy" right under *Endy v. Cnty. of L.A.*, 975 F.3d 757 (9th Cir. 2020), Opp. 3 is inapposite. *Endy* involved an interest against *government* collection of private data that resulted in public dissemination, and did not assess standing. *Id.* at 760, 764, 769. No government intrusion or public dissemination is alleged here.

*Inc. Internet Tracking Litig.*, 956 F.3d at 596, plaintiffs alleged that Facebook monitored their browsing activities when *not* logged into Facebook to create profiles on them in violation of Facebook's express representations. No allegations of deception or intrusion upon seclusion are present here.

Finally, Plaintiffs do not dispute VSP's case law showing that disclosure of data generated from a prospective search for a provider for the purpose of improving targeted advertising, even in combination with a FID, is not "remotely similar" to the egregious breach of social norms required at common law. Mot. 11; *Phillips v. U.S. CBP*, 74 F.4th 986, 996 (9th Cir. 2023) (unauthorized access to "names, birthdays, [SSNs], occupations, addresses, social media profiles, and political views and associations" not "so sensitive" as to be "'highly offensive to a reasonable person,'" necessary to show concrete harm); *see also Black v. IEC Grp., Inc.*, No. 1:23-cv-00384-AKB, 2025 WL 2418799, at *5 n.2 (D. Idaho Aug. 21, 2025) ("unauthorized disclosure of alleged medical information" not *per se* highly offensive).[6] Nothing Plaintiffs allegedly conveyed here is protected medical information under statutes like HIPAA and the CMIA. *See* Mot. 15-16, 19-20; *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 n.5 (N.D. Cal. 2017) (disclosure of URLs reflecting plaintiffs' usage of Find a Doctor search not protected under HIPAA), *aff'd* 745 F. App'x 8, 9 (9th Cir. 2018). Plaintiffs fail to allege a concrete harm to their privacy that could confer standing.

**C. The Opposition Confirms That Plaintiffs Have Not Suffered An Economic Harm.**

As shown, Plaintiffs do not identify any information they provided that allegedly has economic value, a market for that data, or how their data diminished in value through its alleged disclosure by VSP. Mot. 11-12; *see* CAC ¶¶ 105-18, 145-50, 152-56.[7] Indeed, Plaintiffs allege that "commoditiz[ing]" their data would be highly offensive, CAC ¶¶ 6, 266, 268, 277-78, which shows that they would not offer their data for purchase by third-parties, even if possible. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1090 (N.D. Cal. 2023) (plaintiffs failed to show diminution of value in their health information where they alleged that "do not want Meta or anyone other than their healthcare providers to have [it]").[8] They have

[6] In *N. Cal. Fertility Med. Ctr.*, 2024 WL 246178, Opp. 5, plaintiff alleged the exposure of "some of the most sensitive categories of [her] information," including that she received an ultrasound and froze her eggs. *Id.* at *2, 4 n.3. Plaintiffs allege nothing approaching that level of sensitivity. Mot. 20.

[7] *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025), cited by Plaintiffs, did not address Article III standing, and relied on cases finding that Google had previously paid plaintiffs for identical data. *Id.* at 1110. No such facts are alleged here. *See Gerber v. Twitter, Inc.*, No. 4:23-cv-00186-KAW, 2024 WL 1354449, at *7 (N.D. Cal. Mar. 29, 2024) (distinguishing claims of economic injury where plaintiffs did not allege Twitter had previously paid individuals for data).

[8] That two cases cited by VSP (Mot. at 11 n.8) arose from a data breach does not render them inapplicable. *See* Opp. at 7 n.3. Plaintiffs rely on data breach cases. Opp. 5 (citing *N. Cal. Fertility Med. Ctr.*). Plaintiffs' cases acknowledge that outside of

failed to allege an economic harm from the alleged use of the Tracking Tools under established law.

Rather, Plaintiffs argue under *In re Facebook, Inc. Internet Tracking Litig.* that Article III standing exists solely based on a plaintiff's "entitlement to unjustly earned profits" without any injury. Opp. 6-7. That analysis "has been superseded by *TransUnion [LLC v. Ramirez*, 594 U.S. 413, 426-30 (2021)] . . . ." *McClung v. AddShopper, Inc.*, No. 23-cv-01996-VC, 2024 WL 189006, at *2 n.2 (N.D. Cal. Jan. 17, 2024); *e.g.*, *Xu v. Reuters News & Media Inc.*, 24 Civ. 2466 (PAE), 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) ("To state the obvious, Reuters's increasing its revenue, by itself, does not harm [Plaintiff]"). Indeed, Plaintiffs' claims do not even entitle them to nonrestitutionary disgorgement. *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 801 (2015) (no entitlement to profits in excess of plaintiff's loss under UCL); Civ. Code § 3336 (damages for conversion claims based on fair market value of converted property); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (compensatory damages for privacy torts).[9]

## III. <u>THE OPPOSITION CONFIRMS THAT PLAINTIFFS FAIL TO STATE ANY CLAIM.</u>

### A. Plaintiffs Do Not Refute The Conclusory Nature Of Their Allegations.

Plaintiffs' failure to plead (1) which of the multiple alleged Websites Plaintiffs visited and (2) what information they entered on that Website is fatal to all of their claims. Indeed, several courts have already held that the same allegations recycled here from other cases filed by Plaintiffs' counsel are insufficient under *Iqbal* and *Twombly*. *Compare Davita*, 2024 WL 1772854, at *2 (alleging that plaintiff "*accessed and used [Defendant's] Online Platforms on her phone and desktop computer* . . . in order to receive treatment," and "*locate the facility she'd be going to for treatment*" (emphasis added; complaint filed by Tash's counsel)), *with* CAC ¶ 155 (Hahn "communicated his Private Information to VSP when he used his *phone and computer to access the Web Properties* . . . to *search for an in-network healthcare provider in his geographic area*" (emphasis added)), 146, 148 (similar for Tash).[10] Plaintiffs do not deny that their

---

a data breach, a plaintiff must still "establish both the existence of a market for her personal information and an impairment of her ability to participate in that market" to show standing based on lost value of personal data. *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1234 (D. Nev. 2020) (cited in Opp. 7 n.3); *see* Opp. 7 n.3 (citing *Pruchnicki*).

[9] Plaintiffs concede that they do not base Art. III standing on a lost benefit-of-the-bargain theory. Opp. 7; *see* Mot. 12. To the extent Plaintiffs argue that they have standing based on a conclusory assertion of overpayment for insurance, (Opp. 7), *Hilario v. Allstate Ins. Co.*, No. 20-cv-05459-WHO, 2020 WL 7643233 (N.D. Cal. Dec. 23, 2020), upon which they rely, supports dismissal of their conclusory claims. In *Hilario*, the court *granted* the defendant's motion to dismiss a UCL claim for failure to allege facts showing premium overcharges even where plaintiffs asserted a theory of overpayment for insurance. *Id.* at *7-8.

[10] *See also Okash*, 2024 WL 1285779, at *1 (dismissing all claims brought by Hahn's counsel; "significant pleading defects . . . appear to be symptoms of [plaintiff's] focus on Meta Pixel litigation against other healthcare providers rather than the facts of this case"); *Nienaber*, 733 F. Supp. 3d at 1083-84 (dismissing allegations brought by Tash's counsel that plaintiff

counsel recycled allegations here from *Davita*, where the complaint was dismissed.

*Beltran*, *Harrill*, and *Doe v. Amgen, Inc*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024)—which Plaintiffs fail to address whatsoever—rejected conclusory allegations like Plaintiffs' because they "d[id] not identify with specificity what information they provided to Defendants via their browsing activity on the Website . . . ." *Beltran*, 2025 WL 1635467, at *5; *Harrill*, 2025 WL 1635428, at *4; *see* Mot. 13-14.[11] Plaintiffs provide no cases refuting the conclusory nature of their claims. Opp. 8. Plaintiffs' "labels and conclusions" do not "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and VSP's Motion should be granted on this basis alone.

**B. Plaintiffs Do Not Dispute Their Impermissible Shotgun Pleading.**

Plaintiffs do not dispute that the CAC contains *no* allegations regarding the conduct of VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC. Opp. 9, § IV.B.2. Rather, Plaintiffs argue that these defendants are properly named because "VSP represents on its website that its services are provided by VSP and its *affiliate* companies . . . ." Opp. 9-10 (quoting https://www.vspvision.com/utility/terms-of-service.html). This attempted amendment is not only improper, but irrelevant. *First*, the website vspvision.com is alleged *nowhere*; Plaintiffs do not claim to have visited it. *Second,* nothing in the Terms of Service that Plaintiffs quote references these Defendants, let alone identifies them as "affiliate[s]" of VSP that operate whatever website Plaintiffs may have visited. *Third*, even if the Terms of Service aided their claims, Plaintiffs cannot amend the CAC through their Opposition. *Chavez v. Ford Motor Credit Co., LLC*, No. 1:23-cv-01205-SKO, 2025 WL 1001587, at *8 (E.D. Cal. Apr. 3, 2025). "A complaint that lumps multiple defendants together in its allegations does not satisfy the requirements of Rule 8." *Gibson v. Walmart, Inc.*, No. 5:22-cv-00238-JWH-KK, 2022 WL 22869634, at *3 (C.D. Cal. Sept. 19, 2022); *see Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *5-6 (N.D. Cal. Apr. 11, 2024) (dismissing defendants that allegedly merely

"used Defendant's website to request and schedule appointments" as unsupported, and decrying reliance on "hypothetical examples of data sharing"); *Cousin*, 681 F. Supp. 3d at 1122-23 (same; alleging an "example of a search by a hypothetical patient" alongside conclusory allegations of disclosure of plaintiff's "search parameters" was insufficient).

[11] *Beltran* did not hold that alleging the use of a Find a Doctor tool would cure *Iqbal* problems, as Plaintiffs claim. Opp. at 8. *Beltran* only referenced a "Find a Doctor" page because the complaint alleged how tracking tools could transmit information from that page, but the plaintiffs did not claim to have used it. 2025 WL 1635467, at *2-3, 5; *see Smith*, 262 F. Supp. 3d at 954 n.5 (URL from Find a Doctor page not PHI). As in *Beltran*, the CAC contains scores of hypothetical ways that tracking tools could operate, but Plaintiffs do not claim that these show their use of the Website. *Compare* CAC ¶¶ 2-18, 30-54(a)-(e), 68, 70, 77-80, 82-85, 81, 87, 90-91 *with id.* ¶¶ 145-62.

"ha[d] a hand in the operation of the website"). Plaintiffs' shotgun allegations should be dismissed.[12]

### C. The Opposition Confirms That Tash's Claims Are Time-Barred.

Tash's argument that he "could not have discovered Defendant's unlawful conduct until shortly before the filing," is unavailing. Opp. 13. To the extent this argument is an attempt to allege his "time and manner of discovery," those facts are absent from the CAC, and he cannot amend his claims through opposition. *Chavez*, 2025 WL 1001587, at *8.[13] Tash does not dispute that his allegations in the CAC regarding an alleged inability to discover VSP's use of the Tracking Tools earlier are wholly conclusory and, therefore, cannot support the delayed discovery rule. *E.g.*, *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *7 n.9 (N.D. Cal. July 1, 2024) (declining to infer "collection occurred in secret"; "reasonable users should expect the collection of their internet-browsing data"). Finally, Tash's argument that the application of the statute of limitations cannot be resolved without discovery is not the law. Opp. 13. Facially untimely claims are not allowed into discovery. Mot. 19 (citing *Paplekaj*).

### D. The Opposition Confirms That ECPA's Crime-Tort Exception Is Inapplicable Here.

Plaintiffs' ECPA claim should be dismissed because Plaintiffs concede that VSP was the intended recipient of any of their communications on the Website, and a party to a communication is exempt from liability under ECPA unless Plaintiffs establish the application of the crime-tort exception. Mot. at 14.

As shown, the crime-tort exception is inapplicable here because Plaintiffs allege that VSP's "*sole* purpose" in using the Tracking Tools was to "bolster[] [its] profits via marketing and advertising." Mot. 14-15; *see* CAC ¶ 105 (emphasis added). Plaintiffs contend that VSP's sole purpose of financial gain is not dispositive of the exception because a single district court held that the exception applies even where "defendant is arguably motivated by monetary gain . . . ." Opp. 11 (citing *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024)). *R.C.* did not involve allegations that the defendant was motivated by financial gain, and this language is, therefore, dicta. *Id.* at 885-87, 901. Moreover, the dicta from *R.C.* is

[12] No case law supports Plaintiffs' argument that Rule 20(a)(2), which governs permissive joinder, could eliminate Rule 8(a)'s notice requirements for each Defendant. *See* Opp. 10. Plaintiffs' string of authorities that allow alternative legal theories are irrelevant because none addresses whether allegations collectively pleaded against multiple defendants satisfy Rule 8(a). *Id.* (citing *WiLAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1023 (S.D. Cal. 2019) (no discussion of group pleading); *In re Ethereummax Inv.*, No. CV2200163MWFSKX, 2023 WL 6787827, at *16 (C.D. Cal. June 6, 2023) (same)).

[13] Indeed, in Plaintiffs' authorities, the complaints alleged the dates on which the plaintiffs gained inquiry notice of their claims or the time of discovery, unlike the CAC here. *Tenet*, 789 F. Supp. 3d at 853 ("the earliest [Plaintiffs] could have reasonably discovered Defendants' conduct was June 16, 2022"); *Fullstory*, 712 F. Supp. 3d at 1255.

contrary to the weight of authority that finds the crime-tort exception inapplicable where, as here, a plaintiff alleges that defendant was primarily (or solely) motivated by financial gain. Mot. 15.[14] Indeed, *In re Meta Pixel Healthcare Litig.*, cited by Plaintiffs and relied on by *R.C.*, *denied* a motion for preliminary injunction on ECPA claims because of the "authority . . . finding that liability does not lie where a defendant's primary motivator was to make money . . . ." *Id.* at 797.

Plaintiffs assert that the crime-tort exception is applicable because they have alleged a separate criminal or tortious act through the other causes of action in the CAC. Opp. 11. But "[t]he focus is not upon whether the interception itself violated another law . . . ." *Newman*, 51 F.4th at 1136; Mot. 15. Plaintiffs point to no allegations showing that VSP acted for the purpose of committing a separate act *beyond* the mere interception or disclosure alleged in the CAC, which is insufficient. *Weston v. Lefiti*, No. 24-541, 2024 WL 4579237, at *2 & n.2 (9th Cir. Oct. 25, 2024) (interception for the purpose of invading privacy or disclosing telephonic communications was not intent to commit separate tort).

Plaintiffs also argue that the crime-tort exception applies because they have alleged VSP violated HIPAA. Opp. 11. Not so. As the case law provided by VSP—which Plaintiffs fail to address—shows, an alleged HIPAA violation based on disclosure "cannot be . . . the tort" for purposes of the crime-tort exception. Mot. 15-16 (citing *Kaiser*). Moreover, Plaintiffs do not dispute that they have failed to allege a HIPAA violation. *Id.*[15] Similarly, their other tort claims fail and therefore cannot satisfy the crime-tort exception for this additional reason. *See Saedi*, 2025 WL 1141168, at *13. None of Plaintiffs' arguments for the application of the crime-tort exception here warrant denying VSP's Motion.

### E. The Opposition Confirms That Plaintiffs Have Not Alleged An Invasion Of Privacy.

Plaintiffs do not address any of VSP's authorities showing that dismissal of their invasion of privacy claims for failure to allege an actionable intrusion, a public disclosure, or an egregious breach of social

---

[14] *See also, e.g.*, *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 n.8 (9th Cir. 2022) ("[F]undraising is not a criminal or tortious purpose."); *Katz-Lacabe v. Oracle Am.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001); *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024); *Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025).

[15] *See Smith*, 262 F. Supp. 3d at 954 & n.5 (disclosure of IP address, browser and device information, and "Find a Doctor" search for "http://www.shawneemission.org/**find-adoctor**?doctor=**Scott-E-Ashcraft-MD** . . . ." not disclosure of IIHI under HIPAA) (emphasis added); *Cancelmo v. S.N.H. Med. Ctr.*, No. 24-cv-245-SE, 2025 U.S. Dist. LEXIS 193067, at *6-7 (D.N.H. Sept. 30, 2025) (use of unauthenticated webpage's "Find a Doctor" feature to search for a male doctor specializing in dermatology and subsequent click of "Make an Appointment" not transmission of IIHI under HIPAA).

norms is appropriate. Mot. 17-18. Instead, Plaintiffs cite two inapposite authorities. *First*, in *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967 (S.D. Cal. 2023) ("*Cousin II*") and *Gaige* (Opp. 12), defendants "did not move to dismiss on the grounds that there was no intrusion," like VSP here. *Saedi*, 2025 WL 1141168, at *7 (distinguishing *Cousin II* and *Gaige* for this reason). Here, Plaintiffs do not dispute that they fail to allege any intrusion by VSP, (Mot. 17), which requires dismissal of their intrusion upon seclusion and Tash's invasion of privacy claim. *See Beltran*, 2025 WL 1635467, at *7. *Second*, neither *Cousin II*, 702 F. Supp. 3d at 973-74, nor *Gaige*, 2025 WL 559719, at *7-8, ruled on public disclosure of private facts claims. The cases are, therefore, inapposite to Plaintiffs' failure to allege this claim.

*Cousin II* and *Gaige* are also factually inapposite. *Gaige* denied dismissal of an invasion of privacy claim because plaintiff alleged "how [he] used the Website to search for medical treatments, information, and diagnoses for his medical conditions," and that he "received targeted advertisements . . . related to his specific medical conditions and/or treatments." 2025 WL 559719, at *7-8. In *Cousin II*, plaintiffs "set forth their particular medical conditions," "status as patients with certain doctors," and allegedly booked an appointment specific to their conditions, which was improperly shared. 702 F. Supp. 3d at 973-74. No allegations regarding targeted advertisements or disclosure of specific medical conditions are present here.

**F. The Opposition Confirms That Plaintiffs Have No Conversion Claim.**

Hahn concedes that he has no conversion claim under Illinois law. Mot. 18; Opp. 13. While he claims that he can sue under California common law, Hahn, an Illinois resident, cannot assert a California conversion claim because he does not allege that any conversion occurred here. *Russo v. APL Mar. Servs., Ltd.*, 135 F. Supp. 3d 1089, 1096 (C.D. Cal. 2015) (declining to apply California common law claims to non-resident plaintiffs where "none of the conduct which gave rise to the liability occurred in California").

Plaintiffs also fail to address VSP's authorities showing that they have no conversion claim under California law. Mot. 18-19. Indeed, not even Plaintiffs' case law supports their conversion claim. The only authority that Plaintiffs cite, *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 975-76 (C.D. Cal. 2023) (Opp. 13) recently held that no conversion claim could be stated for the alleged sharing of data reflecting "user actions" on third-party webpages, including "event information," "content information," and IP addresses, like Plaintiffs allege here, based on "controlling authority." *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964-SB-E, 2024 WL 5279224, at *1, 11 (C.D. Cal. Dec. 24, 2024). *See also* Mot. 19 (citing *Low*).

**G. The Opposition Confirms That Tash Has No Claim Under The CMIA.**

Tash does not dispute that he fails to allege his patient status was provided, or disclosed, on the Website, which alone requires dismissal of his CMIA claim. Civ. Code § 56.05(j) (medical information subject to the CMIA requires disclosure of "patient's" information); Opp. at 15-16; Mot. 20 (citing *Beltran*, 2025 WL 1635467, at *9). Indeed, Tash fails to address—let alone refute—that *Beltran* supports dismissal of his CMIA claim on these grounds. Mot. 20.

Tash's authorities also do not show that he provided any "medical history, . . . mental or physical condition, or treatment" subject to the CMIA. Civ. Code § 56.05(j); Mot. 20 (citing *Gray*, which held that information about "treatment sought" is not information "about Plaintiff's treatment"). Tash cites *Cousin II*, *Nienaber*, and *R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at *5 (N.D. Cal. Mar. 28, 2025), Opp. 15, 16, but these cases are inapposite, or support denial of his claim. *Cousin II* failed to address the CMIA's "patient" limitation and incorrectly equated the CMIA's definition of medical information to HIPAA's definition of IIHI. 702 F. Supp. 3d at 975.[16] *Nienaber* supports dismissal of Tash's CMIA claim. *Nienaber* reasoned that even under HIPAA's definition of IIHI, user search activity on an unauthenticated webpage, without more, like Tash alleges here, does not transmit "any information identifying the user as a patient." *Nienaber*, 733 F. Supp. 3d at 1084. Finally, in *R.C.*, 2025 WL 948060, at *5, plaintiffs did not merely use a filtering tool on a website, but provided "their particular mental health issues," (a separate category of "inferred" medical information, Civ. Code § 56.05(k)), "specific symptoms," "the type of therapy they sought," and "the faith background of their preferred therapist." *Id.* at *5. Tash alleges that he provided none of this to VSP. CAC ¶ 149.

*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024), relied upon by Tash, is equally unavailing. Opp. at 14, 16. In *St. Aubin*, a plaintiff alleged a disclosure to third parties that she scheduled multiple appointments with specific providers "to obtain a COVID-19 vaccine," thereby revealing that she was a patient of particular health providers and particular treatment she received. *Id.* at *2. In *Barbour v. John Muir Health*, No. C22 01693, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023), plaintiffs alleged that disclosures revealed their "doctor appointments" with

[16] 42 U.S.C. § 1320d(4) (defining "health information" to mean "any information . . . that relates to the past, present, or future physical or mental health or condition of *an individual*"); Civ. Code § 56.05(j), (m) (defining "patient" as a person who "receiv*ed* health care services from a provider of health care and to whom medical information pertains").

"specific providers," satisfying the bare "legal sufficiency" standard in state court—which is not governed by *Iqbal* and *Twombly*. *Id.* at *7. Here, by contrast, Tash does not allege that he solicited any provider on the multi-page list generated in response to his search. CAC ¶¶ 146-149. But even if he had, his own authorities show that information is not subject to the CMIA. *Cousin*, 681 F. Supp. 3d at 1122 ("patient's search parameters," clicks on doctor's profile page, and FID not "medical information" under CMIA). Tash's use of pre-set filters to generate a list of providers is not information regarding his treatment, and its alleged disclosure is not actionable under the CMIA. *See* Mot. 20 (citing *Wilson*).

**H. Tash Does Not Refute VSP's Lack Of Actionable Scienter Under CIPA § 631(a).**

Tash provides no case law that would support denying VSP's Motion to dismiss his CIPA § 631 claim for failure to allege unlawful scienter. *First*, Tash's argument that scienter is not an element of a § 631 aiding claim is not the law. Opp. 17. As numerous courts have recognized, § 631's fourth clause imposes a scienter requirement through the words "to unlawfully do, permit, or cause[,]" regardless of the absence of the word "abet." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) ("to unlawfully" imposes tortious intent requirement even if "[t]he statute does not . . . incorporate the common law requirement for aiding and abetting"); *Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS (KSC), 2024 WL 3761293, at *6 (S.D. Cal. Aug. 5, 2024) (same). This interpretation does not "conflict with the plain language of the statute." Opp. 18 & n.11. It *is* the plain language.[17]

Tash's authorities do not hold otherwise. Opp. 17. *Cousin* only addressed whether a plaintiff is required to allege all elements of *criminal* aiding and abetting liability; it did not address whether "to unlawfully" imposes a scienter requirement, which was not raised. 681 F. Supp. 3d at 1130. *Doe v. Call-On Doc, Inc.* did not address scienter under CIPA at all. 2025 WL 1677632, at *14-15 (S.D. Cal. June 13, 2025) (analyzing whether plaintiff alleged that third parties were separate eavesdroppers). *St. Aubin*, Opp. 16, cited *Cousin* for the proposition that intent is not an element of a claim under the fourth clause of § 631, but because *Cousin* did not address scienter under the fourth clause, *St. Aubin* is not good law on this point. 2024 WL 4369675, at *8. And *Balestrieri v. SportsEdTV, Inc.*, No. 25-cv-04046-SK, 2025 WL

---

[17] Since VSP's interpretation of the statute is consistent with its plain text, and Tash's is not, the Court need not reach VSP's rule of lenity argument. Mot. 21 n.15. Nevertheless, if the Court believes Tash's interpretation is a susceptible interpretation, then both interpretations stand in relative equipoise, and the ambiguity is a "grievous" one, (Opp. 17 n.10) because it imposes strict liability on parties to a communication. Pen. Code § 631(a). This ambiguity should be resolved against finding liability here. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012).

2776356 (N.D. Cal. Sept. 16, 2025), Opp. 17, agreed that the fourth clause of § 631 requires "knowledge of the conduct that will violate the statute and a purpose of aiding . . . the third party to commit those acts." *Id.* at *1, 11. The California Supreme Court's general directive to construe CIPA provisions to "giv[e] greater protection to privacy interests" (Opp. 17) does not justify imposing *strict liability* for a third party's willful eavesdropping, as Tash seeks to here. *People v. Super. Ct. of L.A. Cnty.*, 70 Cal. 2d 123, 132 (1969) (avoiding construction of eavesdropping statute that would impose strict liability, reasoning that "[e]avesdropping is not one of that class of crimes that affects public health, welfare or safety for which strict liability is most often imposed without any ingredient of intent").

*Second,* Tash fails to address VSP's cases holding that VSP's installation of the Tracking Tools alone is insufficient to show actionable scienter under § 631(a)'s fourth clause. Mot. 21 (citing *Smith v. YETI Coolers, LLC*, No. 24-cv-01703-RFL, 2025 WL 877127, at *1 (N.D. Cal. Mar. 14, 2025)); *Esparza*, 2024 WL 559241, at *1. The authorities cited by Tash do not hold otherwise. *R.C.*, Opp. 18, included allegations that a defendant intentionally configured a tracking tool to disclose "custom events" including the names of sensitive healthcare products purchased, such as HIV tests, and to scan for fields containing personal information. *Id.* at 886-87. Tash alleges no similar facts here. *Balestrieri* and *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 WL 2494368, at *10 (N.D. Cal. Aug. 29, 2025), held that installation of tracking technologies satisfied a lower "on purpose" standard, which, as VSP's authorities show, is not the law. Mot. 21. Moreover, in *Gabrielli*, the plaintiff alleged that the defendant configured its website to collect medical product preferences while "assur[ing] visitors that they c[ould]" reject all cookies, when they could not. 2025 WL 2494368 at *10 (citing Compl., *Gabrielli*, No. 4:25-cv-02555, ECF No. 1 ¶¶ 1-3 (Mar. 14, 2025)). No allegations of an intent to deceive are present here.

*Third*, Tash provides no authorities that support his argument that he need not allege the willfulness of third parties that supplied the Tracking Tools. Opp. 18. *Meta Platforms*, upon which he relies, addressed only direct wiretapping liability, not aiding willful eavesdropping under the fourth clause of § 631(a). 690 F. Supp. 3d at 1076. *Gerzhon v. Meta Platforms, Inc.*, No. 23-cv-00083-SI, 2023 WL 5420234, at *11 (N.D. Cal. Aug. 22, 2023), held, contrary to Tash's argument, that third-party scienter was an element of an "aiding and abetting" claim under § 631(a). Mot. 22 (citing *B.K.*, 2024 WL 5338587, at *3).

*Finally*, Tash contends that third-party scienter is established by his bare allegation that the

providers of the Tracking Tools "encourage[d]" their use. Opp. 19. But Tash does not dispute that "[t]here is nothing inherently unlawful about" offering these tools to health care providers. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 841 (N.D. Cal. 2024).[18] Meta's "[e]ncourage[ment] . . . [of] entities and website owners" (CAC ¶ 45) to use business tools for lawful purposes does not plausibly allege intentional or willful eavesdropping as the fourth clause of § 631(a) requires.

**I. The Opposition Confirms That Tash Has No Claim Under § 638.51.**

1. Tash Does Not Refute That The Tracking Tools Alegedly Collect Contents.

A device that collects "contents of a communication," like Tash alleges the Tracking Tools are here, is expressly excluded from the definition of a pen register. Pen. Code § 638.50(b); *e.g.*, CAC ¶ 3; Mot. 23; *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008) ("'[P]en registers . . . obtain *only* the addressing information associated with phone calls."); RJN 4-5; ECF No. 35-1, Ex. 23 at 11 (legislative history of AB 929 states: *"[a]s opposed to a wiretap*, a pen register/trap and trace device *only* records the numbers dialed to or from a particular phone number") (emphasis added). Tash fails to refute this express statutory text, which is fatal to his 638.51 claim. Although he attempts to backtrack from the CAC by arguing that the Tools "may" capture "different types of information," he expressly alleges that the Tools collect "contents." Opp. 20; CAC ¶ 3. The Court should deny Tash's request for discovery because discovery is not proper for claims that are unavailable on the face of the CAC. *Iqbal*, 556 U.S. at 678-79.

2. Section 638.51 Prohibits Only Telephone-Tracking Technology

The California Legislature specifically intended to limit CIPA §§ 638.50-638.55 to telephone-tracking technology. In 2015, long after the proliferation of internet tracking technologies, the Legislature enacted these sections to regulate law enforcement's use of "pen registers . . . *in telephone surveillance*[,]" (RJN 4-5; Ex. 22 at 1 (emphasis added)), while allowing section 631(a) of CIPA and the CCPA to regulate internet tracking technologies. *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring) (the CCPA provides recourse and renders "contort[ion]" of CIPA provisions unnecessary). These sections were not "intend[ed] to mirror [current] federal law enforcement

---

[18] The HHS guidance Tash cites in the CAC shows that HIPAA-covered entities are not forbidden from using tracking technologies, which shows that providing the Tools or using the Tools is not evidence of scienter under CIPA. Mot. 22 n.16.

*Wilson v. Google LLC*, No. 24-cv-03176-EKL, 2025 WL 901941 (N.D. Cal. Mar. 25, 2025), cited by Tash (Opp. 19), found willfulness where Google "intentionally encouraged" website operators "to 'use a critical new feature . . . to *avoid* privacy settings in website visitors' browsers." 2025 WL 901941, at *1, 6 (emphasis added). No such allegations are included here.

authorities," which Tash argues with no support. Opp. 22 n.14. The legislative history shows the opposite. As *Sanchez v. Cars.com Inc.* makes clear: the Legislature adopted the "same authorization provision . . . that courts have relied on under [the pre-2001 amendments to] the federal Pen Register Act to find that the Act applied *only* to mechanical, telephone number-tracing technology, not technology used to collect IP addresses from a desktop computer." No. 24STCV13201, 2025 WL 487194, at *3 (Super. Ct. Jan. 27, 2025); *see Cellular Tel.*, 885 F. Supp. at 200 (authorization provision of pre-2001 Federal Pen Register Act, adopted by the California Legislature, showed that pen registers and trap-and-trace devices were limited to "devices attached to a telephone line" since court orders had to identify a "telephone line").[19]

Tash argues that the "legislative purpose of CIPA" to "give greater protection to privacy interests" requires the Court to extend §§ 638.50-51 to "new technologies." Opp. 21. But that general intent does not override the specific statutory language. Indeed, CIPA has been amended to modernize other provisions, but the pen register provisions remain unchanged. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (rejecting argument that first clause of § 631(a) "should be interpreted to apply" online because other parts of CIPA had been amended but not that clause) (collecting authorities)). If the Legislature wanted to apply § 638.51 "to the internet," it would have done so, but it did not. *Gutierrez*, 2025 WL 1895315, at *3.

Every case cited by Tash failed to consider, or actively ignored, §§ 638.50-638.55's legislative history and thus disregarded the context necessary to interpret it. Opp. 22;[20] Code Civ. Proc. § 1859 ("In the construction of a statute the intention of the Legislature . . . is to be pursued"). Some of Tash's cases claim it was proper to ignore legislative history because the plain language of one of the five provisions of the statute, when considered in isolation, is not limited to telephones. *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024). That analysis is faulty: statutory interpretation forbids considering provisions in isolation. *Dep't of Fin. v. Comm'n on State Mandates*, 85 Cal. App. 5th 535, 567 (2022). Here, construing section 638.50—the definitions—to encompass non-telephonic devices creates an irreconcilable conflict with section 638.52[21] and renders compliance impossible, an outcome that no authority cited by Tash addresses. Mot. 23. The "law never requires impossibilities . . . ." Civ. Code § 3531.

---

[19] Contrary to Tash's argument, the definition of a "pen register" nowhere mentions "internet communications." Opp. 21.

[20] *Greenley*, Opp. 21, dealt with "software installed in a telephone"—not on a computer. 684 F. Supp. 3d at 1050.

[21] *Shah*'s reasoning that this section "merely lists requirements relating to a particular type of pen register" ignores the statute's mandatory language; a magistrate "*shall* specify" the owner, number, and location of the "telephone line." Pen. Code § 638.52(b), (d); 754 F. Supp. 3d at 930; *Bufkin v. Collins*, 145 S. Ct. 728, 737 (2025) ("Shall" means "must.").

*At minimum*, the parties have identified an ambiguity that requires application of the rule of lenity to find that VSP is not liable. Mot. 24 & n.18. Tash's argument that he seeks to apply § 638.51 against VSP only for allegedly sharing his information with third parties—not to VSP's receipt of his information, Opp. 23, is irrelevant, because the statute penalizes the *installation* of a pen register, not *sharing* information it collects. *Sanchez* and *Casillas* correctly found that Tash's interpretation would "criminalize the process by which all websites communicate with all users," and should be rejected. Mot. 24.

**J. The Opposition Confirms That Tash Has No UCL Claim.**

Tash concedes that his UCL claim rests on his allegations of unlawful conduct in support of his other alleged causes of action. Opp. 23. As shown above, Tash has no claim under any theory of relief. His UCL claim for alleged unlawful or unfair conduct, therefore, likewise fails. Mot. 24.

Tash's UCL claim should be dismissed for the independent reason that he lacks an economic injury. *See supra* § II.C. Tash's authorities do not hold otherwise. *Calhoun*, Opp. 24, has been rejected for its finding of economic harm in a loss of personal information. *Doe I*, 741 F. Supp. 3d at 845 ("Neither case relied on by *Calhoun* makes it clear that there is a property interest in personal information."). *Doe v. Microsoft Corp.*, No. C23-0718-JCC, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023), cited by Tash, Opp. 24, relied on *Calhoun*, and is likewise discredited. The court in *Meta Pixel Tax Filing Cases* agreed that to support a theory of lost diminution in value of data, a plaintiff must allege "that they either attempted or intended to participate in the market for their data, or otherwise to derive economic value from their PII," neither of which Tash alleges. 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024); *see Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 950 (S.D. Cal. 2024) (dismissing UCL claim for failure to allege that her data was "economically profitable *to her*" as opposed to the defendants) (emphasis added).

**K. The Opposition Confirms That Plaintiffs' Punitive Damages Claims Are Conclusory.**

Plaintiffs cite no allegations that support their request for punitive damages. The CAC does not mention an officer, director, or managing agent, let alone that such a person acted with malicious intent. *Coast Surgery Ctr. v. United Healthcare Ins. Co.*, No.: 8:22-cv-02200-FWS-DFM, 2024 WL 650174, at *13 (C.D. Cal. Jan. 5, 2024). Their claim for punitive damages is threadbare and should be dismissed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, VSP requests that Plaintiffs' claims be dismissed without leave to amend.

Dated: December 3, 2025

GREENBERG TRAURIG, LLP

By: */s/ Rebekah S. Guyon*
Rebekah S. Guyon
Lori Chang
David H. Marenberg

Attorneys for Defendants Vision Service Plan a/k/a VSP Global, VSP Ventures, LLC, VSP Ventures Management Services, LLC, and VSP Ventures Optometric Solutions, LLC