UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN TASH, et al.,

               Plaintiffs,

v.

VISION SERVICE PLAN, et al.,

               Defendants.

No. 2:25-cv-00762-DJC-JDP

ORDER

Plaintiffs Brian Tash and Peter Hahn filed this case as a class action against their current or former vision insurance provider, Vision Service Plan. Plaintiffs allege Defendants' transmission of their data to third parties such as Meta, Google, and LinkedIn violates state and federal statutes and the California Constitution and gives rise to common law causes of action. Defendants now move to dismiss Plaintiffs' claims for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants Defendant's Motion (ECF No. 34) with leave to amend.

**BACKGROUND**

Vision Service Plan ("VSP") is a vision insurance provider that operates websites and apps ("Web Properties") in which individuals can identify covered providers and

1

search for vision care products.  (Compl. (ECF No. 33) at 2; Mot. at 1.)  Plaintiffs allege VSP installed tracking technologies on its Web Properties, including Facebook Pixel, Facebook SDK, Facebook Conversions API, Google Analytics, Google Tag Manager, DoubleClick, LinkedIn's marketing tools, and related tracking tools.  (Compl. ¶ 2.)

Plaintiffs Brian Tash and Peter Hahn are individuals currently or formerly insured by VSP who have accessed VSP's Web Properties.  (*Id.* ¶¶ 145, 152.)  Specifically, in 2021, Plaintiff Tash accessed VSP's Web Properties and used "every filtering feature available to obtain the narrowest selection, which communicated the following: (1) the type of physician or medical provider he was seeking; (2) the specific medical services he was seeking; (3) the vision products sought during his visit; (4) his location; and (5) additional details about his desired physician and their practice area."  (*Id.* ¶ 149.)  Meanwhile, Plaintiff Hahn alleges that, in July of 2024, he accessed VSP's Web Properties to identify an in-network healthcare provider in his region.  (*Id.* ¶ 155.)  Plaintiffs accessed these Web Properties from devices in which they were logged into their Facebook and email accounts.  (*Id.* ¶¶ 147, 154.)  Plaintiffs allege that, when they submitted searches from these devices, the tracking technologies on VSP's website "automatically and simultaneously" transmitted the contents of their search parameters to third parties such as Meta, Google, and LinkedIn along with their Facebook IDs ("FID"), IP addresses, and "additional persistent identifiers."  (*Id.* ¶¶ 150, 156, 182.)  According to Plaintiffs, these tracking tools were not visible on the face of the Web Properties and Plaintiffs did not know about or consent to the transmission of their data.  (Compl. ¶¶ 163, 177.)

Based on these events, Tash, on behalf of himself and the California Class alleges violations of the California Invasion of Privacy Act ("CIPA"), codified at Penal Code § 631, et seq. and Penal Code § 638.51(a), the California Confidentiality of Medical Information Act ("CMIA"), codified at Civ. Code § 56, et seq., California's Unfair Competition Law ("UCL"), codified at Bus. & Prof. Code § 17200, et seq., and invasion of privacy under the California Constitution.  Both Plaintiffs, on behalf of

2

themselves and the Nationwide Class, also bring statutory claims under the Electronic Communications Privacy Act, codified at 18 U.S.C. § 2510 ("ECPA"), et seq., and common law claims for intrusion upon seclusion, publication of private facts, and conversion. (*See* Compl. at 46–61.)

Before the Court is Defendants' Motion to Dismiss (ECF No. 34). Briefing on this Motion is now complete. (Mot. (ECF No. 34); Opp'n (ECF No. 39); Reply (ECF No. 41)). The Court ordered this Motion submitted without oral argument pursuant to Local Rule 230(g). (*See* ECF No. 43.) After the Motion was submitted, Plaintiffs and Defendants both filed notices of supplemental authority (ECF Nos. 44, 45), Plaintiffs filed a response to Defendants' Notice (ECF No. 46) and Defendants objected to Plaintiffs' Response (ECF No. 47.)[1]

## LEGAL STANDARD

A party may move to dismiss a complaint for "lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In a "facial attack" under Rule 12(b)(1), "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the district court may review evidence beyond the

---

[1] The Court does not rely on this supplemental authority in resolving this Motion. Accordingly, the Court does not rule on Defendants' objections.

complaint without converting the motion to dismiss into a motion for summary judgment, and the court need not presume the truthfulness of the plaintiff's allegations. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A party may also move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). However, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

## I.   Rule 12(b)(1)

### A. Defendants Facially Challenge Jurisdiction

Defendants mount a facial attack on Plaintiffs' assertion of jurisdiction. Defendants do not challenge the facts underlying Plaintiffs' allegations. Rather, Defendants assert that the allegations themselves are not sufficient to support jurisdiction. Specifically, Defendants argue Plaintiffs lack standing because their allegations do not support the finding that they have suffered an injury in fact. (*See*

4

Mot. at 8 (arguing Plaintiffs lack standing because "they do not allege what information, let alone what private information pertaining to them (as opposed to hypothetical users), was collected by VSP and disclosed to third parties without their consent"); *id.* at 11–12 (arguing Plaintiffs have not alleged they have suffered a monetary injury sufficiently concrete to confer standing).)  In doing so, Defendants do not argue the facts underlying Plaintiffs' allegations are untrue but rather that these allegations, on their face, do not support standing.  *See Safe Air*, 373 F.3d at 1039. Therefore, Defendants' Motion mounts a facial attack on jurisdiction, which the Court can resolve solely by looking at the allegations in the Complaint.  *See Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020).

### B.  Article III Standing

Defendants argue Plaintiffs lack Article III standing.  (Mot. at 8.)  At this stage in a class action, "standing is satisfied if at least one named plaintiff meets the requirements."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007*); see also Healy v. Milliman, Inc.*, 164 F.4th 701, 706 (9th Cir. 2026) (explaining that the Ninth Circuit has "consistently held that Article III's requirements are satisfied before a class is certified as long as at least one named plaintiff has standing").  Further, the plaintiff "bears the burden of showing that he has standing."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  The plaintiff must demonstrate that they have suffered: (1) an injury in fact; (2) that is traceable to or caused by the defendants' conduct; and (3) that can likely be redressed by a favorable judicial decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

An injury in fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).

5

To be concrete, the injury "must be de facto; that is, it must actually exist." *Id.* at 340 (internal quotations omitted).  "Tangible injuries, like physical harms or monetary losses, are concrete." *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023).  But "[a] concrete injury need not be tangible." *Id.* (quoting *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019)).  Moreover, a legislature may enact laws that protect substantive interests, a violation of which may also constitute an injury in fact.  Legislatures are "well positioned to identify [tangible and] intangible harms that meet minimum Article III requirements." *Spokeo*, 578 U.S. at 341; *see TransUnion*, 594 U.S. 413, 462 (2021) (Kagan, J., dissenting).  However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341.  In cases involving a legislatively identified harm, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," such as common law torts or certain constitutional violations. *Id.*; *see also Phillips*, 74 F.4th at 991.  In other words, it is necessary to assess "the match between the injury that [plaintiffs] allegedly experienced and the kinds of harms that were actionable at common law." *Popa v. Microsoft Corp.*, 153 F.4th 784, 790 (9th Cir. 2025).

### 1. Plaintiff Tash

The parties dispute whether Tash has alleged an injury in fact sufficient to confer standing.  Tash alleges he has suffered the intangible but concrete harm of invasion of privacy.  (Compl. ¶ 18; *see also* Opp'n at 5–6.)  VSP allegedly disseminated Tash's private information to Meta, Google, and LinkedIn.  Specifically, Tash alleges VSP transmitted information about the type of medical provider he was looking for, the specific medical services and vision products he sought, his location, and "additional details about his desired physician and their practice area."  (Compl.

6

¶¶ 145–49.)  Further, he alleges Meta, Google, and LinkedIn received this information "alongside his Facebook ID, IP address, and additional persistent identifiers that reveal his real-world identity." (*Id.* ¶ 150.)  According to Tash, an FID can be used to link an individual's "Private Information to their unique Facebook account, real identity, and any other information in Meta's possession." (*Id.* ¶ 67.)  In so doing, Tash alleges VSP violated his privacy interests.

Tash is correct that these harms resemble the types of injuries recognized at common law such that he can seek redress in federal court.  "Violations of the right to privacy have long been actionable at common law." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017).  While Plaintiff need not identify an "exact duplicate" of his injury in the common law, his injury must match the kind of harm recognized by a specific tort. *Popa*, 153 F.4th at 791.  As the Supreme Court has identified, the "disclosure of private information" and "intrusion upon seclusion" are "intangible harms [that] can also be concrete." *TransUnion*, 594 U.S. at 425.

The actions Tash alleges closely align with the harms inflicted by these two privacy torts.  For both, the invasion of privacy must be of the sort that would be "highly offensive to a reasonable person." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1048–49 (N.D. Cal. 2022).  Tash alleges VSP disseminated identifiable information about his healthcare needs to third parties without his knowledge or consent for profit.  (Compl. ¶¶ 145–49, 247, 277.)  A reasonable person could easily find this type of disclosure highly offensive.  Therefore, the Court finds Tash's injuries bear sufficient resemblance to their common law counterparts to confer standing. *See Gray v. Luxottica of Am., Inc.*, No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566, at *4 (C.D. Cal. Dec. 16, 2024) (holding plaintiff who alleged website used Meta Pixel to transmit to Facebook the fact that plaintiff sought to "schedule eye exams" and "obtain new eyewear" suffered an injury in fact under Article III because of close historical analogue to privacy rights at common law).

Defendants are incorrect that Tash's failure to allege he was subjected to targeted ads because of this disclosure deprives him of an injury worthy of standing. (*See* Mot. at 10–11.)  Importantly, "privacy torts do not always require additional consequences to be actionable." *Eichenberger*, 876 F.3d at 983.  The harm inflicted by the intrusion itself permits liability. *Id.*  Plaintiff has thus "identified a close historical or common-law analogue for [his] asserted injury." *TransUnion*, 594 U.S. at 425.

### 2. Plaintiff Hahn

Hahn alleges that he "communicated his Private Information to VSP when he used his phone and computer to access the Web Properties in July 2024 to search for an in-network healthcare provider in his geographic area." (*Id.* ¶ 155.)  He alleges VSP distributed the "search parameters" he used on the site and the "contents of his communications." (*Id.* ¶ 156.)  These allegations contain notably less specificity than Tash's.  Unlike Tash, who "recalls using every filtering feature available to obtain the narrowest selection" (*id.* ¶¶ 148–49), Hahn solely states that his "search parameters" were sent to third parties without identifying how the information transmitted was "private." (*Id.* ¶¶ 155–56.)   Though it is possible Hahn selected search parameters within the "Find an Eye Doctor" form that revealed information similar to Tash's, such as the type of doctor and treatment he sought, the Court cannot conclude that he did so solely based on these allegations.  For example, Hahn may have only selected the parameters for "Hours & Scheduling." (*See* Compl. at 24 (showing the available filters and search parameters).)  Without describing the type of information contained in Hahn's search parameters or how it was "embarrassing, invasive, or otherwise private," this allegation does not confer standing. *Popa*, 153 F.4th at 791; *see also Carolus v. Nexstar Media Inc.*, No. 3:24-cv-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (explaining that, to assert a privacy violation sufficient for Article III injury, the information disclosed must be "actually personal and private").  Similarly, the allegation that a defendant disclosed "communications," without any specificity as to the type or topic of those communications does not exact an Article III-recognized

8

injury. *See Gaos v. Google, Inc.*, No. 5:10-cv-04809-EJD, 2011 WL 7295480, at *3 (N.D. Cal. Apr. 7, 2011); (holding "Plaintiff's conclusory allegations of disclosures of communications resulting in unspecified harm in violation of the ECPA, not supported by any facts, are insufficient to allege violation of Plaintiff's statutory rights" and thus "Plaintiff lacks Article III standing to assert her claims").

Additionally, although both Plaintiffs allege the information Meta received "was sent alongside Plaintiffs' and Class Members' IP address, Facebook ID (c_user cookie or 'FID'), and other persistent device identifiers" (*id.* ¶ 66), the disclosure of this information alone does not inflict a concrete injury. *See Zynga*, 600 F. Supp. 3d at 1049 (holding disclosure of an internet user's Facebook username, email address, or phone number does not inflict an injury in fact); *Carolus*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (holding disclosure of IP address and general location of a device alone did not constitute an injury in fact).

Hahn also has not pled a monetary harm that would support Article III standing. Plaintiffs argue they have "alleged monetary harm" because the information disclosed was valuable. (Opp'n at 6.) Though the Complaint describes the value of this information in the hands of both third parties and Plaintiffs (*see* Compl. ¶¶ 111–15), it does not identify how the value of that information has diminished because of Defendants' actions. Therefore, this allegation does not support the finding that Hahn suffered economic injury. *See Carolus*, 2025 WL 1338193, at *1 (holding plaintiffs failed to allege economic injury from the tracking of their data because they did not allege "how (or to what degree) the value of that information decreases" with defendant's actions).

Finally, Plaintiffs argue the allegation that they "overpaid for insurance services they believed included data security sufficient to maintain their Private Information as confidential" and "would have paid less for them, had they known VSP was breaching confidentiality and disclosing their Private Information" constitutes a monetary harm. (Compl. ¶¶ 215, 218; Opp'n at 7.) It is true that a plaintiff who "paid more for

something than he or she otherwise would have paid . . . has suffered an Article III injury in fact. *See DeCarlo v. Costco Wholesale Corp.*, 733 F. App'x 398, 399 (9th Cir. 2018) (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (cleaned up). However, this injury must still be traceable to Defendant. *See ThermoLife Int'l, LLC v. BPI Sports, LLC*, No. 21-15339, 2022 WL 612669, at *1 (9th Cir. Mar. 2, 2022). Courts typically find such allegations sufficient where plaintiff relied on affirmative representations by the seller, without which, the plaintiff buyer would have paid less. *See, e.g.*, *Hinojos*, 718 F.3d at 1103, 1104 n.3 (holding plaintiff who alleged he would not have brought products but for his reliance on deceptive advertisements had Article III standing); *In re LinkedIn User Priv. Litig.*, No. 5:12-cv-03088-EJD, 2014 WL 1323713, at *5–6 (N.D. Cal. Mar. 28, 2014) (holding plaintiff had standing based on allegation that "her payment or overpayment was caused by LinkedIn's alleged misrepresentations, which she alleges she read and relied on in making her decision to purchase a premium subscription"). Here, however, Plaintiffs solely allege that they "believed" Defendant's services "included data security sufficient to maintain their Private Information as confidential." (Compl. ¶ 215.) They do not allege this belief stemmed from any representations by Defendant about their Web Properties. Therefore, this injury is not traceable to Defendant's conduct. *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846–47 (N.D. Cal. 2012) (holding plaintiff failed to allege causation required for standing because complaint did not identify specific misrepresentations by defendant upon which plaintiff relied in overpaying for product); *cf. In re LinkedIn*, 2014 WL 1323713, at *6 (explaining that plaintiff's "injury (the purchase induced by the misrepresentation) is fairly traceable to LinkedIn's conduct because LinkedIn made the misrepresentation").

Accordingly, Hahn lacks standing to pursue his claims.[2]

---

[2] The Complaint also alleges that "VSP intentionally inserted an electronic listening device onto Plaintiffs' and Class Members' web browsers and devices that, without their knowledge and consent, tracked and transmitted the substance of their confidential communications to Meta, Google, and other

## II.   Rule 12(b)(6)

### A.  UCL Claim

Tash fails to allege facts that give rise to standing under the UCL.  To establish UCL standing, a plaintiff must demonstrate that they "(1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition."  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009).

For largely the same reasons stated in Section I.B.2, Tash has not pled the loss of money or property required for UCL standing.  Plaintiff's argument that he overpaid for insurance services fails as he does not allege reliance on affirmative representations by Defendant.  *See id.* at 961–62 (holding plaintiffs lacked UCL standing under a similar theory because they did not allege reliance on affirmative representations by defendant in deciding to purchase a product).  Plaintiff has also not alleged the value of his personal information diminished because of Defendant's actions.  *See Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538–39 (2022) (holding plaintiffs lacked UCL standing based on allegation that their personally identifiable information had value and that a market existed for it without also alleging defendant's actions decreased that information's value).

The Court also rejects Plaintiff's final theory of UCL standing, namely that he has a property interest in his personal information and has been deprived of the right to exclude others from it. (*See* Opp'n at 24.)  Plaintiff correctly notes that district courts in the Ninth Circuit are split on whether this theory of lost property supports UCL standing. (*See id.*; *compare In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024–25 (N.D. Cal. 2024) *with Thompson v. Home Depot, Inc.*, No. 3:07-cv-01058-IEG-WMC, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007).  However, as the Ninith Circuit has affirmed *In re Facebook Priv. Litig.*, which rejected this theory, this Court

unauthorized third parties—each of whom constitute a 'person' within the meaning of the statute." (Compl. ¶ 178.)  However, Plaintiffs seem to clarify in their Opposition that they allege the tracking technologies "functioned like a hidden 'listening device.'" (Opp'n at 18.)  Based on this apparent clarification, the Court interprets that allegation as simile rather than fact for purposes of this Order.

declines to adopt it.  791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014).

### B. Timeliness of Remaining Claims

Defendants argue that all of Tash's claims except his UCL claim are time-barred. (Mot. at 19.)  A plaintiff must allege facts showing that their complaint was timely filed. *See Chestra v. Davis*, 747 Fed. Appx. 626, 627 (9th Cir. 2019) (citing *Gregg v. Hawaii, Department of Public Safety*, 870 F.3d 883, 887 (9th Cir. 2017)).  In this case, the Complaint alleges that the visit to VSP's website giving rise to Tash's claims occurred "in or around 2021," at least three years and several months before the filing of his initial complaint.  (Compl. ¶ 148; *see* ECF No. 1.)  Nonetheless, Plaintiff argues his claims are not time-barred because the "delayed-discovery rule applies and renders all of his claims timely."  (Opp'n at 13.)

Each of Plaintiff's remaining state law claims is subject to a statute of limitations of one to three years after the acts giving rise to the action occur.  CIPA claims are subject to a one-year statute of limitations.  *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025) (identifying the statute of limitations for a CIPA claim as one year pursuant to Cal. Civ. Proc. Code § 340(a)); *Balanzar v. Fid. Brokerage Servs.*, LLC, 654 F. Supp. 3d 1075, 1082 (S.D. Cal. 2023) (same).  "There is some controversy as to whether the statute of limitations for a CMIA claim is two or three years."  *Harrill v. Emanuel Med. Ctr.*, No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428, at *11 (E.D. Cal. June 9, 2025) (cleaned up) (quoting *Ramirez v. Dean Foods Co. of California*, No. 8:11-cv-01292 DOC-AN, 2012 WL 3239959, at *8 (C.D. Cal. Aug. 6, 2012)).  Claims for invasion of privacy under either the common law or the California Constitution must be brought within two years.  *Harrill*, 2025 WL 1635428, at *11 (identifying that Cal. Civ. Proc. Code § 335.1 places a two-year limitation on such claims).  Finally, conversion claims have a three-year statute of limitations pursuant to Civ. Proc. Code § 338(c)(1). *Healthcare Ally Mgmt. of California LLC v. United Healthcare Servs., Inc.,* No. 2:23-cv-

12

02675-PSG-RAO, 2023 WL 11053462, at *4 (C.D. Cal. Dec. 1, 2023); *Eleanor Licensing LLC v. Classic Recreations LLC*, 21 Cal. App. 5th 599, 612 (2018).

California's discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action*." Optronic Techs., Inc. v. Celestron Acquisition, LLC*, 108 Cal. App. 5th 770, 789 (2025), *reh'g denied* (Jan. 31, 2025), *review denied* (May 14, 2025). "In order to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* (cleaned up) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023).

The Complaint meets the second requirement but fails the first. Tash adequately alleges he could not have discovered the harm at issue here earlier despite reasonable diligence by stating that Plaintiffs "did not know (and had no way of knowing) that their Private information was intercepted and unlawfully disclosed to Meta, Google, Microsoft, or any other third-parties in the manner described herein because: (1) Defendants kept this information a secret, (2) the Tracking Tools were invisible when Plaintiffs and Class Members used the Web Properties; and (3) a portion of the Tracking Tools cause direct communications between Defendant's servers and third party servers that Plaintiffs have no access to whatsoever." (Compl. ¶ 163.) These statements plausibly allege that a person of reasonable diligence would not immediately discover that their information had been transmitted to a third party as the tracking pixels used were not visible to Plaintiff. *See Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 853–54 (E.D. Cal. 2025) (holding plaintiffs satisfied this requirement of delayed discovery rule by alleging that when they visited defendants' website "they did not know and had no way of knowing that Defendants

13

were intercepting and unlawfully disclosing their PHI and PII to Meta, Google, and other third parties through the use of hidden tracking pixels").

However, the Complaint does not explain when and how Tash discovered the facts that give rise to his claim, thus failing to allege the "time and manner of discovery." Therefore, the delayed-discovery rule cannot apply to toll Plaintiff's claims. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1143–44 (C.D. Cal. 2010) (holding that because plaintiff had "not alleged in any form the manner of her discovery, her complaint [did] not adequately plead tolling under the delayed discovery rule").

Similarly, Plaintiff's failure to allege the time at which he did or could have discovered these harms leaves his federal claims facially untimely. The statute of limitations for an ECPA claim is two years. 18 U.S.C. § 2520(e). "The federal accrual standard is essentially the same as the discovery rule." *Peterson v. Sutter Med. Found.*, No. 3:21-cv-04908-WHO, 2022 WL 316677, at *12 (N.D. Cal. Feb. 2, 2022), *aff'd*, No. 23-2911, 2025 WL 1823959 (9th Cir. July 2, 2025) (citing *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008)). Like California's delayed-discovery rule, the federal accrual standard postpones accrual until the plaintiff has reason to discover the cause of action. *Peterson*, 2022 WL 316677, at *12. This rule is incorporated into the text of the ECPA itself as it provides that claims must be brought within two years after the claimant has "reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).

Plaintiff has not pled facts sufficient to show his claims were filed on time. As stated above, a plaintiff must allege facts that support a complaint is timely filed. *See Gregg*, 870 F.3d at 887. To permit the Court to assess when Plaintiff's cause of action began to accrue, Plaintiff must provide the Court with the time at which he knew or had reason to know of the alleged harm. Therefore, the statute of limitations bars Plaintiff's claims as currently alleged.

### III.    Leave to Amend

"In general, leave to amend is only denied if it is clear that amendment would be futile and that the deficiencies of the complaint could not be cured by amendment." *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 608 (N.D. Cal. 1992) (cleaned up); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (explaining that a "district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts"). At this stage, it is not clear that amendment of these claims would be futile. Therefore, Plaintiffs are granted leave to amend.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 34) is GRANTED with leave to amend. As the Court does not rely on any of Defendants' exhibits in resolving this Motion, Defendants' Request for Judicial Notice (ECF No. 35) is DENIED.

IT IS SO ORDERED.

Dated:   **April 14, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Tash25cv00762.mtd